FILED

2013 MAR 18  P 2:59

...3
... COURTS
...

# IN THE COURT OF COMMON PLEAS
## CUYAHOGA COUNTY, OHIO

DDR CORP.
3300 Enterprise Parkway
Beachwood, Ohio 44122,

        Plaintiff,

v.

CONTROL BUILDING SERVICES, INC.;
CONTROL EQUITY GROUP, INC.;
EDWARD TUREN,
NEAL TUREN
333 Meadowlands Parkway
Secaucus, NJ 07094

        Defendants.

Case No. _____

Complaint

Judge _____

JOHN P O'DONNELL
CV 13 803253

Commercial Docket

Jury Demand Endorsed Hereon

## COMPLAINT

Plaintiff DDR Corp., formerly known as Developers Diversified Realty Corporation

("DDR"), for its Complaint against Defendants Control Building Services, Inc. ("CBS"), Control

Equity Group, Inc. ("CEG"), Edward and Neal Turen ("the Turens"), states as follows:

### Introduction And Nature Of Claims

1.     This action arises from a scheme—perpetrated by an organization of affiliated

entities, including Defendants CEG and CBS, and carried out at the direction of the

organization's principal shareholders and officers, the Turens—to defraud and misappropriate

funds that were obtained from DDR pursuant to a contractual agreement for the sole purpose of

paying vendors who provided facility maintenance services at DDR properties.



CV13803253     78568522



DEPOSITED

MAR 18 2013

... COSTS
County Clerk of Court
... County

**EXHIBIT A**

2.      Pursuant to a Services Agreement entered into between DDR and Oxford Building Services, Inc. ("Oxford"), one of the affiliated companies within what will herein be called the Control organization, Oxford coordinated the contracting, oversight and payment of vendors to perform facility maintenance work at DDR properties.  Under that agreement, Oxford acted as a conduit through which DDR would pay for the vendor services, by vendors invoicing Oxford and Oxford, in turn, invoicing DDR for the underlying Service Provider Invoices.

3.      At some point during the course of this arrangement and unknown to DDR, CEG and its affiliates within the Control organization, at the direction of the Turens, took out a revolving credit facility, the collateral for which consisted of bank accounts such as the one into which DDR funded Oxford to pay vendors.  The revolving facility was repaid by a daily sweeping of all cash from the Control affiliates' bank accounts, including the funds obtained from DDR pursuant to the Services Agreement for the sole purpose of paying Service Provider Invoices.  Thus, the funds provided by DDR were used, contrary to the terms of the Services Agreement and without any legitimate claim of right by Oxford or any other Defendant, for the benefit of the Control organization and the Turens in order to service their debt.[1]

4.      Eventually, the scheme collapsed when the borrowing base under the financing was reduced, and thus the borrowers' indebtedness to their lender outstripped the available cash.  As a result, Oxford no longer had the means to pay Service Provider Invoices when they came due.  Even though Oxford had no means or intent to pay the Service Provider Invoices relating to work at DDR properties, it continued, fraudulently, to invoice and induce DDR's payment of funds for the purported payment of Service Provider Invoices.  The result was approximately

---

[1] As described below, the Turens personally guaranteed the Control organization's obligations under the revolving facility.

$11.1 million in invoices that were paid by DDR to Oxford but for which the underlying Service Provider Invoices went unpaid, leading vendors to seek recourse from DDR directly.

### The Parties

5.     Plaintiff, DDR, is an Ohio corporation with its principal place of business in Beachwood, Cuyahoga County, Ohio. DDR is a self-administered and self-managed Real Estate Investment Trust ("REIT") operating as a fully integrated real estate company. DDR owns and manages approximately 450 retail operating and development properties in 39 states, Brazil and Puerto Rico, totaling more than 116 million square feet.

6.     Defendant CBS is a Delaware corporation with its principal place of business in Secaucus, New Jersey.

7.     Defendant CEG is a Delaware corporation with its principal place of business in Secaucus, New Jersey. It serves as the corporate parent of an organization of affiliated companies, herein referred to as the Control organization, which include CBS, Oxford and FacilitySource, Inc.

8.     Defendant, Edward Turen, is an individual residing in New Jersey, who serves as Chairman and CEO and a principal shareholder of CEG and CBS, located in Secaucus, New Jersey. He is also the CEO and a principal shareholder of Oxford.

9.     Defendant, Neal Turen, is an individual residing in New Jersey, who serves as Executive Vice President of CEG and CBS, located in Secaucus, New Jersey. He is also the President and a principal shareholder of Oxford..

### Jurisdiction and Venue

10.     This Court has subject matter jurisdiction over this matter pursuant to Ohio Revised Code § 2305.01, because the amount in controversy exceeds the jurisdictional minimum of this Court.

11.    This Court has personal jurisdiction over Defendants CBS and CEG pursuant to Ohio Revised Code § 2307.382 because DDR's causes of action arise in significant part out of Defendants' transacting business in this State and additionally, over CBS, by its entering into a contract to guaranty the provision of services in this State. The Court also has personal jurisdiction over CBS pursuant to a Venue section of the Services Agreement, to which the Guaranty executed by CBS relates and is attached, which provides:

> The parties hereto hereby consent to the exclusive jurisdiction and venue of the courts of proper subject matter jurisdiction located in the State of Ohio for all purposes related to this Agreement or any contract related to this Agreement.

(Services Agreement, attached hereto as Exhibit A, ¶ 19.) This Court has personal jurisdiction over all Defendants pursuant to Ohio Revised Code § 2307.382 because Defendants caused tortious injury in this State by sending to DDR fraudulent invoices, by misappropriating the funds paid pursuant to those invoices, and by conspiring to do the same.

12.    Venue is proper in this Court pursuant to Ohio Rule of Civil Procedure 3(B)(3) because the transactions and events giving rise to this action occurred in part in Cuyahoga County, Ohio and/or Rule 3(B)(1) because DDR is located in Cuyahoga County, Ohio. Venue is also proper in this Court pursuant to the above-quoted provision of the Services Agreement, to which the Guaranty executed by CBS relates and is attached.

### Background

13.    Edward and Neal Turen are the principal owners and executives of a large organization of affiliated companies (the Control organization), which is engaged in the business of providing facility maintenance services to commercial properties. The individual entities making up the Control organization include Oxford and CBS. All the entities within the Control organization fall under the corporate umbrella of CEG, of which the Turens are also principal

owners and executives. Together, the Turens and CEG effectively control the overall business activities of each constituent company within the Control organization.

14. In 2007, DDR began negotiating an agreement with various members of the Control organization's management, including the Turens, whereby Control would coordinate the provision of facility maintenance services at all of DDR's properties in the United States (including in Ohio). One of the attractive features of the proposed services Control could offer was a "Facility Maintenance Optimization" solution, which promised increased efficiencies in vendor management using a proprietary software platform and transaction center developed and operated out of an affiliated company within the Control organization, FacilitySource Inc., located in Westerville, Ohio. Many of the negotiations took place at FacilitySource Inc.'s offices in Westerville. Eventually, rather than FacilitySource, CEG decided that the named party on the agreement with DDR would be a different affiliate, Oxford, and the vendor management operations would be run through FacilitySource's Westerville, Ohio, facility and a new Oxford facility in Atlanta, Georgia. CEG hoped that the DDR arrangement would be the first of several contracts with other REITs like DDR to run through Oxford.

15. The agreement between DDR and Oxford was formalized in a Services Agreement, executed in January of 2008.

### The Services Agreement and Guaranty

16. The payment arrangement under the Services Agreement was structured so that Oxford would not be required to put out money of its own to pay the vendors providing services at the properties. Rather, Oxford acted as a conduit through which DDR would pay, indirectly, for all service provider invoices before they were due. As described in paragraph 3 of the Services Agreement, Oxford was required to submit daily invoices and supporting data to DDR for each subject property ("Business Unit Invoices), reflecting new amounts due under invoices

submitted by individual vendors ("Service Provider Invoices"). (Services Agreement ¶ 3, attached hereto as Exhibit A.) Oxford was required to submit Business Unit Invoices not later than 14 days prior to the due date of the underlying Service Provider Invoices, which Business Unit Invoices were due and payable not later than six days before the due date for payment of the Service Provider Invoices. (*Id.*) Oxford was then required to pay any applicable Service Provider Invoices not more than six days after receipt of payment from DDR. (*Id.*)

17.     Paragraph 3 of the Services Agreement further states that, "[p]rovided that DDR has timely paid the applicable Business Unit Invoice, Oxford shall bear all liability associated with the late payment of any Service Provider Invoice and Oxford shall be solely responsible for any fees or penalties associated with such late payment." (*Id.*) Any failure by Oxford to timely pay Service Provider Invoices would constitute a material breach of the Services Agreement. (*Id.*)

18.     Oxford had no right to retain any funds provided by DDR in payment of Business Unit Invoices apart from any fees negotiated with the individual service providers. (*Id.* ¶ 4.)

19.     Paragraph 13(b) of the Services Agreement states that DDR may terminate the Services Agreement immediately in the event that "(a) Oxford becomes insolvent or makes a general assignment for the benefit of creditors or (b) a petition is filed or proceedings are commenced against Oxford under any bankruptcy law. (*Id.* ¶ 13(b).)

20.     The initial term of the Services Agreement was for one year, but would renew automatically on an annual basis unless either party provided written notice of termination. (*Id.* ¶ 2.) Pursuant to that provision, the Services Agreement was renewed each year up to and including 2013.

21.     The Services Agreement was amended by an amendment dated February 2009, which amendment did not materially impact the provisions described herein.

22.     Appended to the end of the Services Agreement was a separate Guaranty entered into between DDR and CBS, Oxford's purported parent company.  The Guaranty was signed on behalf of CBS by its President, Richard Matero, who also signed the Services Agreement on behalf Oxford as Oxford's Director.

23.     The Guaranty, in its entirety, provided:

> Control Building Services, Inc. ("Guarantor") as a material
> inducement to and in consideration of DDR entering into the
> [Services] Agreement with Oxford, of even date herewith,
> unconditionally and absolutely guarantees and promises, to and for
> the benefit of DDR, its successors and assigns, that Oxford shall
> perform the provisions of the Agreement that Oxford is to perform
> under the Agreement and the full performance and observance of
> all the covenants, terms, conditions and agreements therein provide
> to be performed and observed by Oxford, its successors and
> assigns.  The defined terms used herein shall have the same
> meaning as set forth in the Master Services Agreement set forth
> above.  Guarantor's obligations are independent of Oxford's
> obligations under the Agreement and shall not be discharged
> except by payment to and receipt by DDR of all sums due under
> the Agreement and the performance of all covenants, terms, and
> conditions under the Agreement.  A separate action may be
> brought or prosecuted against Guarantor whether the action is
> brought or prosecuted against any other guarantor or Oxford, or all,
> or whether any other guarantor or Oxford, or all, are joined in the
> action.

(*Id.* at pages 14-15.)

### Oxford's Revolving Credit Facility

24.     On information and belief, on or around December 23, 2011, CEG and other companies within the Control organization, including both CBS and Oxford (collectively, the "Borrowers"), at the direction of the Turens, took out an asset-based revolving credit facility

with TD Bank N.A. ("TD Bank").  Under the terms of the loan agreement, TD Bank extended cash advances and letters of credit to the Borrowers totaling as much as $18 million.

25.    To secure their obligations to TD Bank under the credit facility, the Borrowers granted TD bank a security interest in substantially all the Borrowers' assets.  Additionally, Defendants Edward and Neal Turen, as principals of each of the Borrowers personally guaranteed repayment of the TD Bank indebtedness.

26.    Under the agreement with TD Bank, the operating and payroll accounts of the Borrowers, including Oxford, were maintained as zero balance accounts that were swept on a daily basis by CEG and, in turn, by TD Bank to service the revolving credit facility.

27.    The cash advances and letters of credit made available through the revolving credit facility were used purportedly to support the Borrowers' operating expenses (to the extent possible and as replacement for the operating cash previously swept to service the credit facility).

28.    Oxford never disclosed the existence of the TD Bank arrangement to DDR, or that DDR's payments to Oxford were actually being used to pay Oxford's lender instead of the vendors.

### Oxford's Misappropriation of DDR Funds

29.    Consistent with the arrangement with TD Bank, soon after institution of the cash sweep procedures, CEG commenced a daily sweep of funds from Oxford's operating accounts, which funds had been obtained from DDR pursuant to the Services Agreement for the sole purpose of paying Service Provider Invoices.  CEG in turn provided those funds to TD Bank to service the Borrowers' obligations under the credit facility.

30.    While this daily cash sweep procedure was ongoing, Oxford continued to issue to DDR daily Business Unit Invoices and supporting data files detailing the underlying Service Provider Invoices, representing that the funds received from DDR pursuant to the invoices were

-8-

to be used, consistent with the terms of the Service Agreement, for payment of the identified Service Provider Invoices. Oxford did not disclose that, in actuality, Oxford regularly misappropriated DDR's funds to its own ends and those of its co-borrowers by placing those funds in an operating account that was daily swept for the purposes of servicing the Borrowers' own debt obligations.

31.     On information and belief, beginning in or around June 2012, the Borrowers lost a major account, and as a result their borrowing base under the TD Bank facility was reduced to the point where they had no capacity to borrow additional funds under the line of credit. The continuation of the Borrowers' operations while keeping up with their debt obligations was supposedly made possible only during the second and third quarters of 2012 only through an injection of capital by the Turens. Despite the imminent risk that the credit arrangement with TD Bank would collapse, Oxford continued to issue daily Business Unit Invoices with the same representations described above and CEG continued its daily sweep of that cash.

32.     By no later than the fourth quarter of 2012, Oxford virtually stopped paying Service Provider Invoices for work performed at DDR properties as they became due. Still, Oxford, at the direction of the Turens, continued to issue Business Unit Invoices in the same manner, for the sole purpose of using the funds received from DDR to service the Borrowers' debt and with full knowledge that the Service Provider Invoices underlying those Business Unit Invoices would not be paid. As before, once DDR paid these Business Unit Invoices to Oxford, the funds were immediately swept by CEG to service the Borrowers' debt.

33.     For the life of the Services Agreement until on or around January 25, 2013, DDR timely paid all daily Business Unit Invoices submitted to it by Oxford, with the understanding, based on the representations made in the Business Unit Invoices and the supporting data files,

that those funds would be used solely for payment of Service Provider Invoices pursuant to the terms of the Services Agreement.

### DDR's Discovery of Oxford's Fraudulent Scheme and Oxford's Insolvency

34.     On or around January 24, 2013, Edward Turen notified DDR that Oxford was experiencing operating shortfalls and was unable to pay Service Provider Invoices as they became due.  Mr. Turen further identified approximately $11.1 million in outstanding Service Provider Invoices, dating back to May 2012, that had already not been timely paid by Oxford, even though DDR had timely paid the corresponding Business Unit Invoices. Instead, Mr. Turen explained, these funds had been swept by CEG to service the Borrowers' debt.  In addition to the $11.1 million in Service Provider Invoices that had not been paid, Mr. Turen informed DDR that there was also $4 million due to TD Bank that the Borrowers were unable to pay.

35.     On or around January 25, 2013, DDR sent auditors to Oxford, pursuant to the Services Agreement, to attempt to verify the representations Mr. Turen about the amounts owed under Service Provider Invoices and Oxford's financial situation.  Oxford removed the auditors after several hours, preventing DDR from learning what it sought to verify.

36.     Based on the representations made by Mr. Turen, and the little that DDR's auditors were able to ascertain, DDR determined that Oxford was insolvent.  Consequently, by letter dated January 28, 2013, DDR notified Oxford that it was in material breach of the Services Agreement and, further, terminated the Services Agreement, effective immediately, in light of Oxford's insolvency.

37.     By letter dated February 8, 2013, addressed to Edward Turen as CEO of Oxford, DDR demanded that outstanding Service Provider Invoices be paid.

38.     As a direct result of Oxford's nonpayment of Service Provider Invoices, vendors have begun seeking recourse against DDR for the amounts owed.  As of this filing, several

vendors have placed liens on DDR properties, including: on January 30, 2013, DDR received notice of a lien in the amount of $171,856.79 filed by Ace Asphalt of Arizona, Inc. at a property owned by DDR called Deer Valley Towne Center, as a result of nonpayment for work performed at that property from June 15, 2012 through October 1, 2012; and, on February 4, 2013, DDR received a statement of a mechanic's lien from Brown Brothers Asphalt and Concrete, Inc. in the amount of $415,000.00 in connection with services performed at a property owned by DDR in Colorado Springs, Colorado.

39.     On March 7, Ace Asphalt of Arizona Inc. filed suit in Maricopa County Superior Court in Arizona, seeking damages as a result of Oxford's failure to pay.

40.     Oxford declared bankruptcy in an action filed February 26, 2013, in the United States Bankruptcy Court for the District of New Jersey. Oxford has not paid any of the $11.1 million of outstanding Service Provider Invoices.

41.     CEG and CBS, by contrast, remain solvent companies thanks, in part, to the misappropriation of DDR funds for their (and the other Borrowers') benefit.

42.     CBS, as guarantor of Oxford's performance under the Services Agreement, has not paid the amounts due under the outstanding Service Provider Invoices, nor has it made any attempt to resolve any liens filed against DDR properties as a result of the nonpayment of Service Provider Invoices.

<u>COUNT I</u>
BREACH OF THE GUARANTY AGREEMENT
(AGAINST CONTROL BUILDING SERVICES, INC.)

43.     Plaintiff, DDR, incorporates by reference the foregoing allegations of this Complaint.

44.     The Guaranty and the Services Agreement, to which it relates were, prior to the termination of the Services Agreement on January 28, 2013, valid and binding contracts.

45.     The Guaranty required CBS unconditionally and absolutely to guaranty Oxford's performance under the Services Agreement.

46.     Oxford materially failed to perform its obligations under the Services Agreement by failing to timely pay Service Provider Invoices as they became due, which invoices remain unpaid.

47.     Oxford further failed to perform its obligations under the Services Agreement by retaining and appropriating for its own use funds provided by DDR in payment of Business Unit Invoices in excess of those fees negotiated between Oxford and individual service providers.

48.     CBS breached the Guaranty by failing to ensure Oxford's performance of its obligations under the Services Agreement, and by failing to ensure that all sums due under the Services Agreement are paid.

49.     DDR has performed all its obligations under the Guaranty and Services Agreement.

50.     As a direct and proximate result of CBS's breach, DDR has been damaged in an amount in excess of $25,000, to be proven at trial.

## COUNT II
### TORTIOUS INTERFERENCE WITH CONTRACT
### (AGAINST ALL DEFENDANTS)

51.     Plaintiff, DDR, incorporates by reference the foregoing allegations of this Complaint.

52.     The Services Agreement, prior to its termination on January 28, 2013, was a valid and binding contract.

53.     Defendants had knowledge of the existence of the Services Agreement from the time of its execution.

54.     Defendants intentionally caused Oxford to materially breach the Services Agreement by establishing a procedure whereby CEG would sweep all available cash, including payments made by DDR pursuant to Business Unit Invoices, for the use and benefit of Defendants and all the Borrowers, and by continuing to cause funds paid by DDR pursuant to Business Unit Invoices to be swept by CEG after it became known that insufficient funds would be available for Oxford to satisfy its obligations to pay Service Provider Invoices under the Services Agreement.

55.     Defendants had no justification for their conduct, because neither Oxford nor any Defendant had a legitimate claim of right to the funds paid by DDR pursuant to Business Unit Invoices, other than Oxford's right to retain fees negotiated with individual service providers.

56.     As a direct and proximate result of Oxford's breaches, brought about by Defendants, DDR has been damaged in an amount in excess of $25,000, to be proven at trial.

### COUNT III
### CONVERSION
### (AGAINST CEG, EDWARD TUREN AND NEAL TUREN)

57.     Plaintiff, DDR, incorporates by reference the foregoing allegations of this Complaint.

58.     Oxford, at the direction of the Turens, obtained funds from DDR under false pretenses by causing DDR to pay Business Unit Invoices purportedly for the purpose of having Oxford pay corresponding Service Provider Invoices, but which Oxford intended to misappropriate for the benefit of Defendants.

59.     CEG, at the direction of the Turens, misappropriated for the use of CEG and the Control organization funds entrusted by DDR to Oxford for the sole purpose of having Oxford pay Service Provider Invoices to vendors that performed maintenance at DDR properties.

60.     Defendants had no right to these funds other than Oxford's right to retain fees negotiated between Oxford and individual vendors.

61.     After learning of Defendants' actions, DDR demanded that the outstanding Service Provider Invoices be paid, which Defendants have not done as of the time of this filing.

62.     As a direct and proximate result of Defendants' actions, DDR has been damaged in an amount in excess of $25,000, to be proven at trial.

## COUNT IV
### FRAUD
### (AGAINST CEG, EDWARD TUREN AND NEAL TUREN)

63.     Plaintiff, DDR, incorporates by reference the foregoing allegations of this Complaint.

64.     After taking out the revolving credit facility and agreeing to the cash sweep arrangement with TD Bank, and, further, after learning that Oxford would be unable to pay the Service Provider Invoices underlying the Business Unit Invoices, Oxford, at the direction of the Turens, continued to issue daily Business Unit Invoices and supporting data files that contained misrepresentations and omissions of material fact indicating that Oxford would use the funds obtained from DDR, consistent with the terms of the Services Agreement, for the sole purpose of paying, within six days, the Service Provider Invoices underlying those Business Unit Invoices.

65.     In actuality, the funds were to be swept by CEG for use in servicing the Borrowers' credit facility, when it was known that the credit facility was no longer able to generate cash sufficient to pay the outstanding Service Provider Invoices for which DDR was being invoiced.

-14-

66.    Those misrepresentations and omissions were made with knowledge that the funds received from DDR's payment of Business Unit Invoices would not be used as represented and as required by the Services Agreement, and for the purpose of inducing DDR's reliance through its continued payment of Business Unit Invoices.

67.    DDR justifiably relied, to its detriment, on those misrepresentations and omissions by timely paying each Business Unit Invoice, at all times during the life of the Services Agreement, with the understanding that Oxford would use those funds to pay the underlying Service Provider Invoices, in accordance with the terms of the Services Agreement.

68.    As a direct and proximate result of Defendants' omissions and misrepresentations, as alleged herein, DDR has suffered damages in an amount to be determined at trial.

## COUNT V
## CIVIL CONSPIRACY
### (AGAINST ALL DEFENDANTS)

69.    Plaintiff, DDR, incorporates by reference the foregoing allegations of this Complaint.

70.    Defendants, along with Oxford, formed and operated a civil conspiracy by agreeing, as participants in the TD Bank loan facility, to a procedure whereby cash would be swept by CEG from the operations accounts of the Borrowers and, in turn, swept by TD Bank for servicing the debt. This agreement was formed and intended to include Oxford and the funds Oxford received from DDR in payment of Business Unit Invoices, pursuant to the Services Agreement, with full knowledge that Oxford had no rights to those funds apart from any fees negotiated with individual service providers and that Oxford was required under the Services Agreement to hold those funds for the sole purpose of paying, within six days, the underlying Service Provider Invoices.

71.     Defendants committed wrongful acts furtherance of that conspiracy, including: CEG, at the direction of the Turens, misappropriated funds entrusted to Oxford by DDR for payment of Service Provider Invoices, but which CEG used for the benefit of Defendants; and Oxford, at the direction of the Turens, fraudulently induced DDR to pay Oxford Business Unit Invoices when Oxford had no intention of using the funds received for payment of Service Provider Invoices or, indeed, of paying the underlying Service Provider Invoices through any means.

72.     As a direct and proximate result of the acts committed in furtherance of the conspiracy, DDR has suffered damages in an amount to be determined at trial.

## JURY DEMAND

Plaintiff hereby demands a jury upon any issues in this matter to which it is entitled.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, DDR Corp., demands the following relief:

A.     An award of compensatory and punitive damages in favor of DDR in excess of $25,000, in an amount to be determined at trial;

B.     DDR's reasonable costs and attorneys' fees;

C.     All other such relief as this Court may deem just, equitable or appropriate under the circumstances.

Dated:  March 18, 2013

Respectfully submitted,

Robert S. Walker (0005840)
rswalker@jonesday.com
Nicholas B. Wille (0084604)
nwille@jonesday.com
JONES DAY
901 Lakeside Avenue, North Point
Cleveland, Ohio 44110
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212

*Counsel for Plaintiff DDR Corp.*



## SERVICES AGREEMENT

This Services Agreement (this "Agreement") is made as of the ___ day of January, 2008 (the "Effective Date") by and between Oxford Building Services, Inc., a Delaware corporation, with its principal offices at 3379 Peachtree Rd. NE, Suite 750 Atlanta GA 30326 ("Oxford"), and Developers Diversified Realty Corporation, an Ohio corporation ("DDR"), with its principal offices at 3300 Enterprise Parkway, Beachwood, Ohio 44122.

### RECITALS:

A. Oxford is in the business of providing facility maintenance services that optimize the facility maintenance process for companies with multi-unit facility management needs through the use of software, vendor management tools, statistical modeling and analysis, paperless invoicing and a transaction/call center, and Oxford desires to provide such services to DDR.

B. DDR owns and/or manages open-air shopping centers and specialty centers throughout the United States (all such properties owned and/or managed by DDR which are subject to this Agreement, or which in the future become subject to this Agreement, collectively, the "Business Units").

C. DDR desires to increase the efficiency and quality of various third-party services delivered to the Business Units and, as a consequence, provide enhanced benefits to the tenants at the Business Units and the owners of the Business Units.

D. Oxford and DDR desire to enter into this Agreement, pursuant to which Oxford shall provide such services to DDR at the Business Units upon the terms and conditions contained herein as more specifically described herein.

NOW, THEREFORE, in consideration of the foregoing premises, the mutual promises contained herein and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto hereby agree as follows:

1.     __Scope of Work.__

(a)     Oxford shall provide the services and activities in conformity with the specific "Scope of Work" set forth with respect to each of the Business Units attached as Schedule A hereto, made a part hereof, and incorporated by reference as if fully written herein (the "Services").   Oxford shall commit sufficient personnel, facilities, technology and other resources, as reasonably determined by both parties, to timely and satisfactorily perform the Services as applicable to each of the Business Units.

(b)     Oxford shall consult with the personnel of DDR and other appropriate persons as necessary to assure understanding of the work required by DDR and the satisfactory completion thereof.  DDR agrees to reasonably cooperate with and provide reasonable assistance to Oxford, including, but not limited to, designating a person or persons whom Oxford will contact and who will regularly   (i) meet, review and discuss with Oxford the Services and timeline for performance of the Services, (ii) assist in setting up meetings, conferences and other arrangements with DDR personnel to facilitate performance under this Agreement and (iii) ensure that all information and issues required for review by DDR are made available to Oxford.

(c)     The initial population of the Business Units for which Services are to be provided by Oxford will consist of approximately 835 business units and are listed on Schedule B attached hereto (such list, as may be amended from time to time in the sole and absolute discretion of DDR, sometimes hereinafter referred to as the "Business Unit List"). DDR shall, from time to time, but at least monthly, provide Oxford with either a list of changes to the Business Unit List or an updated Business Unit List with all modifications, additions, and deletions conspicuously highlighted thereon. In addition, DDR shall notify Oxford in writing no more than three (3) days after the removal of a Business Unit from or addition of a Business Unit to the Business Unit List, as the case may be.

(d)     Oxford shall maintain true, accurate, and complete records related to the Business Units and the Services.  Oxford does not own any data, information or material that DDR submits to Oxford in the course of performing the Services or such other data, information, or

materials that Oxford creates based on the data, information or other materials submitted by DDR ("Customer Data"). DDR shall have sole responsibility for the accuracy, quality, integrity, legality, reliability, appropriateness, and intellectual property ownership or right to use of all Customer Data.  Upon 5 business days written notice from DDR, Oxford shall make available to DDR a file of the Customer Data.

(e)     Oxford agrees that all Services furnished hereunder will be provided in a workmanlike and conscientious manner and in compliance with the Scope of Work specifications applicable to a particular Business Unit. Any variance in compliance with the Scope of Work shall be mutually agreed to by the parties.

(f)     During the Initial Term and the Renewal Term (as hereinafter defined), DDR hereby agrees that Oxford shall be the exclusive provider to the Business Units of the services listed on the table of General Ledger Codes included in Schedule A.

2.     **Term.**

(a)     The term of this Agreement shall be for 1 year (the "Initial Term), commencing on the Effective Date.  At the conclusion of the Initial Term, unless either party gives written notice of termination to the other party as provided herein, this Agreement shall automatically renew on an annual basis for additional one (1) year periods (the "Renewal Terms").

(b)     DDR may terminate this Agreement, with or without cause, by giving ninety (90) days written notice of termination to Oxford. Oxford may terminate this Agreement, with or without cause, by giving ninety (90) days written notice of termination to DDR.

3.     **Vendor and other Third Party Expenses.**

Every business day, Oxford shall forward to DDR a data import file in accordance with specifications provided by DDR. The file shall contain invoices for each applicable DDR business unit ("Business Unit Invoices").   The Business Unit Invoices shall be derived from

invoices received by Oxford from the Service Providers for work performed at the Business Units ("Service Provider Invoices"). Oxford agrees to forward Business Unit Invoices to DDR no less than 14 calendar days prior to the payment due date for the Service Provider Invoices. Once a week, DDR shall issue checks to Oxford for payment of Business Unit Invoices. Payment shall be sent to Oxford via overnight courier. Each individual Business Unit Invoice shall be due and payable by DDR no less than 6 calendar days prior to the payment due date for the underlying Service Provider Invoice. In cases where DDR disputes such Business Unit Invoice, any such dispute shall be limited to DDR's reasonable belief, as supported by supporting documentation, that said disputed amount is either: (i) mathematically incorrect, or (ii) not in accordance with this Agreement. In such event, DDR must notify Oxford in writing of any disputed amount within ten (10) calendar days of DDR's receipt of Oxford's Business Unit Invoice, and thereafter the parties shall attempt in good faith to resolve such dispute within ten (10) calendar days of Oxford's receipt of DDR's notice. Oxford shall pay any applicable Service Provider Invoice no more than 6 calendar days after receipt of payment from DDR. Oxford agrees that payments relating to the Service Provider Invoices shall be made via wire transfer, check or cash payment and shall not be made using a purchase card or other corporate credit card. Provided that DDR has timely paid the applicable Business Unit Invoice, Oxford shall bear all liability associated with the late payment of any Service Provider Invoice and Oxford shall be solely responsible for any fees or penalties associated with such late payment. DDR agrees to reimburse Oxford for any liability, fee or penalty Oxford incurs in connection with a Service Provider Invoice as a result of DDR's failure to make timely payment of a Business Unit Invoice. Oxford shall, at its expense, reasonably support its Business Unit Invoices to DDR with a summary of the work performed and which Service Providers performed such work. Either party's failure to timely pay any invoices in accordance with this Section 3 shall constitute a material breach of this Agreement by such party.

4. **Program and Administrative Fees.**  As and for its consideration for entering into this Agreement and providing the Services hereunder, Oxford shall be solely entitled to retain any administrative, service, participation and/or program fees negotiated with the respective Service Providers rendering the various services or supplying materials to the Business Units.

{00057924.DOC.3}                                         4

5.    **Books and Records; Audit Rights.**  Oxford shall keep, at its own expense, accurate books and records with respect to the Services provided by Oxford and with respect to the charges payable by DDR hereunder in a form mutually agreed to by the parties.  Oxford agrees to provide DDR with the financial reports set forth on attached Schedule A.  Such reports will be provided to DDR pursuant to the timeframes set forth on such Schedule A in order for DDR to maintain its books and records in accordance with generally accepted accounting principles as well as applicable governmental and stock exchange regulations.  Oxford's books and records shall be kept at Oxford's principal place of business, and such books and records shall be made available to DDR and its representatives upon reasonable advance written notice during normal business hours not more frequently than on a quarterly basis for examination, audit, inspection, transcription and copying so as to allow DDR to verify all invoices, bills and charges required to be paid by DDR pursuant to the terms of this Agreement.  DDR reserves the right to require Oxford, at Oxford's expense, to provide to DDR audited financial statements and such other information that DDR reasonably requests in order evaluate Oxford's ability to provide continuous service under this Agreement.  DDR shall also have the right, no more than once per year, to request, at DDR's expense, a Type II SAS 70 report in order to address DDR's Sarbanes-Oxley compliance requirements.  To the extent that any such Type II SAS 70 report is used by Oxford for any other purpose or for any other Oxford client or customer, Oxford agrees to reimburse DDR the full cost for such report.

6.    **Compliance with Laws.**    The Services provided hereunder, and all acts undertaken by Oxford and DDR in connection with this Agreement, shall comply with all applicable (federal, state and local) laws, ordinances, rules and regulations, including, without limitation, all applicable labor and employment and environmental laws, ordinances, rules and regulations.  Oxford agrees to obtain and pay for all applicable permits, and licenses required in connection with performance of the Services.  Any taxes imposed in connection with the Services shall be paid by the party upon whom such taxes are imposed by the applicable local, state or federal taxing authority.

{00057924.DOC.3}                                           5

7.  **Representations and Warranties.**  Each party represents to the other that its has the requisite power and authority to enter into and perform the terms of this Agreement; the execution and delivery of this Agreement and the consummation of the transactions contemplated hereby have been duly authorized; and no other proceedings on the part of such party is necessary in order to consummate this Agreement.  Neither the entry into nor the performance of or compliance with this Agreement has resulted, or will result, in any violation of, or is or will be in conflict with, or constitutes or will constitute a default under any limited liability company operating agreement, corporate charter, certificate of incorporation, by-law, partnership agreement, operating agreement, contract, judgment, decree, order, statute, rule or regulation, applicable to such party.  To the extent that the Services performed at and/or materials provided to the Business Units by Oxford and/or the Service Providers include any guaranties or warranties, Oxford hereby does, to the extent assignable, assign all such guaranties and warranties to DDR.

8.  **Confidentiality.**  Oxford, for itself, its principals, affiliates, employees and agents, agrees to treat as strictly confidential all Customer Data.  Such Customer Data will only be disclosed to the extent reasonably necessary for Oxford's principals, affiliates, employees and agents to perform Oxford's obligations hereunder, and Oxford will take all reasonable measures to assure that the recipients of such Customer Data from Oxford protect the confidentiality thereof.  Without the prior written consent of DDR, which may be withheld in DDR's discretion, Oxford will not make any public disclosure of this Agreement or any relationship whatsoever between DDR and Oxford.  Oxford acknowledges that DDR's Customer Data is unique and that monetary damages would be insufficient to compensate DDR for any breach of this Section 8 by Oxford, its principals, affiliates, employees or agents.  Accordingly, Oxford agrees that, in addition to any other available remedy, DDR shall be entitled to injunctive and other special and equitable relief in connection with any such breach.

9.  **Intellectual Property.**  The Services provided to DDR hereunder may include data, modules, components, designs, utilities, subsets, objects, program listings, tools, models, methodologies, programs, systems, analysis frameworks, leading practices, and specifications (collectively, "Technical Elements") owned or developed by Oxford prior to, or independently

from, its engagement hereunder, including, without limitation, the fmPilot maintenance and asset management system (web-based portal and software) (collectively, "Oxford Technical Elements") and Oxford retains exclusive ownership rights to all Oxford Technical Elements. Accordingly, to the extent that any such Oxford Technical Elements are integrated into any deliverables provided to DDR pursuant to this Agreement, Oxford hereby grants to Client a worldwide, multi-site, non-exclusive, paid-up, unlimited license to use, copy and modify such Oxford Technical Elements as integrated into such deliverables for internal purposes only during the term of this Agreement and any mutually agreed transition period post-termination of this Agreement. DDR acknowledges and agrees that any all modifications or enhancements to the Oxford Technical Elements shall be and remain the sole property of Oxford. Moreover, notwithstanding anything to the contrary contained herein, Oxford retains all rights to its knowledge, experience and know-how (including processes, ideas, concepts and techniques) acquired in the course of performing the Services. The Oxford name, logos, and the product names associated with the Services are trademarks of Oxford or third parties, and no right or license is granted to DDR with respect to same. Similarly, this Agreement is not a sale and does not convey to Oxford any rights of ownership in or related to the Customer Data or any intellectual property rights of DDR. The DDR name, logos, and marks are trademarks of DDR, and no right or license is granted to Oxford with respect to same, except as may be expressly granted pursuant to a separate written agreement between the parties.

10.  **Insurance.**  Unless specifically waived by DDR in writing upon request of Oxford, Oxford shall maintain, at Oxford's expense, commercial general liability insurance with an insurance company licensed to do business in the United States earning a minimum rating of A, Financial Size X in Best's Reports.  Such insurance shall provide for minimum limits of US$1,000,000 bodily injury and US$1,000,000 property damage per occurrence, with a products liability aggregate limit of at least US$5,000,000, with a US$2,000,000 per location annual aggregate limit, coverage for contractual indemnification obligations, and broad form endorsements naming and covering DDR as an additional insured, and shall be primary over any and all other collectible insurance Oxford shall maintain, at Oxford's expense, Blanket Commercial Crime Insurance with a policy limit of not less that US$10,000,000 covering loss of DDR's funds and property in Oxford's care, custody or control, and caused by a dishonest act on

the part of any agent, servant or employee of Oxford and name DDR as Loss Payee. Oxford shall maintain, at Oxford's expense, statutory Workers Compensation and Employers Liability for limits of US$500,000. The purchase of such insurance and furnishing of such certificates shall not limit Oxford's obligations hereunder or in any way modify Oxford's agreement to indemnify DDR as set forth herein. Oxford shall require all Service Providers which provide services to DDR to maintain the same insurance levels as stated above, excluding Commercial Crime insurance, but including Commercial Auto Liability insurance, for service contracts requiring the utilization of vehicles in the performance of services, for limits of $US1,000,000 per accident plus Commercial Auto Liability insurance, for contracts requiring the utilization of vehicles in the performance of services, for limits of $US1,000,000 per accident . If Service Providers are unable to provide commercial general liability insurance on a per location basis, Oxford and DDR will determine an appropriate minimum level of umbrella/excess insurance to be carried by the Service Provider.

11.   <u>Indemnification</u>.

(a)   Oxford agrees to indemnify and hold harmless DDR, and its shareholders, directors, officers, employees and agents of each of them, from and against any and all damages, claims, demands, losses, actions, proceedings, judgments, penalties, fines, liabilities, costs or expenses (including, without limitation, reasonable attorneys' fees and expenses) that may arise out of, result from, or be attributable to any negligent act or omission of Oxford and Oxford's affiliates and all of their respective directors, officers, employees, agents, suppliers, vendors or subcontractors in connection with the performance of Oxford's Services under this Agreement, including, without limitation, any claims for payment from any Service Providers to the extent that DDR has previously paid the applicable Business Unit Invoice relating to such Service Provider claim. In addition, Oxford agrees to indemnify, defend and hold DDR harmless from any and all claims, actions, damages, liabilities, costs and expenses, including reasonable attorneys' fees and expenses, arising out of or relating to third party claims of infringement of any trade secrets, copyrights, trademarks, service marks, trade names, United States patents, or similar proprietary rights alleged to have occurred related to information, products, software, hardware or other property (including data obtained from third-party databases) provided by

{00057924.DOC.3}                                    8

Oxford to DDR.  If any such information, product, software, hardware or other property, provided by Oxford to DDR pursuant to the Services rendered by Oxford hereunder, becomes the subject of a claim, or Oxford reasonably believes use of such product may become the subject of a claim, Oxford may, at its own expense and option: (i) procure for DDR the right to continue use of the product; or (ii) replace or modify the product.

(b)      DDR agrees to indemnify and hold harmless Oxford, and its shareholders, members, directors, officers, employees, affiliates and agents of each of them, from and against any and all damages, claims, demands, losses, actions, proceedings, judgments, penalties, fines, liabilities, costs or expenses (including, without limitation, reasonable attorneys' fees and expenses) that may arise out of, result from, or be attributable any negligent act or omission of DDR and DDR's affiliates and all of their respective directors, officers, employees, agents, suppliers, vendors or subcontractors. In addition, DDR agrees to indemnify, defend and hold Oxford harmless from any and all claims, actions, damages, liabilities, costs and expenses, including reasonable attorneys' fees and expenses, arising out of or relating to third party claims of infringement of any trade secrets, copyrights, trademarks, service marks, trade names, United States patents, or similar proprietary rights alleged to have occurred related to information, products, software, hardware or other property (including data obtained from third-party databases) provided by DDR to Oxford.  If any such information, product, software, hardware or other property, provided by DDR to Oxford, becomes the subject of a claim, or DDR reasonably believes use of such product may become the subject of a claim, DDR may, at its own expense and option: (i) procure for Oxford the right to continue use of the product; or (ii) replace or modify the product.

12.     **Assignment; Subcontracting.**

This Agreement shall not be assigned by either party without the prior written consent of the other party; provided that either party may assign this Agreement without such consent to an entity that (i) is controlled or affiliated with such party, or (ii) acquires all or substantially all of the business or assets of such party pertaining to the subject matter hereof, whether by merger, reorganization, acquisition, sale or otherwise.

13.     **Termination.**

(a)     In the event that Oxford shall materially default in the performance of the Services with respect to its obligations hereunder and such default shall remain uncured for a period of thirty (30) days after written notice by DDR indicating in detail the nature of such default by Oxford, then DDR may terminate the Services by serving written notice of such termination upon Oxford. In the event that DDR shall materially default in the performance of its obligations hereunder and such default shall remain uncured for a period of thirty (30) days after written notice by Oxford indicating the nature of such default by DDR, then Oxford may terminate this Agreement by serving written notice of such termination upon DDR.

(b)     Notwithstanding any provision of this Agreement to the contrary, DDR shall have the right to terminate this Agreement immediately, in whole or in part, if (a) Oxford becomes insolvent or makes a general assignment for the benefit of creditors or (b) a petition is filed or proceedings are commenced against Oxford under any bankruptcy law.

(c)     Notwithstanding any provision of this Agreement to the contrary, Oxford shall have the right to terminate this Agreement immediately, in whole or in part, if (a) DDR becomes insolvent or makes a general assignment for the benefit of creditors or (b) a petition is filed or proceedings are commenced against DDR under any bankruptcy law.

(d)     Immediately after the receipt of a termination notice pursuant to the terms of this Agreement, the parties shall commence, in good faith and in a professional manner, efforts to

effect a smooth and timely transition of all Customer Data and other materials and services provided hereunder. Termination transition activities shall include, without limitation, the (a) preparation of reports that accurately and completely communicate the status of all work orders in progress and invoice and payment status of each such work order, (b) payment of outstanding approved and undisputed charges to Service Providers (c) issuance by Oxford of Internal Revenue Service Form 1099s where required (d) distribution of all pertinent reports and service contracts, (e) electronic conversion of data from fmPilot to any replacement system designated by DDR, (f) referral of tenant and Service Provider calls from Oxford to DDR for a period of at least 60 days after the effective date of any termination.

     14.    **Notices.**  All notices, requests, consents or other communications provided for in or to be given under this Agreement shall be in writing, may be delivered in person, by overnight air courier or by facsimile transmission, with verbal confirmation and shall be deemed to have been duly given and to have become effective (a) upon receipt if delivered in person, (b) one day after having been delivered to a nationally recognized overnight air courier, or (c) upon verbal confirmation of receipt if delivered by facsimile transmission, directed to the parties or their assignees at the following addresses (or at such other address as shall be given in writing by a party hereto):

    If to Oxford:

        Oxford Building Services, Inc.
        3379 Peachtree Rd. NE
        Suite 750
        Atlanta, GA 30326
        Attn: Chief Executive Officer
        Phone: (866) 594-2258

If to DDR:

> Developers Diversified Realty Corporation
> 3300 Enterprise Parkway
> Beachwood, OH 44122
> Attn: Senior Vice President – Property Management
> Fax: (216) 755-1558

And to:

> Developers Diversified Realty Corporation
> 3300 Enterprise Parkway
> Beachwood, OH 44122
> Attn: General Counsel
> Fax: (216) 755-1650

15.    **Relationship of Parties**.   Oxford shall be deemed for all purposes to be an independent contractor of DDR and nothing contained herein shall be construed as creating any relationship of employment, partnership, joint venture or similar arrangement between Oxford and DDR.  DDR shall not be responsible for any withholding or sales taxes payable with respect to Oxford's compensation hereunder, it being agreed that Oxford shall be solely responsible for the payment of any such taxes.  Furthermore, Oxford acknowledges and agrees that is shall be solely responsible for the issuance of Internal Revenue Service Form 1099s to all Service Providers where required by law.

16.    **Entire Agreement; Amendments; Waiver.**  This Agreement, and the Exhibits to this Agreement constitutes the complete and exclusive statement of the terms and conditions between the parties respecting the subject matter hereof, and supersedes and merges all prior proposals, understandings and all other agreements, oral and written, between the parties relating to this Agreement.  This Agreement may not be amended, modified or altered except by a written instrument signed by authorized representatives of both parties.  No failure or delay on the part of either party to exercise any right, privilege or power under the Agreement shall operate as a

waiver or relinquishment thereof, nor shall any single or partial exercise by either party preclude any other or further exercise thereof, or the exercise of any other right, privilege or power.

17.    **Severability**.  The invalidity of any provision of this Agreement shall not render invalid any other provision, it being the intention of the parties that the terms hereof will be construed in such fashion as to make all of such provisions valid and enforceable to the full extent permitted by applicable law.

18.    **Governing Law**.  The validity, interpretation and performance of this Agreement shall be determined in accordance with the local laws of the State of Ohio, without application of its conflicts of laws principles.

19.    **Venue**.  The parties hereto hereby consent to the exclusive jurisdiction and venue of the courts of proper subject matter jurisdiction located in the State of Ohio for all purposes related to this Agreement or any contract related to this Agreement.

[SIGNTURES APPEAR ON THE NEXT PAGE]

IN WITNESS WHEREOF, the parties hereto have executed this Agreement to be effective as of the date set forth above.

DEVELOPERS DIVERSIFIED REALTY CORPORATION

By:

Name: John S. Kokinchak

Title: Senior Vice President Property Management

OXFORD BUILDING SERVICES, INC

By:

Name: Richard Mataro

Title: Director

## GUARANTY

Control Building Services, Inc. ("Guarantor") as a material inducement to and in consideration of DDR entering into the Agreement with Oxford, of even date herewith, unconditionally and absolutely guarantees and promises, to and for the benefit of DDR, its successors and assigns, that Oxford shall perform the provisions of the Agreement that Oxford is to perform under the Agreement and the full performance and observance of all of the covenants, terms, conditions and agreements therein provided to be performed and observed by Oxford, its successors and assigns. The defined terms used herein shall have the same meaning as set forth in the Master Services Agreement set forth above.  Guarantor's obligations are independent of Oxford's obligations under the Agreement and shall not be discharged except by payment to and receipt by DDR of all sums due under the Agreement and the performance of all covenants, terms, and conditions under the Agreement.  A separate action may be brought or prosecuted against

Guarantor whether the action is brought or prosecuted against any other guarantor or Oxford, or all, or whether any other guarantor or Oxford, or all, are joined in the action.

CONTROL BUILDING SERVICES, INC.

By:_____

Name:  Richard Matero

Title:  President

*Schedule A − Statement of Work DRAFT*


OXFORD

## SCHEDULE A: SOLUTION DESCRIPTION

### 1) SYSTEM SETUP, CONFIGURATION AND IMPLEMENTATION

The System is defined as the Maximo database and fmPilot. Oxford shall provide the System setup, configuration and implementation, including the setup the service provider management services component. Timelines will be followed by the parties hereto and each party will act in good faith to meet the timelines unless otherwise mutually agreed to in writing.

**Licenses**
Oxford has the authority to grant and hereby grants to DDR a non-exclusive, irrevocable, worldwide and perpetual license to use the System during the Term and for nine months after termination to (a) copy, distribute, transmit, display and otherwise use the System (including documentation, upgrades, modifications, patches or fixes thereto) and (b) provide access to the fmPilot web-based portal to an unlimited number of end users. Notwithstanding the aforementioned, the fmPilot and web-based portal are and shall remain the sole and exclusive property of Oxford. Nothing herein shall be construed to grant DDR any ownership to the fmPilot software. DDR agrees to pay a fee in the amount of Twenty-Five Thousand Dollars ($25,000.00) per month for use of the System after termination.

Oxford warrants to DDR that the System delivered to DDR (a) will be free of viruses and (b) will perform substantially in accordance with its accompanying user documentation for 18 months from initial delivery and from each subsequent upgrade.

**Oxford Implementation Process**
The Project implementation consists of several phases. Each phase is designed to gather, design and build the total System for DDR. These phases include:

**Project Kickoff** − This meeting serves as the starting point of the System implementation. In this meeting, each party hereto sets expectations for the implementation and begins the process of implementing the System.

**Data Gathering** − This phase of the Project consists of gathering all relevant data for the implementation and mapping it so that it can be easily incorporated into the new solution. This is accomplished with data provided by DDR from hard copy list, legacy systems and/or through data collection templates that Oxford will provide. In general, this data consists of retained vendor, maintenance category, and user information. This is the initial phase of the Project, and its completion serves as the start of much of the remainder of the Project.

**Business Rules Generation** − This track of the Project covers all aspects of gathering old and creating new business rules that will serve as the foundation of the Project

©Oxford Building Services, 2007 - Proprietary & Confidential
No Part of This Document May Be Used Without Express Written Permission by Oxford Building Services

*Schedule A – Statement of Work DRAFT*


OXFORD

implementation. These business rules include all general workflows, escalation procedures, call scripting, site branding, vendor rules, standard operating procedures ("SOPs") and call center operations, internal and external preventative maintenance ("PM"), and accounts payable procedures. Oxford will also provide sound best practice advice and examples when creating these business tools.

For the Project, the business rules generation phase will also include the following:

◊  DDR will provide predefined business rules/work flows that have been previously developed. These predefined business rules and work flows will be used in the Project. If there are best practices that Oxford is able to provide that is a better fit for the industry segment, then these will be carefully considered by DDR.

◊  Escalation of service requests priority by the requestor.

**Service Provider Acquisition** – The vendors and service providers provide a critical component to the Project. It is understood and agreed by Oxford that DDR wishes to keep a certain segment of its existing vendor and service provider base ("DDR Existing Vendors"). Oxford also has a developed nationwide portfolio of the best-of-the-best vendors and service providers covering all trades ("Oxford's Vendor Network"). The Oxford's vendor management team will work with DDR Existing Vendors to bring them into the Oxford's Vendor Network. This qualification process ensures that DDR Existing Vendors can and will work within the Project. Any openings that remain after DDR identifies DDR Existing Vendors shall be filled with vendors that make up the Oxford's Vendor Network, subject to DDR written approval, not to be unreasonably withheld.

The Service Provider Acquisition phase will include the following steps:

◊  Oxford will contact and communicate to all of DDR Existing Vendors the requirements set forth in the Service Provider Manual, to be developed with DDR during the implementation.

◊  All vendors and service providers, whether or not they are DDR Existing Vendors or approved vendors from Oxford's Vendor Network (hereinafter referred to as "Service Providers") shall be required to execute DDR approved form of services agreement ("Services Agreement"), which shall be between the Service Providers and Oxford. Each fully executed Services Agreement will be stored in the System by Oxford and accessible by DDR.

◊  Obtaining Service Provider signatures on each Services Agreement shall be performed by Oxford's vendor management team in conjunction with DDR property management support, prior to forwarding to DDR for final approval.

*Schedule A – Statement of Work DRAFT*

OXFORD

◊ Oxford will set-up and execute the training on the use of Oxford's systems and DDR SOPs for all Service Providers.

◊ In the event a DDR Existing Vendor is not responding to Oxford's request for information and/or Services Agreement negotiations, then Oxford will communicate this to proper DDR personnel for their intervention or approval of a vendor from Oxford's Vendor Network.

**Bidding** – Oxford agrees that bids shall be obtained for recurring and non-recurring services or repairs unless DDR instructs Oxford otherwise, including but not necessarily limited to, pressure washing, sweeping, landscape maintenance, snow removal, and major expenditures, such as parking lot paving and repair, sidewalk and curb replacements, painting, and canopy repair or replacement which exceed $2500 in cost. Oxford further agrees and acknowledges that its bidding processes shall meet or exceed current DDR standards.

**Data Processing** – Oxford shall be responsible for the data processing, which shall consist of processing of the information gathered through the Data Gathering and Business Rules Generation phases. The primary product of this data processing will be the Maximo database that serves the Project.

**Integration** – Oxford shall provide necessary file formatting and field mapping to ensure proper data transfer from the Maximo database into DDR GL / AP systems and database(s) (this contains the portfolio of locations i.e. Region/Division/Area/District)

**Solution Design and Creation** – Oxford shall complete all tasks required to design and build the fmPilot portal and incorporate the configuration and legacy data that is required to operate the Project. In addition, Oxford shall provide in the store portal the predefined hierarchy structure provided and proven effective by DDR in its sole determination.

**Training** – Oxford shall implement the training phase once the business rules are established. Training shall consist of three distinct training elements. These include Service Provider training, DDR personnel training, and call center customer service representative ("CSR") training. Each shall be accomplished through a combination of on-line tutorials (including an interactive training application for DDR Property Managers), electronic manuals, and conference sessions with Oxford's training staff. Continued training support shall be maintained through the account management throughout the term of the Agreement.

**Transition/Go-Live** – The transition phase contains the activities that are necessary to seamlessly transition from a legacy system to the Project.

**2) SERVICE PROVIDER MANAGEMENT**
Oxford shall provide Service Provider Management Services, which shall be comprised

*Schedule A – Statement of Work DRAFT*


OXFORD

of the following:

*fmPilot*

fmPilot® is the maintenance & asset management system that features sophisticated and comprehensive technology built on the IBM Maximo® platform. Oxford shall ensure that the systems and processes conform to DDR desired operational and business processes as determined by DDR and provided to Oxford. fmPilot is a web-based portal system. Oxford shall provide a comprehensive assessment of DDR facilities management needs and then tailor the software to accommodate DDR facilities management needs as determined by DDR. Pertinent facilities data and parameters that were collected and all business rules established during the implementation process stage will have been incorporated.

Once fmPilot is populated with DDR business rules and fully configured it will provide a complete work order tracking system that measures and tracks every data point in the work order process. Each work order shall have a unique identifier and such identifier will not be used again during the term of this Agreement. The fmPilot technology shall provide complete call center, Service Provider, and DDR functionality to ensure all parties have appropriate visibility needed to ensure a seamless work order process for DDR Facilities. fmPilot includes the following tasks and collects valuable data along each step of the process:

- Facility service calls/requests are input and tracked
- emergency & PM work orders are dispatched to appropriate Service Providers
- work order progress is tracked
- work order tracking audit trail
- warranties
- duplicate calls
- warranty recalls
- parts warranties
- insurance and 3rd party damages
- asset management
- drawings/Facility plans
- invoicing

During the implementation process, standards will be established, based on DDR business rules. These standards drive the accountability and follow-up within the system alerting the CSR's to perform detailed follow-up throughout the process. Additionally, the system has data including the Service Provider's arrival to the Facility, actual time spent on work order, time leaving the Facility, estimated time of arrival changes, parts on order changes, etc. – all metrics will be tracked using the software and Integrated Voice Response ("IVR") Service Provider accountability system.

DDR hereby establishes the following Business Rules for response time between the time that Oxford is notified by DDR and the time when a Service Provider arrives on site :

*Schedule A – Statement of Work DRAFT*



- Emergency Situations: 2 hour response time maximum
- Non-Emergency Situations: 24 hour response time maximum
- Non-Emergency Situations where initial Vendor awarded the work did not respond: 48 hour response time maximum

If Oxford fails to have a Service Provider on site within the maximum response time set forth above, Oxford shall immediately notify the DDR person that made the original request and Oxford shall utilize all commercially reasonable means to ensure that the request is addressed as soon as possible.

fmPilot shall also manage the internal and external PM process. The PM requests are input into the system by Oxford's account management team based on this information being provided to Oxford by DDR in an electronic format and automatically dispatched to the appropriate Service Provider. All PMs shall be followed up to completion by the CSR's at the call center.

## *Call Center*
Oxford shall staff the Call Center with knowledgeable CSR's who will provide intelligent and responsive support for all facility maintenance needs. The Call Center CSR's have been fully trained on the facility maintenance industry and trade specific knowledge. At a minimum, the Call Center shall provide the following components:

- 24/7/365 availability
- Visibility and accountability of every service call via web-based monitoring
- Comprehensive real-time reporting capabilities
- Call Center metrics/service level reporting on demand
- T1 voice lines with 400 simultaneous incoming call capacity, automatic call dispatching, and all generator backed up
- T1 data lines with 250 simultaneous web request capacity and redundant providers
- Dedicated toll free incoming line(s) for DDR only. In the event of termination of the Agreement by either party, Oxford will transfer all rights and responsibility regarding toll-free telephone number(s) used in conjunction with the Service to a location chosen by DDR.
- Quality control through service call surveys and random follow-up
- Oxford shall not allow third party silent monitoring of any of DDR calls.
- DDR shall have the right to silent monitor any of DDR inbound/outbound calls.
- Oxford shall ensure that there is no conflict of interest between the CSR's and Service Providers.
- DDR may request the reassignment of a CSR off of DDR account at any time and for any reason.

©Oxford Building Services, 2007 - Proprietary & Confidential
No Part of This Document May Be Used Without Express Written Permission by Oxford Building Services


OXFORD

*Schedule A – Statement of Work DRAFT*

All Call Center team members shall have complete training on fmPilot, call center technology and DDR specific service level agreement requirements ("SLAs") and other pertinent information. All call center CSR's shall receive continuous training in facility maintenance operations, safety, and life safety.

Oxford shall retain all data collected and stored in connection with the performance of the Services and shall not delete or destroy any of DDR data without DDR prior written approval. Oxford shall implement a backup strategy of performing daily incremental and weekly full backups and full disaster recovery testing of all DDR data collected and stored in connection with the performance of the Services in accordance with DDR technical data and security requirements. Oxford shall make such backup material and disaster recovery testing available to DDR upon request. In the event of any downtime of Oxford's system, Oxford shall use its best efforts to immediately remedy the problem or error and restore to full functionality and recover all data collected. During an event of downtime or required repairs, all calls shall be routed to functioning servers and/or a redundant server and at no time shall the Services be unavailable to DDR. Oxford shall be responsible, at no additional cost to DDR, to track and key in all work orders during such downtime. Oxford understands and agrees that persistent downtime of its systems, busy signals, or excessive wait times are cause for a material breach under this Agreement.

### Decision Framework

Oxford shall, at no additional cost to DDR, utilize standard reporting and statistical analysis tool ("Decision Framework") to manage the Service Providers, determine the root cause of equipment failure, and to assist DDR in improving quality of work and reducing cost.

Decision Framework is composed of the following:

**Dashboards** – Dashboards give a high level view which can be used to drill into specifics on DDR configurable metrics. The Dashboards are graphical and use data updated no less than one time per day about such topics as financial performance of facilities maintenance department, outstanding service requests, Service Provider scorecard statistics, open work orders, etc. Dashboard views are configurable by role and type.

**Data Statistical Engine** – With the data collected at each point in the maintenance process, Oxford shall perform multivariate regression analysis on the equipment and Facility data to give DDR actionable data that allows for predictive and proactive decisions. Oxford analysts will extract data from Oxford's data warehouse and build advanced statistical models and analysis for DDR, customized for DDR needs, using the suite of SAS statistical software. Oxford shall make such data and analysis available to DDR upon request.


OXFORD

*Schedule A – Statement of Work DRAFT*

**Reporting Engine** –Oxford shall provide reports customized for DDR requirements which may be viewed and executed on demand by DDR from a secured web-based browser. With these reports, DDR has the option to further specify custom parameters or filters (such as date range, region, trade, etc.) for the report.

The reporting engine includes reports for DDR, Service Providers and overall system activity.

**Metric Reporting** – Additionally, further customized reports may be created through the use of a web-based report creation tool or ad-hoc reporting tool. With all reports data may be rolled up and summarized at the DDR user's discretion. All the reports are provided to all users in real-time and/or on historical basis. Oxford will provide training for the DDR users.

***Dedicated Account Manager*** – Oxford shall provide a dedicated account manager to support DDR for the duration of this Agreement (the "Dedicated Account Manager"). DDR shall provide suitable office space and internet access for the Dedicated Account Manager while working at DDR premises. The Dedicated Account Manager shall be provided with and must wear at all times Oxford badges while on DDR premises. The Dedicated Account Manager's building access will be restricted to the general work area within the department of the provided office space. Under no circumstance shall the Dedicated Account Manager be considered an employee of DDR.

### Service Provider Management

Service Provider Management encompasses the Service Provider Acquisition phase referred to above, training and support, score carding and key performance indicator monitoring, and Service Provider accountability.

Oxford shall only utilize self-performing Service Providers whenever possible for the FMO Project.



*Schedule A – Statement of Work DRAFT*

OXFORD

### Service Provider Selection

In accordance with the Service Provider Acquisition section above, Oxford will use a best-of-breed vendor selection process that incorporates frequent Service Provider selection using RFPs that cover all retail trades. Each potential vendor will be vetted by checking references, reviewing insurance, looking at the size of company, number of technicians, score carding technical competency utilizing, labor rates, parts, truck charges, and invoicing requirements.

Service level agreements are determined prior to vendors being admitted as a Service Provider. DDR service levels will be communicated to all Service Providers in advance and will also be stored in the fmPilot system.  Some of the service level components are:

- Response time
- Vendor approval time
- Escalation protocols
- Do Not Exceed amounts (DNE)
- On Site time
- Resolution time
- Customer Satisfaction

Oxford shall manage the insurance and documentation process for all Service Providers in accordance with the terms of this Agreement.  Oxford shall obtain and archive Service Provider insurance coverage and certifications and shall provide copies of same to DDR upon request.  System alerts will notify DDR account management team and Service Provider thirty (30) days in advance when coverage is about to lapse so it can be renewed and captured in the system.  Service Providers are prohibited from receiving and accepting work orders while coverage is lapsed. Additionally, it is understood that there may be occasions when insurance requirements may need to be adjusted for certain service events. Oxford and DDR will work together to ensure that proper insurance coverage is in place prior to issuing work orders.

### Service Provider Training, Guidance, & Support

Oxford shall ensure that all Service Providers are trained on how to use the system. Initial training shall be provided on using fmPilot, invoicing procedures, and the IVR. On-going training will be provided throughout the term of the Agreement. Training is delivered via web and/or conference calls.  Additionally, Oxford will provide Service Provider manuals as training reference materials. It is agreed and understood that said Service Provider manuals shall be considered a Deliverable as that term is defined in this Agreement.

*Schedule A – Statement of Work DRAFT*


OXFORD

### Service Provider Scorecards

Oxford shall develop scorecards for DDR which will be available for each Service Provider utilized in fmPilot. The scorecard will provide multiple metrics, weighted scorecard categories and Service Provider benchmarking. DDR and Oxford will monitor rankings and will work with underperforming Service Providers to upgrade their performance.

### Service Provider Portal

Oxford shall provide a portal where Service Providers are notified about incoming work order requests either by alert emails or alert boxes. Service Provider time limits to accept or decline requests are pre-set in the system based on DDR business rules. After time limit elapses, request automatically notifies a CSR for reassignment. When a Service Provider responds within the time limit, a CSR is also automatically alerted.

On work order completion, Service Providers will be required to complete proper invoices electronically and submit for review, approval and payment. If invoice is challenged by DDR, Service Provider is alerted and has opportunity to modify and resubmit.

©Oxford Building Services, 2007 - Proprietary & Confidential
No Part of This Document May Be Used Without Express Written Permission by Oxford Building Services

*Schedule A – Statement of Work DRAFT*                    **OXFORD**

## 3) ACCOUNTING

### *Paperless Invoicing*

The intent of both parties is to use paperless invoicing. In the event a Service Provider is unable or unwilling to do electronic invoicing, then with DDR's prior written consent, Oxford shall input and convert said Service Provider's invoice and submit it to DDR electronically. Oxford covenants and agrees that it shall not increase or in any way mark-up the invoices submitted by the Service Providers. Oxford will be responsible for providing paperless invoicing, requiring the Service Provider to create and submit electronic invoices. Oxford shall keep all contractual rates, regular rates, overtime, trip charges, PM rates, invoicing requirements, etc., in the Maximo database. When a Service Provider generates an invoice, it is able to be electronically checked by comparing multiple data elements, including contracted "Do Not Exceed" with the submitted invoice cost, time charged vs. IVR, contracted hourly rates, contracted trip charges, and to ensure compliance. When an error is found, it is sent back to the Service Provider to research, fix, and then resubmit. Service Providers will be required to submit all electronic invoices within thirty (30) days of the date that service was performed. Any invoice submitted in a method other than said electronic invoice or beyond sixty (60) days from the date of service are subject to denial of payment, unless otherwise agreed to by DDR. Oxford will reconcile invoices with DDR per the service agreement terms.

Oxford represents that its front-end processes perform an automated quality inspection on every invoice to ensure that data is accurate and all work was performed to standard and contractual agreements.

### ACCOUNTS PAYABLE PROCESS / DDR SYSTEMS INTEGRATION

Oxford has experience in working with clients to streamline their accounts payable processes as well as to integrate with their financial, enterprise resource planning (ERP) and enterprise content management (ECM) systems. Oxford acknowledges that it has experience with clients such as DDR that utilize J.D. Edwards as their ERP system.

fmPilot, built on IBM/Maximo technology, is configurable to support integration with or staging of data for various enterprise applications. In most cases, Oxford works with client information technology and finance personnel to provide routine exports of key data elements to an FTP or other secure site.

The current proposed AP process flow chart diagram is provided on the next page of this document. A further definition of the DDR ERP and ECM systems would be required in order to further clarify proposed processes.

*Schedule A – Statement of Work DRAFT*

OXFORD



Figure 1: Current Proposed AP Process Flow

## ACCRUAL REPORT

Oxford shall provide a monthly report summarizing completed work orders by Business Unit categorized by the designated General Ledger accounts set forth in the table below with the amounts that have not been transmitted to DDR in the daily feed as of the last day of the month.  This report shall be delivered by the third business day of the following month.

©Oxford Building Services, 2007 - Proprietary & Confidential
No Part of This Document May Be Used Without Express Written Permission by Oxford Building Services

*Schedule A – Statement of Work DRAFT*



OXFORD



DEVELOPERS
DIVERSIFIED
REALTY

| | ERP / JD Edwards – Training Manual | | |
| --- | --- | --- | --- |
| | **Chart of Accounts** | | |

| | | | |
| --- | --- | --- | --- |
| 633026 | FOOD COURT-GAS | | MR6120102 |
| 711001 | LANDLORD EXPENSES | N | MR6130000 |
| 711145 | JANITORIAL (LANDLORD) | | MR6130005 |
| 711155 | ELEVATOR/ESCALATOR | | MR6130007 |
| 711155 | LANDSCAPING (LANDLORD) | | MR6130010 |
| 711160 | SNOW REMOVAL (LANDLORD) | | MR6130015 |
| 711165 | TRASH REMOVAL | | MR6130020 |
| 711170 | PARKING LOT | | MR6130025 |
| 711175 | REPAIRS | | MR6130027 |
| 711180 | CURB/SIDEWALKS | | MR6130030 |
| 711185 | SIGNAGE | | MR6130035 |
| 711190 | WINDOW CLEANING (LANDLORD) | | MR6130040 |
| 711195 | PEST CONTROL (LANDLORD) | | MR6130045 |
| 711200 | PAINTING | | MR6130050 |
| 711206 | PLUMBING | | MR6130055 |
| 711210 | HVAC (LANDLORD) | | MR6130060 |
| 711215 | ELECTRIC (LANDLORD) | | MR6130065 |
| 711225 | FIRE PROTECTION | | MR6130070 |
| 711235 | SECURITY (LANDLORD) | | MR6130072 |
| 711240 | WALLS (LANDLORD) | | MR6130075 |
| 711245 | STOREFRONT | | MR6130080 |
| 711250 | CANOPY | | MR6130085 |
| 711255 | SEASONAL DECORATIONS | | MR6130086 |
| 711260 | ROOF | | MR6130090 |
| 711265 | MUZAK | | MR6130091 |
| 711270 | POSTAGE | | MR6130092 |
| 711275 | LATE FEES-UTILITIES | | MR6130093 |
| 711280 | TRAVEL | | MR6130094 |
| 711285 | MISCELLANEOUS (LANDLORD) | | MR6130095 |
| 711290 | OFFICE EXPENSE | | MR6130096 |
| 711295 | OFFICE PAYROLL | | MR6130097 |
| 711300 | TENANT IMPS-GENERAL | | MR6130099 |
| 711305 | GAS (LANDLORD) | | MR6130100 |
| 711315 | WATER | | MR6130105 |
| 700000 | NON-RECOVERABLE OP. EXPENSES | N | MR7000000 |
| 712100 | RENTAL EXPENSES | N | MR7010000 |
| 712105 | GROUND LEASE | | MR7010005 |
| 712110 | RENT EXPENSE - B/L | | MR7010007 |
| 712115 | RENTAL EXPENSE, SUBLEASE | | MR7010010 |
| 712120 | CAM EXPENSE, LEASE | | MR7010011 |
| 712125 | RENTAL TAX, LEASE | | MR7010012 |
| 712130 | INSURANCE, LEASE | | MR7010013 |
| 712135 | RE TAX, LEASE | | MR7010014 |
| 712165 | UTILITIES, LEASE | | MR7010016 |
| 712170 | MERCH ASSOC, LEASE | | MR7010018 |
| 713001 | MERCHANTS ASSOC COSTS | N | MR7020000 |
| 713010 | MERCHANTS ASSOC COSTS | | MR7020005 |
| 711500 | ADVERTISING & PROMOTIONS | N | MR7030000 |
| 711510 | ADVERTISING & PROMOTIONS | | MR7030005 |
| 711000 | ANCILLARY INCOME EXPENSES | N | MR7040000 |
| 711060 | UTILITY EXPENSE-TEMP TENANTS | | MR7040004 |
| 711065 | TEMP TENANT - MISC | | MR9999999 |
| 711020 | COMMON AREA EXPENSES | | MR7040005 |
| 711080 | TEMPORARY TENANT EXPENSES | | MR7040010 |

©Oxford Building Services, 2007 - Proprietary & Confidential
No Part of This Document May Be Used Without Express Written Permission by Oxford Building Services

*Schedule A – Statement of Work DRAFT*


OXFORD

| | | | |
|---|---|---|---|
| 714001 | PROFESSIONAL SERVICES | N | MR7050000 |
| 714005 | PROF SERVICE-LEASING COMMS | | MR7050005 |
| 714010 | PROF SERVICE-ASSET MNGT FEE | | MR7050010 |
| 714015 | PROF SERVICE-ACCOUNTING | | MR7050015 |
| 714055 | PROF SERVICES-OTHER | | MR7050020 |
| 714020 | PROF SVCS - TAX EXP - OUTSIDE | | MR7050022 |
| 714025 | PROF SVCS - TAX EXPENSE DDR | | MR7050024 |
| 714030 | PROF SERVICES-LEGAL | | MR7050025 |
| 714040 | PROF SERVICES - DDR LEGAL | | MR7050026 |
| 714045 | PROF SERVICES - DDR LITIGATION | | MR7050027 |
| 714050 | PROF SERVICES - DDR OTHER | | MR7050028 |
| 714055 | PROF SERVICES-OTHER | | MR7050030 |
| 714060 | PROF SERVICES -AMENDMENT REIMB | | MR7050031 |
| 714065 | PROF SERVICES - BANKRUPTCY REI | | MR7050032 |
| 714070 | PROF FEES - STATUTORY REPRESEN | | MR7050033 |
| 714075 | PROF SERVICE-ADMIN FEE | | MR7050035 |
| 714080 | PROF SERVICE-ANC. INCOME FEE | | MR7050040 |
| 714085 | BANK FEES | | MR7050041 |
| 714090 | PRO SER-NON COLL TNT LITIGATIO | | MR7050042 |
| 714095 | PRO SER-NON TENANT LITIGATION | | MR7050043 |
| 714100 | PRO SER-BANKRUPTCIES TENANT | | MR7050044 |
| 714105 | PROF SERVICES-COLLECTIONS | | MR7050045 |
| 711900 | REAL ESTATE TAXES (NON REIMB) | N | MR7080000 |
| 711905 | REAL ESTATE TAXES OUTLOTS | | MR7080005 |
| 711910 | RE TAXES-PENALTIES | | MR7080006 |
| 711915 | RE TAXES - PRIOR YEAR ADJ | | MR7080010 |
| 711920 | TAXES - PERSONAL PROPERTY | | MR7080015 |
| 770002 | TAXES | N | MR7070000 |
| 770010 | FEDERAL INCOME TAX | | MR7070003 |
| 770020 | ANNUAL REPORTS/BUSINESS LICENS | | MR7070004 |
| 770030 | STATE TAXES - FRANCHISE | | MR7070005 |
| 715001 | PROVISION FOR DOUBTFUL ACCTS | N | MR7080000 |
| 715005 | BAD DEBT EXPENSE RESERVES | | MR7080005 |
| 715020 | BAD DEBT EXP-TENANT PY RECOVERY | | MR7080007 |
| 715030 | RECOVERY OF BAD DEBT | | MR7080010 |
| 716001 | ABANDONED PROJECTS | N | MR7090000 |
| 716005 | ABANDONED PROJECTS | | MR7090005 |
| 718001 | EXTRAORDINARY EXPENSE | N | MR7100000 |
| 718010 | EXTRAORDINARY EXPENSE | | MR7100005 |
| 790003 | MINORITY INTERESTS | N | MR7110000 |
| 790100 | MINORITY INTEREST FFO | | MR7110005 |
| 790110 | MINORITY INTEREST NON FFO | | MR7110008 |
| 790120 | OP UNIT INTEREST | | MR7110010 |
| 790110 | MINORITY INTEREST NON FFO | | MR7110015 |
| 717100 | INTEREST EXPENSE | N | MR7120000 |
| 717140 | INTEREST-MORTGAGE | | MR7120005 |
| 717105 | INTEREST - SENIOR NOTES | | MR7120010 |
| 717120 | INTEREST-LINES OF CREDIT (PRIMARY) | | MR7120015 |
| 717199 | INTEREST-MISC | | MR7120020 |
| 717160 | INTEREST-CAPITALIZED | | MR7120025 |
| 717165 | INTEREST-AMORT FMV DEBT | | MR7120028 |
| 717170 | INTEREST-INTERCOMPANY | | MR7120030 |
| 790110 | MINORITY INTEREST NON FFO | | MR7120035 |
| 790110 | MINORITY INTEREST NON FFO | | MR7120040 |

©Oxford Building Services, 2007 – Proprietary & Confidential
No Part of This Document May Be Used Without Express Written Permission by Oxford Building Services


**OXFORD**

*Schedule A – Statement of Work DRAFT*

| | | | |
|---|---|---|---|
| 717140 | INTEREST-MORTGAGE | | MR7120045 |
| 717140 | INTEREST-MORTGAGE | | MR7120050 |
| 717199 | INTEREST-MISC | | MR7120055 |
| 717199 | INTEREST-MISC | | MR7120060 |
| 717610 | AMORTIZATION-LOAN COSTS | | MR7120065 |
| 781000 | DEPRECIATION EXPENSE  (SUGGEST DEPRECIA | N | MR7130000 |
| 781110 | DEPRECIATION-BUILDING | | MR7130005 |
| 781140 | DEPR - FURN & FIXTURES | | MR7130010 |
| 782210 | AMORTIZATION-LEASE COST | | MR7130015 |
| 782210 | AMORT - LEASE COSTS | | MR7130020 |
| 782210 | AMORT - LEASE COSTS | | MR7130025 |
| 719001 | PREFERRED/PROMOTE | N | MR7800000 |
| 719005 | PREFERRED DIVIDENDS | | MR7800001 |
| 719010 | PREF DIVIDENDS CONTRA | | MR7800002 |
| 719015 | JV FFO PROMOTE CONTRA | | MR7800003 |
| 719020 | JV FFO PROMOTE | | MR7800004 |
| 718110 | EXTRAORDINARY EXPENSE | | MR7900000 |
| 718110 | EXTRAORDINARY EXPENSE | | MR7900005 |
| 718110 | EXTRAORDINARY EXPENSE | | MR7900010 |
| 718110 | EXTRAORDINARY EXPENSE | | MR7900015 |
| 718110 | EXTRAORDINARY EXPENSE | | MR7900020 |
| 718110 | EXTRAORDINARY EXPENSE | | MR7900025 |
| 718110 | EXTRAORDINARY EXPENSE | | MR7900030 |
| 718110 | EXTRAORDINARY EXPENSE | | MR7900035 |
| 718110 | EXTRAORDINARY EXPENSE | | MR7900040 |
| 810000 | SALARIES & WAGES | N | MR8010000 |
| 810005 | SALARIES & WAGES | | MR8010005 |
| 810005 | SALARIES & WAGES | | MR8010010 |
| 810010 | SALARIES & WAGES - MALL P | | MR8010015 |
| 810015 | SALARIES & WAGES - TO CAM | | MR8010020 |
| 810005 | SALARIES & WAGES ' | | MR8010025 |
| 810020 | SAL. & WAGES - REIMB | | MR8010030 |
| 810025 | MARKETING SALARIES REIMB | | MR8010035 |
| 810030 | LEGAL REIMBURSEMENT - JV | | MR8010036 |
| 810035 | SALARIES & WAGES-BONUS | | MR8010040 |
| 810040 | SAL & WAGES-PERFORMANCE UNITS | | MR8010045 |
| 810045 | SALARIES & WAGES - STK OPTIONS | | MR8010046 |
| 810050 | SAL & WAGES-RESTRICTED STOCK | | MR8010050 |
| 812000 | SALARIES CAPITALIZED | N | MR8020000 |
| 812005 | SALARIES CAPITALIZED | | MR8020005 |
| 812010 | SALARIES-MAINT. & PROMO | | MR8020010 |
| 815000 | PAYROLL TAXES | N | MR8030000 |
| 815005 | FICA EXPENSE | | MR8030005 |
| 815010 | FICA EXPENSE TO CAM & DEV | | MR8030010 |
| 815015 | FED. UNEMPLOYMENT | | MR8030015 |
| 815020 | STATE UNEMPLOYMENT | | MR8030020 |
| 815025 | WORKERS' COMP. | | MR8030025 |
| 815030 | OTHER TAXES TO CAM | | MR8030030 |
| 818005 | MEDICAL PREMIUM | | MR8040000 |
| 818005 | MEDICAL PREMIUM | | MR8040005 |
| 818005 | MEDICAL PREMIUM | | MR8040006 |
| 818005 | MEDICAL PREMIUM | | MR8040010 |
| 818005 | MEDICAL PREMIUM | | MR8040012 |

©Oxford Building Services, 2007 - Proprietary & Confidential
No Part of This Document May Be Used Without Express Written Permission by Oxford Building Services

*Schedule A – Statement of Work DRAFT*


OXFORD

| | | | |
|---|---|---|---|
| 818005 | MEDICAL PREMIUM | | MR8040015 |
| 818005 | MEDICAL PREMIUM | | MR8040016 |
| 825005 | LIFE INSURANCE | | MR8040020 |
| 825005 | LIFE INSURANCE | | MR8040025 |
| 835005 | BUSINESS TRAVEL EXPENSE | | MR8041030 |
| 830005 | SHORT TERM DISABILITY | | MR8040035 |
| 830005 | SHORT TERM DISABILITY | | MR8040040 |
| 835006 | 401 (K) MATCH | | MR8040045 |
| 840005 | DEF COMPENSATION PLAN | | MR8040050 |
| 840005 | DEF COMPENSATION PLAN | | MR8040055 |
| 848000 | TRAVEL | N | MR8050000 |
| 648005 | AIR TRAVEL | | MR8050005 |
| 848010 | TRAVEL EXP TO CAM&CO. | | MR8050010 |
| 848015 | AIR FARE - CORP PLANES | | MR8050016 |
| 848020 | AUTO RENTALS | | MR8050020 |
| 848020 | AUTO RENTALS | | MR8050025 |
| 848025 | TRAVEL EXPENSE | | MR8050030 |
| 848099 | MISCELLANEOUS | | MR8050035 |
| 848099 | MISCELLANEOUS | | MR8050040 |
| 848099 | MISCELLANEOUS | | MR8050045 |
| 848030 | MILEAGE | | MR8050050 |
| 848035 | MEALS | | MR8050055 |
| 848035 | MEALS | | MR8050060 |
| 848040 | TRUCK, AUTO & PARKING | | MR8050065 |
| 848099 | MISCELLANEOUS | | MR8050070 |
| 848080 | LODGING | | MR8050075 |
| 848055 | TRAVEL AGENT REIMB | | MR8050080 |
| 848060 | ENTERTAINMENT | | MR8080085 |
| 848085 | LEASE CAR | | MR8050090 |
| 848085 | LEASE CAR | | MR8050095 |
| 848085 | LEASE CAR | | MR8050100 |
| 849999 | TRAVEL EXPENSE CONTRA | | MR8050999 |
| 850000 | OCCUPANCY | N | MR8080000 |
| 850005 | OFFICE RENT | | MR8080005 |
| 850005 | OFFICE RENT | | MR8080010 |
| 850005 | OFFICE RENT | | MR8060015 |
| 850007 | ENTERPRISE CAFE | | MR8060017 |
| 852015 | CLEANING | | MR8060020 |
| 850020 | SUPPLIES-CLEANING&MAINT | | MR8060025 |
| 850010 | LANDSCAPING | | MR8060030 |
| 850010 | LANDSCAPING | | MR8060035 |
| 850030 | UTILITIES - HVAC | | MR8060040 |
| 850045 | UTILITIES - ELECTRICITY | | MR8060045 |
| 850040 | UTILITIES - WATER | | MR8060047 |
| 850025 | UTILITIES - GAS | | MR8060050 |
| 850050 | REPAIRS | | MR8060055 |
| 850050 | REPAIRS | | MR8060060 |
| 850050 | REPAIRS | | MR8060065 |
| 850055 | SECURITY - DD OFFICE | | MR8060070 |
| 848099 | MISCELLANEOUS | | MR8060075 |
| 852000 | TELEPHONE | N | MR8070000 |
| 852105 | TELEPHONE | | MR8070005 |
| 852110 | TELEPHONE/CELLULAR | | MR8070010 |
| 852115 | TELEPHONE - INTERNET | | MR8070015 |

©Oxford Building Services, 2007 - Proprietary & Confidential
No Part of This Document May Be Used Without Express Written Permission by Oxford Building Services

*Schedule A – Statement of Work DRAFT*


OXFORD

## PURCHASE COMMITMENT REPORT

Oxford shall provide a quarterly report summarizing all of the outstanding commitments excluding service contracts that are cancelable within a short-term period. The report should show all open commitments, any amounts paid and net amount remaining. The report should show all outstanding commitment as of the last business day of each calendar quarter with the option to retrieve detailed information, if needed. The report shall be delivered by the tenth of the month following DDR's fiscal quarter close.

## 4) PROPERTY LEVEL SERVICES / ACCOUNTS

Under the Service Bundling program, Oxford will manage property level services per the following account table, which includes the General Ledger code for and description of the property level services to be provided.

| | December YTD 2006 Original Budget TOTAL INCLUDED SERVICES |
|---|---|
| **OFFSITE MAINTENANCE** | |
| 621010 - LANDSCAPING (OFFSITE) | 160,625.00 |
| 621050 - RETENTION AREA MAINTENANCE (OF | 58,822.00 |
| 621055 - SWEEPING (OFFSITE) | 110,744.00 |
| 621060 - SNOW REMOVAL (OFFSITE) | 24,400.00 |
| 621200 - PARKING LOT REPAIRS (OFFSITE) | 9,000.00 |
| 621230 - SIGNAGE (OFFSITE) | 22,036.00 |
| 621375 - ELECTRIC REPAIR (OFFSITE) | 21,200.00 |
| **TOTAL Offsite Expenses** | 406,827.00 |
| | |
| **ONSITE MAINTENANCE** | |
| 622010 - LANDSCAPING | 18,335,662.25 |
| 622050 - RETENTION AREA | 773,330.00 |
| 622055 - SWEEPING (ONSITE) | 12,036,049.10 |
| 622060 - SNOW REMOVAL | 13,991,603.06 |
| 622110 - MAINTENANCE SUPPLIES (ONSITE) | 183,871.00 |
| 622115 - GENERAL SUPPLIES | 65,100.00 |
| 622120 - CLEANING SUPPLIES | 4,800.00 |
| 622125 - R/R SUPPLIES | 300.00 |
| 622130 - PAPER SUPPLIES | 900.00 |
| 622140 - EXT JOINT MAINTENANCE SUPPLIES | 200.00 |
| 622145 - MAINTENANCE - COMMON ROOM | 2,250.00 |
| 622155 - MAINTENANCE - R/R | 1,000.00 |
| 622170 - MAINTENANCE - EQUIP/GAS | 1,200.00 |
| 622185 - MUSIC | 2,686.00 |
| 622195 - STRIPING | 2,029,330.00 |
| 622200 - PARKING LOT REPAIRS | 2,263,072.00 |
| 622225 - REPAIRS TO CURB/SIDEWALK | 1,135,997.00 |
| 622230 - SIGNAGE (ONSITE) | 684,146.00 |
| 622235 - SIGNAGE REPAIR | 75,750.00 |
| 622240 - MAINTENANCE - SIGNS | 17,051.00 |
| 622250 - SECURITY | 10,985,873.52 |
| 622285 - SECURITY - VEHICLE EXPENSE | 66,240.00 |
| 622295 - SHUTTLE SERVICE | 62,000.00 |
| 622300 - DAY PORTER | 2,303,254.04 |
| 622305 - PRESSURE WASHING | 2,852,738.04 |
| 622310 - WINDOW CLEANING (ONSITE) | 91,104.00 |
| 622315 - PEST CONTROL | 537,580.44 |
| 622320 - PAINTING (SITE) | 915,548.95 |

*Schedule A – Statement of Work DRAFT*


OXFORD

| | |
|---|---|
| 622325 - REPAIRS TO PLUMBING/IRRIGATION | 1,170,345.00 |
| 622330 - LIFT STATION | 203,512.00 |
| 622335 - SITE LIGHTING-LIGHT BULBS | 2,839,879.98 |
| 622340 - TRAFFIC LIGHT | 29,168.00 |
| 622345 - REPAIRS TO ELECTRIC | 982,488.00 |
| 622350 - MAINTENANCE - POOL/FOUNTAIN | 145,584.00 |
| 622355 - MAINTENANCE - ELEVATOR/ESC. | 428,822.60 |
| 622360 - HVAC | 702,220.00 |
| 622390 - EQUIPMENT RENTAL | 5,150.00 |
| 622415 - MAINTENANCE - MISC. | 127,968.00 |
| 622480 - CONTRACTED SERVICES | 2,420,163.12 |
| **TOTAL Onsite Maintenance** | **78,234,448.11** |

| BUILDING INTERIOR | |
|---|---|
| 623010 - LANDSCAPING-INTERIOR | 100,533.00 |
| 623120 - CLEANING SUPPLIES | 33,921.00 |
| 623125 - R/R SUPPLIES | 1,200.00 |
| 623200 - JANITORIAL-INTERIOR | 986,064.20 |
| 623230 - SIGNAGE-INTERIOR | 26,804.00 |
| 623250 - MALL SECURITY-INTERIOR | 1,084,469.00 |
| 623300 - MAINTENANCE SERVICES-INTERIOR | 663,533.59 |
| 623310 - MAINTENANCE SUPPLIES-INTERIOR | 185,056.00 |
| 623315 - PEST CONTROL-INTERIOR | 7,556.00 |
| 623320 - PAINTING-INTERIOR (BUILDING) | 20,556.00 |
| 623325 - PLUMBING-INTERIOR (BUILDING) | 49,134.00 |
| 623326 - PLUMBING - EXTERIOR (MAJOR) | 10,000.00 |
| 623340 - INTERIOR LIGHTING-LIGHT BULBS | 80,360.00 |
| 623345 - REPAIRS TO ELECTRIC - INTERIOR | 52,410.00 |
| 623350 - POOL/FOUNTAIN-INTERIOR | 8,100.00 |
| 623355 - ELEVATOR/ESCALATOR (INTERIOR) | 198,372.00 |
| 623390 - INT EQUIPMENT RENTAL | 6,000.00 |
| 623480 - CONTRACTED SERVICES-INTERIOR | 1,573,368.68 |
| 623710 - EXP - MALL MGR | 4,450.00 |
| 623860 - REPAIRS TO HVAC | 319,294.00 |
| 623882 - WALLS & CEILING-INTERIOR | 40,137.00 |
| 623884 - FLOORS-INTERIOR | 76,854.00 |
| 623886 - INTERIOR DOORS | 34,218.00 |
| **TOTAL Building Interior** | **6,662,498.47** |

| BUILDING EXTERIOR | |
|---|---|
| 624320 - PAINTING-BUILDING EXTERIOR | 830,417.00 |
| 624880 - EXTERIOR REPAIRS | 57,420.00 |
| 624886 - STOREFRONT & DOORS | 94,070.00 |
| 624888 - WALLS | 135,470.00 |
| **TOTAL Building Exterior** | **1,117,377.08** |

| FOOD COURT | |
|---|---|
| 626200 - JANITORIAL | 170,840.00 |
| 626210 - MAINTENANCE - CLEAN | 8,400.00 |
| 626300 - MAINTENANCE SERVICES | 13,480.00 |
| 626310 - MAINTENANCE SUPPLIES | 3,800.00 |
| 626315 - PEST CONTROL-FOOD COURT | 4,920.00 |
| 626325 - FOOD COURT PLUMBING | 11,130.00 |
| **TOTAL Food Court** | **212,580.00** |

| MAJOR EXPENSES | |
|---|---|
| 628010 - LANDSCAPING (MAJOR) | 513,193.00 |
| 628015 - CURB/SIDEWALK REPAIR (MAJOR) | 506,888.00 |

©Oxford Building Services, 2007 - Proprietary & Confidential
No Part of This Document May Be Used Without Express Written Permission by Oxford Building Services


OXFORD

*Schedule A – Statement of Work DRAFT*

| | |
|---|---:|
| 628320 - PAINTING - INTERIOR (MAJOR) | 32,600.00 |
| 628325 - PLUMBING - INTERIOR (MAJOR) | 14,000.00 |
| 628375 - ELECTRICAL - INTERIOR (MAJOR) | 50,000.00 |
| 628376 - ELECTRICAL - EXTERIOR (MAJOR) | 70,000.00 |
| 628700 - RETENTION AREA MAINT/UPGADE | 17,500.00 |
| 628880 - HVAC REPAIR (MAJOR) | 101,000.00 |
| 628882 - PARKING LOT REPAIR (MAJOR) | 5,084,894.00 |
| 628890 - WALL&CEILING REPAIR-EXT(MAJOR) | 52,100.00 |
| 628906 - STOREFRONT&DOOR RPR-INT(MAJOR) | 21,500.00 |
| 628930 - PAINTING - EXTERIOR (MAJOR) | 2,016,450.00 |
| **TOTAL Major Expenses** | **9,480,106.80** |
| **TOTAL CAM EXPENSES** | **94,613,835.58** |

| DIRECT CHARGES | |
|---|---:|
| 631480 - CHILLED WATER-CONTRACTED SERV | 54,000.00 |
| 631485 - CHILLED WATER-REPAIRS | 71,000.00 |
| 632370 - ELECTRIC-REPAIRS/MAINT | 27,245.00 |
| 632375 - ELECTRIC-REPAIRS/MAINT(MAJOR) | 13,000.00 |
| 632400 - REPAIRS/EXP BILLED TO TENANT | 19,930.28 |
| | |
| **TOTAL DIRECT CHARGES** | **185,175.28** |

| LANDLORD | |
|---|---:|
| 711130 - REPAIRS - MISC TENANT | 1,000.00 |
| 711135 - REPAIRS - MISCELLANEOUS | 34,296.00 |
| 711140 - SUPPLIES | 32,340.00 |
| 711145 - JANITORIAL (LANDLORD) | 224,101.97 |
| 711150 - ELEVATOR/ESCALATOR | 39,318.00 |
| 711155 - LANDSCAPING (LANDLORD) | 231,408.00 |
| 711160 - SNOW REMOVAL (LANDLORD) | 87,650.00 |
| 711170 - PARKING LOT | 315,789.00 |
| 711175 - REPAIRS | 94,450.00 |
| 711180 - CURB/SIDEWALKS | 16,100.00 |
| 711185 - SIGNAGE | 41,146.00 |
| 711190 - WINDOW CLEANING (LANDLORD) | 75,337.00 |
| 711195 - PEST CONTROL (LANDLORD) | 12,960.96 |
| 711200 - PAINTING | 159,400.00 |
| 711205 - PLUMBING | 47,306.00 |
| 711210 - HVAC (LANDLORD) | 442,587.00 |
| 711235 - SECURITY (LANDLORD) | 38,827.00 |
| 711240 - WALLS (LANDLORD) | 6,000.00 |
| 711245 - STOREFRONT | 5,448.00 |
| 711320 - VACANT SPACE - REKEYING/CLEANI | 118,348.00 |
| **TOTAL LANDLORD EXPENSES** | **2,023,810.93** |

| | |
|---|---:|
| **TOTAL EXPENSES** | **96,222,821.79** |

| CAPITAL BUDGET | |
|---|---:|
| 112110 - BUILDINGS | 11,431,490.00 |
| **TOTAL CAPITAL BUDGET** | **11,431,490.00** |

| | |
|---|---:|
| **TOTAL EXPENSES  INCLUDING CAPITAL** | |
| | 107,654,111.79 |

©Oxford Building Services, 2007 - Proprietary & Confidential
No Part of This Document May Be Used Without Express Written Permission by Oxford Building Services

*Schedule A – Statement of Work DRAFT*

OXFORD

©Oxford Building Services, 2007 - Proprietary & Confidential
No Part of This Document May Be Used Without Express Written Permission by Oxford Building Services

Schedule B
Developers Diversified Realty
Business Unit Listing
As of January 2, 2008

| Current BU # | State | City | Property Name |
|---|---|---|---|
| 20001 | MO | Arnold | Jefferson County Plaza |
| 20002 | MI | Benton Harbor | Fairplain Plaza |
| 20004 | MI | Bloomfield Hill | Bloomfield Park (Phase II) |
| 20007 | CA | Buena Park | Buena Park Mall And Entertain |
| 20008 | CA | Buena Park | Buena Park Place(Power Center) |
| 20017 | FL | Stuart | Service Merchandise Stuart, Fl |
| 20018 | IL | Downers Grove | Service Merchandise Downers Gr |
| 20019 | IN | Evansville | Service Merchandise Evansville |
| 20020 | KY | Lexington | Service Merchandise Lexington, |
| 20021 | MA | Burlington | Service Merchandise Burlington |
| 20025 | KY | Louisville | Service Merchandise Louisville |
| 20026 | KY | Paducah | Service Merchandise Paducah, K |
| 20027 | AL | Huntsville | Service Merchandise Huntsville |
| 20028 | TN | Antioch | Service Merchandise Antioch, T |
| 20029 | NY | Middletown | Service Merchandise Middletown |
| 20030 | MA | Swansea | Service Merchandise Swansea, M |
| 20031 | OK | Warr Acres | Service Merchandise Warr Acres |
| 20032 | IL | Burbank | Service Merchandise Burbank, I |
| 20033 | DE | Dover | Service Merchandise Dover, De |
| 20034 | FL | Orlando | Service Merchandise Orlando, F |
| 20035 | LA | Houma | Service Merchandise Houma, La |
| 20036 | NH | Salem | Service Merchandise Salem, Nh |
| 20037 | FL | Ocala | Service Merchandise Ocala, Fl |
| 20038 | GA | Duluth | Service Merchandise Duluth, Ga |
| 20039 | TN | Knoxville | Service Merchandise Knoxville, |
| 20040 | FL | Tampa | Service Merchandise Tampa, Fl |
| 20041 | IL | Lansing | Service Merchandise Lansing, I |
| 20042 | AZ | Mesa | Service Merchandise Mesa, Az |
| 20043 | TX | Mcallen | Service Merchandise Mcallen, T |
| 20044 | FL | Bradenton | Service Merchandise Bradenton, |
| 20045 | SC | N. Charleston | Service Merchandise N. Charles |
| 20046 | IL | Crystal Lake | Service Merchandise Crystal La |
| 20047 | NV | Las Vegas | Service Merchandise Las Vegas, |
| 20048 | VA | Chesapeake | Service Merchandise Chesapeake |
| 20049 | TX | Sugarland | Service Merchandise Sugar Land |
| 20050 | CT | Manchester | Service Merchandise Manchester |
| 20051 | FL | Pembroke Pines | Service Merchandise Pembroke P |
| 20052 | MS | Hattiesburg | Service Merchandise Hattiesbur |
| 20053 | NC | Raleigh | Service Merchandise Raleigh, N |
| 20054 | LA | Metairie | Service Merchandise Metairie, |
| 20055 | FL | St. Petersburg | Service Merchandise St. Peters |
| 20056 | FL | Pensacola | Service Merchandise Pensacola, |
| 20057 | TX | Beaumont | Service Merchandise Beaumont, |
| 20058 | LA | Baton Rouge | Service Merchandise Baton Rouge |
| 20059 | TX | Longview | Service Merchandise Longview, |
| 20060 | TX | Richardson | Service Merchandise Richardson |
| 20061 | TX | Baytown | Service Merchandise Baytown, T |
| 20062 | LA | Bossier City | Service Merchandise Bossier Ci |
| 20063 | MI | Westland | Service Merchandise Westland, |

**Schedule B**
**Developers Diversified Realty**
Business Unit Listing
As of January 2, 2008

| Current BU # | State | City | Property Name |
|---|---|---|---|
| 20064 | TN | Franklin | Service Merchandise Franklin, |
| 20065 | CT | Danbury | Service Merchandise Danbury, C |
| 20066 | NJ | Wayne | Service Merchandise Wayne, Nj |
| 20067 | NJ | Paramus | Service Merchandise Paramus, N |
| 20092 | FL | Brandon | Kmart Shopping Center |
| 20093 | OH | Stow | Kmart Plaza |
| 20094 | OH | Stow | Stow Community Shopping Center |
| 20100 | OH | Westlake | West Bay Plaza |
| 20103 | PA | East Norriton | Kmart Plaza |
| 20105 | FL | Palm Harbor | The Shoppes Of Boot Ranch |
| 20106 | FL | Homestead | Homestead Pavilion |
| 20107 | FL | Tarpon Springs | Tarpon Square |
| 20108 | FL | Hudson | Point Plaza |
| 20110 | IL | Mchenry | The Shops At Fox River |
| 20111 | NH | Seabrook | Seabrook Town Center |
| 20112 | FL | Miami | The Shops Of Midtown |
| 20114 | TX | San Antonio | Village At Stone Oak |
| 20115 | MS | Starkville | Starkville Crossing |
| 20116 | MS | Gulfport | Crossroads Center |
| 20117 | MS | Tupelo | Big Oaks Crossing |
| 20119 | CT | Guilford | Guilford Ct |
| 20120 | FL | Jacksonville | Jacksonville Regional |
| 20124 | CA | Long Beach | The Pike |
| 20126 | ME | Brunswick | Cook's Comers |
| 20127 | CA | Oceanside | Ocean Place Cinemas |
| 20128 | NV | Reno | Reno Riverside |
| 20129 | MA | Everett | Gateway Center |
| 20130 | CA | Pasadena | Paseo Colorado |
| 20133 | MD | Salisbury | The Commons |
| 20134 | MD | Salisbury | The Commons Phase Iii |
| 20137 | GA | Duluth | Pleasant Hill Plaza |
| 20139 | NC | Apex | Beaver Creek Crossings South |
| 20146 | PA | Erie | Peach Street Square |
| 20148 | PA | Erie | Peach Street Square (Ii) |
| 20149 | PA | Erie | 38Th Street Plaza |
| 20150 | CA | San Francisco | Amc |
| 20152 | CA | San Francisco | Van Ness Plaza 215 |
| 20154 | OH | Chillicothe | Chillicothe Place (Lowes) |
| 20155 | AZ | Phoenix | Deer Valley Towne Center |
| 20156 | VA | Martinsville | Liberty Fair Mall |
| 20159 | FL | Tampa | Town N' Country |
| 20161 | OH | Macedonia | Macedonia Commons (Phase Ii) |
| 20164 | OH | Huber Heights | North Heights Plaza |
| 20165 | OH | Lebanon | Countryside Place |
| 20170 | OH | Xenia | West Park Square |
| 20171 | OH | Boardman | Southland Crossing |
| 20172 | OH | Solon | Uptown Solon |
| 20173 | OH | Cincinnati | Glenway Crossing |
| 20175 | IN | Bedford | Town Fair Center |

Schedule B
Developers Diversified Realty
Business Unit Listing
As of January 2, 2008

| Current BU # | State | City | Property Name |
|---|---|---|---|
| 20176 | SD | Watertown | Watertown Mall |
| 20179 | FL | Pensacola | Palafox Square |
| 20181 | NM | Los Alamos | Mari Mac Village |
| 20189 | MO | St. Louis | Plaza At Sunset Hill |
| 20190 | MO | St. Louis | Shoppes At Sunset Hill |
| 20191 | MO | St. Louis | Promenade At Brentwood |
| 20192 | IA | Cedar Rapids | Northland Square |
| 20193 | MO | St. Louis | Olympic Oaks Village |
| 20194 | MO | St. Louis | Gravois Village |
| 20195 | MO | Springfield | Morris Corners |
| 20197 | MO | St. Louis | Southtowne |
| 20203 | OH | Aurora | Barrington Town Square |
| 20204 | MN | Worthington | Northland Mall |
| 20205 | ID | Nampa | Nampa Gateway Center |
| 20207 | ID | Meridian | Family Center @ Meridian |
| 20208 | ID | Idaho Falls | Country Club Mall |
| 20209 | IL | Mt. Vernon | Times Square Mall |
| 20210 | MO | Fenton | Fenton Plaza |
| 20213 | SC | Simpsonville | Fairview Station |
| 20214 | SC | Camden | Springdale Plaza |
| 20215 | SC | Camden | SUPER WALMART |
| 20217 | SC | N. Charleston | North Pointe Plaza |
| 20219 | SC | S. Anderson | Crossroads Plaza |
| 20221 | SC | Orangeburg | North Road Plaza |
| 20222 | SC | Mt. Pleasant | Wando Crossing |
| 20224 | MI | Sault St. Marie | Cascade Crossings |
| 20225 | MI | Cheboygan | Kmart Shopping Plaza |
| 20226 | MI | Walker | Green Ridge Square |
| 20227 | MI | Detroit | Belair Center |
| 20228 | MI | Houghton | Copper Country Mall |
| 20229 | MI | Bad Axe | Huron Crest Plaza |
| 20230 | MI | Gaylord | Pine Ridge Square |
| 20231 | MI | Howell | Grand River Plaza |
| 20232 | MI | Mt. Pleasant | Indian Hills Plaza |
| 20233 | OH | Elyria | Elyria Shopping Center |
| 20234 | UT | Taylorsville | Family Center At Midvalley 495 |
| 20235 | UT | Midvale | Family Center Wingers |
| 20236 | ID | Meridian | Meridian Crossroads |
| 20237 | UT | Midvale | Family Center At Fort Union 50 |
| 20239 | UT | Midvale | Family Center At Fort Union 52 |
| 20240 | UT | Taylorsville | Family Center At Midvalley 503 |
| 20241 | UT | Taylorsville | Family Center At Midvalley 504 |
| 20242 | UT | Orem | Family Center At Orem |
| 20243 | UT | Logan | Family Place @ Logan |
| 20244 | UT | Salt Lake City | Family Place @ 33Rd South |
| 20246 | UT | Riverdale | Family Center At Riverdale 510 |
| 20247 | UT | Riverdale | Family Center At Riverdale 511 |
| 20249 | MN | Bemidji | Paul Bunyan Mall |
| 20251 | UT | Ogden | Family Center At Ogden 5-Point |

Schedule B
**Developers Diversified Realty**
Business Unit Listing
As of January 2, 2008

| Current BU # | State | City | Property Name |
|---|---|---|---|
| 20255 | UT | Riverdale | Family Center @ Riverdale 525 |
| 20256 | UT | Riverdale | Family Center @ Riverdale 526 |
| 20261 | AL | Birmingham | Eastwood Festival Center |
| 20262 | AL | Birmingham | Brook Highland Plaza |
| 20267 | FL | Ormond Beach | Ormond Towne Square |
| 20268 | CA | VALENCIA | MERVYNS VALENCIA |
| 20269 | OH | Columbus | Consumer Square West Columbus |
| 20272 | PA | Hanover | Bjs - Hanover |
| 20273 | MI | Walker | Green Ridge Square Ii |
| 20276 | NC | Mooresville | Mooresville Consumer Square I |
| 20277 | NC | Mooresville | Mooresville Consumer Square II |
| 20279 | NC | Wilmington | University Centre |
| 20280 | VT | Berlin | Berlin Mall |
| 20281 | MN | Brainerd | Westgate Mall |
| 20282 | FL | Spring Hill | Mariner Square |
| 20283 | OH | Tiffin | Tiffin Mall |
| 20286 | CO | Broomfield | Flatiron Marketplace Garden |
| 20287 | CO | Broomfield | Flatiron Marketplace Lifestyle |
| 20288 | CO | Broomfield | Flatiron Marketplace Fashion |
| 20290 | CO | Denver | Centennial Promenade |
| 20291 | ND | Dickinson | Prairie Hills Mall |
| 20294 | MN | Hutchinson | Hutchinson Mall |
| 20295 | NC | New Bern | Rivertowne Square |
| 20298 | NJ | Princeton | Nassau Park Shopping Center |
| 20300 | NJ | Princeton | Nassau Park Pavilion |
| 20301 | NJ | Princeton | Nassau Pavilion (Contra) Iii |
| 20309 | AZ | Phoenix | Paradise Village Gateway |
| 20326 | KS | Wichita | Eastgate Plaza |
| 20328 | AR | Russellville | Valley Park Centre |
| 20329 | AR | N. Little Rock | Mccain Plaza |
| 20331 | IA | Ottumwa | Quincy Place Mall |
| 20332 | NC | Washington | Pamlico Plaza |
| 20333 | IA | Ottumwa | Quincy Place Mall 832 |
| 20336 | KS | Leawood | Town Center Plaza |
| 20337 | CO | Littleton | Aspen Grove |
| 20338 | NC | Durham | Oxford Commons |
| 20339 | TX | San Antonio | Bandera Point North |
| 20340 | TX | San Antonio | Bandera Point South |
| 20341 | FL | Crystal River | Crystal River Plaza |
| 20360 | CO | Denver | Tamarac Square |
| 20365 | CO | Denver | Tamarac Square Convenience Ctr |
| 20388 | FL | Daytona Beach | Volusia |
| 20427 | OH | Dublin | Perimeter Center |
| 20429 | OH | Hamilton | H.H. Gregg |
| 20433 | WV | Barboursville | Barboursville Center |
| 20434 | OH | Columbus | Easton Market |
| 20437 | OH | Columbus | Dublin Village Center |
| 20438 | CA | UKIAH | MENDOCINO CROSSINGS |
| 20439 | NC | Apex | Beaver Creek Crossing North |

**Schedule B**
**Developers Diversified Realty**
**Business Unit Listing**
**As of January 2, 2008**

| Current BU # | State | City | Property Name |
|---|---|---|---|
| 20440 | GA | Lawrenceville | Five Forks Village |
| 20441 | GA | Lilburn | Five Forks Crossing |
| 20442 | TN | Columbus | Columbia Square |
| 20443 | TN | Farragut | Farragut Pointe |
| 20444 | NY | Hamburg | South Park Plaza-Tops |
| 20445 | NY | Norwich | Tops Plaza-Norwich |
| 20446 | NY | Arcade | Tops Plaza-Arcade |
| 20447 | NY | Arcade | Tops Plaza-Blockbuster |
| 20448 | NY | Avon | Tops Plaza-Avon |
| 20449 | NY | Avon | Tops Plaza-Movie Gallery |
| 20450 | NY | Tonawanda | Tops Plaza-Niagara Street |
| 20451 | NY | Tonawanda | Tops Plaza-Niagara Hollywood |
| 20452 | NY | Hamlin | Tops Plaza-Hamlin |
| 20453 | NY | Hamlin | Tops Plaza-Dollar Tree |
| 20454 | NY | Elmira | Tops Plaza-Elmira |
| 20455 | NY | Elmira | Tops Plaza-Elmira |
| 20456 | NY | Tonawanda | Tops Plaza-Tops/Gander |
| 20457 | NY | Tonawanda | Youngmen Plaza |
| 20458 | NY | Tonawanda | Bj's-Young Street |
| 20459 | NY | Tonawanda | Mcdonald's-Young Street |
| 20460 | AZ | Phoenix | Foothills Towne Ctr (ii) |
| 20461 | AZ | Phoenix | Foothills Towne Ctr (iii) |
| 20462 | AZ | Phoenix | Arrowhead Crossing |
| 20463 | AZ | Ahwatukke | Foothills Towne Center (iv) |
| 20464 | MN | Minneapolis | Maple Grove Crossing |
| 20465 | OR | Portland | Tanasbourne Town Center |
| 20466 | OR | Portland | Tanasbourne Town Center (ii) |
| 20467 | MN | Eagan | Eagan Promenade |
| 20483 | NJ | Freehold | Freehold Marketplace |
| 20484 | MA | Norwood | Norwood, Ma |
| 20490 | MS | Jackson | The Junction |
| 20493 | AL | Gadsden | East Side Plaza |
| 20496 | AL | Opelika | Pepperell Corners |
| 20497 | AL | Opelika | Pepperell Corners-Phase II |
| 20499 | AL | Scotisboro | Scotisboro Marketplace |
| 20503 | FL | Gulf Breeze | Gulf Breeze Marketplace |
| 20505 | FL | Ocala | Ocala West |
| 20506 | FL | Tallahassee | Capital West |
| 20511 | GA | Chamblee | Chamblee Plaza |
| 20512 | GA | Cumming | Cumming Marketplace |
| 20513 | GA | Douglasville | Douglasville Marketplace |
| 20516 | GA | Athens | Athens East |
| 20520 | GA | Griffin | Ellis Crossing |
| 20521 | GA | Columbus | Bradley Park Crossing |
| 20535 | GA | Newnan | Newnan Crossing |
| 20540 | GA | Stone Mountain | Rivercliff Village |
| 20542 | GA | Union City | Shannon Square |
| 20544 | GA | Warner Robins | Warner Robins Place |
| 20545 | GA | Woodstock | Woodstock Place |

Schedule B
Developers Diversified Realty
Business Unit Listing
As of January 2, 2008

| Current BU # | State | City | Property Name |
|---|---|---|---|
| 20548 | NC | Fayetteville | Cross Pointe Centre |
| 20558 | SC | Charleston | Ashley Crossing |
| 20559 | SC | Charleston | Ashley Crossing Ii |
| 20560 | CO | Denver | University Hills |
| 20568 | TN | Chattanooga | Overlook At Hamilton Place |
| 20577 | TN | Hendersonville | Hendersonville Lowe's |
| 20578 | TN | Johnson City | Johnson City Marketplace |
| 20579 | TN | Murfreesboro | Memorial Village |
| 20584 | VA | Chester | Bermuda Square |
| 20585 | VA | Lynchburg | Candlers Station |
| 20587 | WI | Brookfield | Sw Of Brookfield (Carx) |
| 20590 | WI | Milwaukee | Point Loomis |
| 20592 | IL | Decatur | Decatur Marketplace |
| 20593 | OH | Gallipolis | Gallipolis Marketplace |
| 20594 | KY | Lexington | South Farm Marketplace |
| 20595 | KY | Lexington | North Park Marketplace |
| 20596 | KY | Richmond | Carriage Gate |
| 20599 | GA | Suwanee | Johns Creek Towne Center |
| 20600 | WI | West Allis | West Allis Center |
| 20602 | MI | Chesterfield | Chesterfield Corners |
| 20606 | IL | Orland Park | Home Depot Center |
| 20608 | KY | Louisville | Outer Loop Plaza |
| 20609 | SC | North Charleston | North Charleston Center |
| 20610 | FL | Jacksonville | Arlington Road Plaza |
| 20611 | NJ | West Long Branch | Monmouth Consumer Center |
| 20612 | NJ | Mays Landing | Wrangleboro Consumer Square |
| 20613 | FL | Orange Park | The Village Shopping Center |
| 20614 | FL | Lakeland | Highlands Plaza Shopping Ctr |
| 20615 | NJ | Hamilton | Wrangleboro Phase Iii |
| 20616 | NJ | Hamilton | Wrangleboro Phase Iv |
| 20617 | OH | Toledo | Dicks - Toledo |
| 20618 | NJ | Mays Landing | Hamilton Commons |
| 20620 | FL | Englewood | Rotonda Plaza |
| 20621 | NC | Indian Trail | Union Town Center |
| 20622 | OH | Ashtabula | Tops Plaza - Ashtabula |
| 20623 | NY | Horseheads | Southern Tier Crossing |
| 20632 | NY | Buffalo | Marshalls Plaza |
| 20633 | NY | West Seneca | Home Depot Plaza |
| 20636 | NY | North Tonawanda | Mid-City Plaza |
| 20637 | NY | Amherst | Burlington Plaza |
| 20640 | NY | North Tonawanda | Pizza Hut - Meadow Drive |
| 20643 | NY | Ithaca | Tops Plaza - Ithaca |
| 20644 | NY | Hamburg | Mckinley Place |
| 20648 | NY | West Seneca | Seneca - Ridge Plaza |
| 20650 | NY | North Tonawanda | Tops Plaza - North Tonawanda |
| 20652 | NY | Hamburg | Home Depot Plaza - Hamburg |
| 20653 | NY | Tonawanda | Office Depot Plaza |
| 20655 | NY | Hamburg | Bjs Plaza - Hamburg |
| 20657 | NY | Olean | Wal-Mart Plaza - Olean |

Schedule B
**Developers Diversified Realty**
Business Unit Listing
As of January 2, 2008

| Current BU # | State | City | Property Name |
|---|---|---|---|
| 20658 | NY | Big Flats | Big Flats Consumer Square |
| 20659 | NY | Plattsburgh | Consumer Square |
| 20662 | NY | Williamsville | Williamsville Place |
| 20663 | NY | Niagara Falls | Home Depot Plaza - N Falls |
| 20664 | NY | Amherst | Boulevard Consumer Square |
| 20666 | NY | Greece | Joann/Petsmart Plaza |
| 20668 | NY | Amherst | Niagara Falls Boulevard |
| 20669 | NY | Buffalo | Elmwood Regal Center |
| 20672 | NY | Blasdell | ROSAS / WEIGHT WATCHERS |
| 20673 | NY | Lockport | Wal-Mart/Tops Plaza - Lockport |
| 20677 | NY | Buffalo | Delaware Consumer Square |
| 20682 | NY | Blasdell | MCKINLEY MALL DICKS OUTPARCEL |
| 20683 | NY | Cheektowaga | Thruway Plaza |
| 20688 | NY | Amherst | Tops Plaza - Transit/N. French |
| 20689 | NY | Amherst | Boulevard Consumer Square |
| 20690 | NY | Cortland | Tops Plaza - Cortland |
| 20692 | NY | New Hartford | Tops Plaza - New Hartford |
| 20693 | NY | Amherst | Tops Plaza-Transit/N. French |
| 20698 | NY | Tonawanda | Sheridan/Delaware Plaza |
| 20701 | NY | Ithaca | Office Max Plaza-Ithaca |
| 20702 | NY | Buffalo | Delaware Consumer Square II |
| 20709 | NY | Gates | Westgate Plaza |
| 20710 | NY | Rome | Freedom Plaza |
| 20714 | NY | Gates | Mcdonalds - Gates |
| 20715 | NY | Gates | Perkins - Gates |
| 20716 | NY | Hamburg | Mckinley Milestrip Center |
| 20717 | NY | Gates | The Shoppes At Westgate Park |
| 20723 | NY | Amherst | Sheridan Harlem Plaza |
| 20725 | NY | Dewitt | Michaels - Dewitt |
| 20726 | NY | CHEEKTOWAGA | WAL-MART - THRUWAY PLAZA |
| 20727 | NY | Chili | Chili Plaza |
| 20729 | NY | Buffalo | Delaware Commons |
| 20732 | NY | Niskayuna | Mohawk Commons |
| 20733 | NY | Dansville | Tops Plaza - Dansville |
| 20736 | NY | Dewitt | Marshalls Plaza |
| 20737 | NY | Victor | Victor Square |
| 20740 | GA | Douglasville | Douglasville Marketplace-Devco |
| 20749 | PA | Allentown | West Valley Marketplace |
| 20751 | MO | St. John | St John Crossing |
| 20753 | CO | Fort Collins | Mulberry And Lemay Crossings |
| 20756 | IN | Lafayette | Park East Marketplace |
| 20758 | FL | Lakeland | Lakeland Marketplace |
| 20760 | GA | Cumming | Jdn Real Estate - Cumming, Lp |
| 20774 | NJ | Hamilton | Hamilton Marketplace |
| 20776 | MI | Lansing | The Marketplace At Delta Towns |
| 20785 | NY | Orchard Park | Crossroad Plaza |
| 20786 | NY | Rochester | Panorama Plaza |
| 20787 | NY | Cheektowaga | Tops Plaza - Union Road |
| 20788 | NY | Amherst | Tops Plaza (Blockbuster) |

Schedule B
Developers Diversified Realty
Business Unit Listing
As of January 2, 2008

| Current BU # | State | City | Property Name |
|---|---|---|---|
| 20789 | NY | Irondequoit | Culver Ridge Plaza |
| 20790 | MS | Oxford | Oxford Place |
| 20791 | NY | Amherst | Tops Plaza - Amherst |
| 20792 | NY | Warsaw | Tops Plaza - Warsaw |
| 20793 | OH | Chillicothe | Chillicothe Place |
| 20794 | NY | Warsaw | Tops Plaza -Hollywood Video |
| 20795 | GA | Loganville | Midway Plaza |
| 20796 | NY | Leroy | Tops Plazal - Leroy |
| 20797 | NY | Leroy | Tops Plaza - Leroy Blockbuster |
| 20798 | NY | Jamestown | Tops Plaza - Jamestown |
| 20799 | NY | Jamestown | Tops Parcel - Jamestown |
| 20800 | NY | Ontario | Tops Plaza - Ontario Blockbust |
| 20801 | NY | Ontario | Tops Plazal - Ontario |
| 20802 | NY | Orchard Park | Crossroads Centre |
| 20803 | TN | Goodlettsville | Northcreek Commons |
| 20804 | NY | Jamestown | Tops Plaza-Jamestown Hollywood |
| 20805 | OH | Columbus | Lennox Town Center |
| 20809 | CT | Plainville | Connecticut Commons |
| 20810 | NY | Clarence | Barnes & Noble |
| 20811 | NY | Cheektowaga | Union Road Plaza |
| 20812 | NY | Cheektowaga | Walden Place |
| 20813 | NY | Clarence | Eastgate Plaza |
| 20814 | NY | Cheektowaga | Borders Books |
| 20815 | NY | Batavia | Bjs Plaza |
| 20816 | NY | Batavia | Martin's Plaza |
| 20817 | NY | Cheektowaga | Consumer Square |
| 20818 | MN | Coon Rapids | Riverdale Village |
| 20819 | MN | Coon Rapids | Riverdale Village Perimeter |
| 20820 | NY | Cheektowaga | Union Consumer Square (II) |
| 20821 | FL | Brandon | Lake Brandon Village |
| 20822 | FL | Brandon | Lake Brandon Plaza |
| 20823 | NY | Clarence | Applebees |
| 20824 | NY | Clarence | Bjs |
| 20825 | NY | Lancaster | Regal Center |
| 20826 | OH | Canton | Belden Park Crossings Ii Llc |
| 20827 | OH | Canton | Belden Park Crossings |
| 20828 | MI | Grandville | Grandville Marketplace |
| 20829 | OH | North Olmsted | Great Northern Plaza North |
| 20830 | OH | North Olmsted | Great Northern Plaza South |
| 20831 | GA | Mcdonough | Mcdonough Marketplace (Lp-II) |
| 20832 | MO | Independence | Independence Commons |
| 20833 | NC | Asheville | River Hills |
| 20834 | NY | Batavia | Batavia Commons |
| 20835 | NY | Cheektowaga | Union Consumer Square |
| 20836 | NY | Clarence | Premier Place |
| 20837 | CO | Aurora | Pioneer Hills |
| 20838 | CO | Parker | Parker Pavilions |
| 20840 | TX | Irving | Macarthur Marketplace |
| 20841 | TN | Brentwood | Cool Springs Pointe |

**Schedule B**
**Developers Diversified Realty**
Business Unit Listing
As of January 2, 2008

| Current BU # | State | City | Property Name |
|---|---|---|---|
| 20842 | NY | Clarence | Dicks Plaza |
| 20843 | NY | Clarence | Joann Plaza |
| 20844 | TN | Murfreesboro | Towne Centre |
| 20845 | TN | Nashville | The Marketplace |
| 20846 | PA | Erie | Erie Marketplace |
| 20847 | PA | Monaca | Township Marketplace |
| 20848 | MN | St. Paul | Midway Marketplace |
| 20849 | AL | Birmingham | Riverchase Promenade(I) |
| 20850 | SC | Columbia | Harbison Court |
| 20851 | AL | Birmingham | Riverchase Promenade(Ii) |
| 20852 | TX | Lewisville | Lakepointe Crossings |
| 20853 | NY | New Hartford | Consumer Square |
| 20854 | WI | Brookfield | Shoppers World Of Brookfield |
| 20855 | WI | Brown Deer | Market Place Of Brown Deer |
| 20856 | WI | Brown Deer | Brown Deer Center |
| 20857 | AR | Fayetteville | Spring Creek Centre |
| 20858 | AR | Fayetteville | Steele Crossing |
| 20859 | KS | Merriam | Merriam Town Center |
| 20860 | IL | Schaumburg | Woodfield Village Green |
| 20861 | FL | Naples | Carillon Place |
| 20862 | VA | Fairfax | Fairfax Towne Center |
| 20863 | MA | Framingham | Shopper's World |
| 20864 | MA | Framingham | Shopper's World-General Cinema |
| 20865 | GA | Atlanta | Perimeter Pointe |
| 20866 | GA | Marietta | Town Center Prado |
| 20919 | CA | ANTIOCH | COUNTY EAST SHOPPING CENTER |
| 20920 | CA | SANTA ROSA | SANTA ROSA PLAZA |
| 20921 | CA | SAN DIEGO (COLLEGE) | COLLEGE GROVE SHOPPING CENTER |
| 20922 | NV | LAS VEGAS, NV(LOMA) | LOMA VISTA SHOPPING CENTER |
| 20923 | CA | WEST COVINA | WEST COVINA SHOPPING CENTER |
| 20924 | AZ | PHOENIX, AZ(DV) | DEER VALLEY |
| 20925 | CA | NORTHRIDGE | NORTHRIDGE PLAZA |
| 20926 | CA | FAIRFIELD | WESTFIELD SOLANO MALL |
| 20927 | CA | GARDEN GROVE | GARDEN GROVE CENTER |
| 20928 | CA | SAN DIEGO | SOUTHLAND PLAZA SHOPPING |
| 20929 | NV | CARSON CITY, NV | EAGLE STATION |
| 20930 | AZ | TUCSON, AZ | SANTA CRUZ PLAZA |
| 20931 | CA | REDDING | SHASTA CENTER |
| 20932 | TX | SAN ANTONIO | INGRAM PARK  (Mervyns) |
| 20933 | AZ | CHANDLER, AZ | MERVYN'S PLAZA |
| 20934 | CA | CHINO | CHINO TOWN SQUARE SHOPPING |
| 20935 | NV | LAS VEGAS, NV(NELLIS) | NELLIS CROSSING SHOPPING |
| 20936 | CA | CLOVIS | SIERRA VISTA MALL |
| 20937 | CA | SANTA MARIA | TOWN CENTER WEST SHOPPING |
| 20938 | CA | EL CAJON | WESTFIELD SHOPPING TOWN |
| 20939 | CA | UKIAH | UKIAH |
| 20940 | CA | MADERA | MADERA |
| 20941 | AZ | MESA, AZ(SUPERS) | SUPERSTITION SPRINGS CENTER |
| 20942 | CA | BURBANK | BURBANK TOWN CENTER |

Schedule B
Developers Diversified Realty
Business Unit Listing
As of January 2, 2008

| Current BU # | State | City | Property Name |
|---|---|---|---|
| 20943 | CA | NORTH FULLERTON | NORTH FULLERTON |
| 20944 | CA | TULARE | ARBOR FAIRE SHOPPING CENTER |
| 20945 | CA | PORTERVILLE | PORTERVILLE MARKET PLACE |
| 20946 | CA | LOMPAC | MISSION PLAZA |
| 20947 | CA | PALMDALE | ANTELOPE VALLEY MALL |
| 20948 | CA | ANAHEIM | ANAHEIM HILLS FESTIVAL CENTER |
| 20949 | CA | SONORA | SONORA CROSSROAD SHOPPING |
| 20950 | AZ | PHOENIX, AZ(SILVER) | SILVER CREEK PLAZA |
| 20951 | CA | FOOTHILL RANCH | FOOTHILLS RANCH TOWN CENTRE |
| 20952 | NV | RENO, NV(SIERRA) | SIERRA TOWN CENTER |
| 20953 | NV | SW LAS VEGAS, NV | GRAND CANYON PARKWAY S. C. |
| 20954 | CA | FOLSOM | FOLSOM SQUARE |
| 20955 | CA | SLATTEN RANCH | SLATTEN RANCH SHOPPING CENTER |
| 20956 | KS | Merriam Village | Merriam Village |
| 20958 | AZ | Phoenix | Phoenix Spectrum Mall |
| 20963 | GA | Lithonia | The Shops At Turner Hill |
| 20964 | GA | Lithonia | Turner Hill Marketplace |
| 20965 | CO | Parker | Flatacres Marketcenter |
| 20966 | TX | Frisco | Frisco Marketplace |
| 20967 | TX | Mckinney | Mckinney Marketplace |
| 20968 | TX | Mesquite | The Marketplace At Towne Cente |
| 20969 | KS | Overland Park | Overland Pointe Marketplace |
| 20970 | IL | Deer Park | Deer Park Town Center |
| 20971 | IL | Deer Park | DEER PARK TOWN CENTER PHASE II |
| 20987 | CA | Lancaster | Valley Central - Discount |
| 20988 | CA | Lancaster | Valley Central - Entertain Ctr |
| 20989 | CA | Lancaster | Valley Central - Power Ctr |
| 20990 | CA | Lancaster | Valley Central - Promotion Ctr |
| 20992 | CA | Pleasant Hill | Downtown Pleasant Hill |
| 20995 | TX | Austin | Shops At Tech Ridge |
| 20998 | OH | Columbus | Sun Center |
| 20999 | WA | Kirkland | Totem Lakes Upper |
| 21000 | WA | Kirkland | Totem Lakes  Lower |
| 21004 | MO | Kansas City | Ward Parkway |
| 21005 | TX | San Antonio | Westover Marketplace |
| 21008 | PA | Willow Grove | Kmart Plaza |
| 21009 | DE | Dover | Kmart Plaza |
| 21010 | OH | Solon | Kmart Plaza |
| 21011 | FL | Venice | Kmart Plaza |
| 21012 | FL | St. Petersburg | Kmart Plaza |
| 21013 | OK | Enid | Kmart Plaza |
| 21014 | GA | Austell | Burlington Coat Factory |
| 21015 | FL | Largo | Kmart Plaza |
| 21016 | OH | Cleveland | Kmart Strip Center |
| 21017 | PA | Pottstown | Kmart Plaza |
| 21018 | OH | Zanesville | Kmart Plaza |
| 21021 | NC | Goldsboro | Goldsboro, Nc |
| 21036 | OH | Macedonia | Macedonia Commons |
| 21100 | NJ | Mt. Laurel | Centerton Square |

Schedule B
**Developers Diversified Realty**
Business Unit Listing
As of January 2, 2008

| Current BU # | State | City | Property Name |
|---|---|---|---|
| 21101 | NC | Apex | Beaver Creek Commons |
| 21102 | PA | Mt. Nebo | Mt Nebo Point |
| 21103 | FL | Apopka | Piedmont Plaza |
| 21104 | FL | Plant City | Lake Walden Square |
| 21105 | FL | Winter Park | Goldenrod Groves |
| 21106 | FL | Winter Park | Bank First At Winter Park |
| 21200 | FL | Boynton Beach | Aberdeen Square |
| 21201 | FL | Bradenton | Creekwood Crossing |
| 21202 | FL | Palm Beach Garden | Northlake Commons |
| 21203 | GA | Canton | Riverstone Plaza |
| 21204 | FL | Casselberry | Casselberry Commons |
| 21205 | FL | Largo | Colonial Promenade Bardmoor Ce |
| 21206 | FL | Melbourne | Melbourne Shopping Center |
| 21207 | FL | Ocoee | West Oaks Towne Center |
| 21208 | FL | Orlando | Skyview Plaza |
| 21209 | FL | Tamarac | Midway Plaza |
| 21210 | FL | Wesley Chapel | Shoppes At New Tampa |
| 21211 | GA | Douglasville | Market Square |
| 21212 | MA | West Springfield | Riverdale Shops |
| 21213 | MD | Glen Burnie | Harundale Plaza |
| 21214 | MD | Upper Marlboro | Largo Towne Center |
| 21215 | NC | Fayetteville | Fayetteville Pavilion |
| 21216 | NJ | Lumberton | Crossroads Plaza |
| 21217 | FL | Boynton Beach | Village Square At Golf |
| 21218 | FL | Bradenton | Lakewood Ranch |
| 21219 | FL | Crystal River | Crystal Springs Shopping Cente |
| 21220 | FL | Dania | Sheridan Square |
| 21221 | FL | Ft. Walton Beach | Shoppes At Paradise Pointe |
| 21222 | FL | Citrus Hills | Citrus Hills |
| 21223 | FL | Hialeah | Paraiso Plaza |
| 21224 | FL | Miami | Plaza Del Paraiso |
| 21225 | FL | Miramar | River Run |
| 21226 | FL | Naples | Countryside |
| 21227 | FL | Newport Richey | Shoppes Of Golden Acres |
| 21228 | FL | Orlando | Conway Plaza |
| 21229 | FL | Orlando | Chickasaw Trails Shopping Cent |
| 21230 | FL | Pembroke Pines | Flamingo Falls |
| 21231 | FL | Tallahassee | Killearn Shopping Center |
| 21232 | FL | Tallahassee | Southwood Plantation |
| 21233 | FL | Brandon | Shoppes Of Lithia |
| 21234 | GA | Cumming | Sharon Greens |
| 21235 | GA | Decatur | Hairston Crossing |
| 21236 | GA | Ellenwood | Shoppes Of Ellenwood |
| 21237 | GA | Flowery Branch | Clearwater Crossing |
| 21238 | GA | Mcdonough | Shoppes At Lake Dow |
| 21239 | NC | Chapel Hill | Meadowmont Village Center |
| 21240 | NC | Clayton | Clayton Corners |
| 21241 | NC | Fuquay Varina | Sexton Commons |
| 21242 | NC | Huntersville | Rosedale Shopping Center |

**Schedule B**
**Developers Diversified Realty**
Business Unit Listing
As of January 2, 2008

| Current BU # | State | City | Property Name |
|---|---|---|---|
| 21243 | NC | Winston-Salem | Shops At Oliver Crossing |
| 21244 | GA | Tucker | Cofer Crossing |
| 21245 | FL | Oviedo | Oviedo Park Crossing |
| 21246 | CA | Richmond | Hilltop Plaza |
| 21247 | OH | Springfield | Springfield Commons Shopping |
| 21248 | OH | Grove City | Derby Square Shopping Center |
| 21249 | FL | Tampa | North Pointe Plaza |
| 21250 | IN | Highland | Highland Grove Shopping Center |
| 21251 | VA | Winchester | Apple Blossom Corners |
| 21252 | SC | Easley | Center Pointe Plaza I |
| 21253 | SC | Easley | Center Pointe Plaza Ii |
| 21254 | WI | Racine | Village Center |
| 21255 | WI | Racine | Mount Pleasant Outlot |
| 21256 | FL | Davie | Paradise Promenade |
| 21257 | FL | Lake Wales | Shoppes On The Ridge |
| 21258 | FL | Silver Springs Sh | Heather Island Plaza |
| 21259 | FL | Palm Harbor | Publix Brooker Creek |
| 21260 | FL | Santa Rosa | Watercolor Crossing |
| 21261 | GA | Tyrone | Southampton Village |
| 21262 | NJ | West Paterson | West Falls Plaza |
| 21263 | OH | Columbus | Hilliard Rome |
| 21264 | FL | Boynton Beach | Meadows Square |
| 30020 | GA | Macon | Eisenhower Annex (Tiaa) |
| 30042 | GA | Snellville | Presidential Commons |
| 30104 | NJ | Jersey City | 440 Commons |
| 30105 | NJ | Union | Route 22 Retail Shopping Cente |
| 30106 | SC | Spartanburg | Northpoint Marketplace |
| 30107 | SC | Taylors | Hampton Point |
| 30108 | AL | Dothan | Shops On The Circle |
| 30110 | FL | Bradenton | Cortez Plaza |
| 30112 | FL | Clearwater | Clearwater Collection |
| 30115 | FL | New Tampa | New Tampa Commons |
| 30121 | FL | Tampa | Tampa Palms Association |
| 30122 | FL | Tequesta | Tequesta Shoppes Plaza |
| 30127 | GA | Kennesaw | Town Center Commons |
| 30128 | GA | Lawrenceville | Springfield Park |
| 30129 | GA | Roswell | Sandy Plains Village I |
| 30130 | GA | Roswell | Sandy Plains Village Ii |
| 30133 | MD | Hagerstown | Valley Park Commons |
| 30136 | NC | Greensboro | Golden Gate |
| 30137 | NC | Greensboro | Shoppes At Wendover Village I |
| 30138 | NJ | Brick | Brick Center Plaza |
| 30139 | NJ | East Hanover | East Hanover Plaza |
| 30140 | NJ | East Hanover | Sony Theatre Complex |
| 30143 | PA | Camp Hill | Camp Hill Center |
| 30144 | RI | Middletown | Middletown Village |
| 30145 | SC | Conway | Gateway Plaza Ii - Conway |
| 30148 | SC | Lexington | Lexington Place |
| 30149 | VA | Newport News | Denbigh Village |

Schedule B
**Developers Diversified Realty**
Business Unit Listing
As of January 2, 2008

| Current BU # | State | City | Property Name |
|---|---|---|---|
| 30150 | VA | Richmond | Downtown Short Pump |
| 30151 | VA | Springfield | Loisdale Center |
| 30152 | VA | Springfield | Spring Mall Center |
| 30153 | VA | Sterling | Cascades Marketplace |
| 30156 | CT | Windsor Court | Windsor Court Shopping Center |
| 30174 | FL | Ocala | Steeplechase Plaza |
| 30181 | FL | Plant City | Plant City Crossing |
| 30182 | FL | Brandon | Albertsons At Bloomingdale Hil |
| 30186 | FL | Brandon | Brandon Blvd Shoppes |
| 30190 | GA | Atlanta | Abernathy Square |
| 30196 | GA | Norcross | Jones Bridge Plaza |
| 30199 | MD | Bowie | Duvall Village |
| 30200 | NC | Asheville | Oakley Plaza |
| 30202 | NC | Cary | Mill Pond Village |
| 30204 | NC | Charlotte | Camfield Corners |
| 30208 | NC | Cornelius | Southlake Shopping Center |
| 30211 | NC | Greensboro | Adams Farm |
| 30213 | NC | Huntersville | Rosedale Association |
| 30217 | NC | Raleigh | Capital Crossing |
| 30218 | NC | Raleigh | Wakefield Crossing |
| 30219 | NC | Wilmington | Oleander Shopping Center |
| 30220 | NC | Wilson | Forest Hills Centre |
| 30228 | WV | Morgantown | Glenmark Centre |
| 30229 | SC | Greenwood | Bi-Lo - Northside Plaza |
| 30230 | NJ | Edgewater | Edgewater Town Center |
| 30232 | AL | Cullman | Lowe's Home Improvement - Cull |
| 30233 | AL | Dothan | Circuit City - Dothan |
| 30234 | CA | Culver City | Circuit City - Culver City |
| 30235 | CO | Highland Ranch | Circuit City - Highland Ranch |
| 30236 | CT | Manchester | Manchester Broad Street |
| 30237 | FL | Dania Beach | Bass Pro Outdoor World |
| 30238 | FL | Daytona Beach | Kb Homes |
| 30239 | FL | Daytona Beach | Petsmart - Daytona Beach |
| 30240 | FL | Kissimmee | Cvs Pharmacy #5040-01 |
| 30241 | FL | Plantation | Vision Works |
| 30242 | FL | Vero Beach | Circuit City - Vero Beach |
| 30244 | GA | Alpharetta | Jo-Ann Fabrics |
| 30245 | GA | Duluth | Sofa Express |
| 30246 | GA | Gainesville | Eckerd Drug Store #0444 |
| 30247 | GA | Lawrenceville | Eckerd Drug Store #3449 |
| 30248 | GA | Macon | K-Mart |
| 30249 | GA | Marietta | Eckerd Drug Store #0234 |
| 30250 | GA | Rome | Circuit City - Rome |
| 30251 | GA | Snellville | Eckerd Drug Store #2320 |
| 30252 | GA | Sylvania | Bi-Lo - Sylvania |
| 30253 | GA | Warner Robins | Lowe's Home Improvement |
| 30254 | IL | Rockford | Walgreens - Rockford |
| 30255 | LA | Covington | Covington Corners |
| 30258 | MA | Seekonk | Seekonk Town Center |

Schedule B
Developers Diversified Realty
Business Unit Listing
As of January 2, 2008

| Current BU # | State | City | Property Name |
|---|---|---|---|
| 30257 | MA | Worcester | Wal-Mart/Sam's Club |
| 30258 | MI | Dearborn Heights | Walgreens - Dearborn Heights |
| 30259 | MI | Livonia | Walgreens - Livonia |
| 30260 | MI | Port Huron | Walgreens |
| 30261 | MI | Westland | Walgreens - Westland |
| 30262 | NC | Cary | Circuit City - Cary |
| 30263 | NC | Charlotte | BJ's Wholesale Club |
| 30264 | NC | Concord | Eckerd Drug Store - Concord |
| 30265 | NC | Raleigh | Eckerd Drug Store - Perry Cree |
| 30266 | NC | Winston-Salem | Super Wal-Mart - Winston-Salem |
| 30267 | NY | Buffalo | Eckerd Drug Store #5661 |
| 30268 | NY | Cheektowaga | Eckerd Drug Store #5797 |
| 30269 | NY | Dunkirk | Eckerd Drug Store #5786 |
| 30270 | NY | Amherst | Eckerd Drug Store #5018 |
| 30271 | OH | Alliance | Super Wal-Mart - Alliance |
| 30272 | OH | Cincinnati | Kroger - Cincinnati |
| 30273 | OH | Steubenville | Lowe's Home Improvement - Steu |
| 30274 | OH | West Chester | Kroger - West Chester |
| 30275 | OK | Oklahoma City | Cvs Pharmacy #6226-01 |
| 30276 | PA | Cheswick | Eckerd Drug Store #6095 |
| 30277 | PA | Connelsville | Eckerd Drug Store #6007 |
| 30278 | PA | Harborcreek | Eckerd Drug Store #6062 |
| 30279 | PA | Erie | Eckerd Drug Store #6193 |
| 30280 | PA | Millcreek | Eckerd Drug Store #6199 |
| 30281 | PA | Millcreek | Eckerd Drug Store #6257 |
| 30282 | PA | Erie | Eckerd Drug Store #6286 |
| 30283 | PA | Erie | Eckerd Drug Store #6334 |
| 30284 | PA | Penn | Eckerd Drug Store #6392 |
| 30285 | PA | Monroeville | Eckerd Drug Store #6040 |
| 30286 | PA | Monroeville | Eckerd Drug Store #6043 |
| 30287 | PA | New Castle | Eckerd Drug Store #6172 |
| 30288 | PA | Pittsburgh | Eckerd Drug Store #6036 |
| 30289 | PA | Plum Borough | Eckerd Drug Store #6695 |
| 30290 | SC | Tega Cay | Eckerd Drug Store - Tega Cay |
| 30291 | SC | Gaffney | Eckerd Drug Store - Gaffney |
| 30292 | SC | Greenville | Eckerd Drug Store - Greenville |
| 30293 | SC | Greenville | Super Wal-Mart - Greenville |
| 30294 | SC | Mt. Pleasant | Bi-Lo - Shelmore |
| 30295 | SC | Piedmont | Eckerd Drug Store - Piedmont |
| 30296 | SC | Spartanburg | Eckerd Drug Store - Blackstock |
| 30297 | SC | Spartanburg | Eckerd Drug Store - Spartanbur |
| 30298 | SC | Woodruff | Eckerd Drug Store - Woodruff |
| 30299 | TN | Chattanooga | Petsmart - Chattanooga |
| 30300 | TX | Baytown | Lowe's Home Improvement - Bayt |
| 30301 | TX | Carrolton | Cvs Pharmacy #7440-01 |
| 30302 | TX | Ft. Worth | Cvs Pharmacy #6794-01 |
| 30303 | TX | Ft. Worth | Cvs Pharmacy #7785-01 |
| 30304 | TX | Garland | Rainbow Foods - Garland |
| 30305 | TX | Grand Prairie | Kroger - Grand Prairie |

Schedule B
**Developers Diversified Realty**
Business Unit Listing
As of January 2, 2008

| Current BU # | State | City | Property Name |
|---|---|---|---|
| 30306 | TX | Houston | Lowe's Home Improvement - Hous |
| 30307 | TX | Lake Worth | Cvs Pharmacy #7642-01 |
| 30308 | TX | Richland Hills | Cvs Pharmacy #7579-01 |
| 30309 | TX | Plano | Cvs Pharmacy #7804-01 |
| 30310 | TX | Richardson | Cvs Pharmacy #6967-01 |
| 30311 | TX | Richardson | Cvs Pharmacy #6974-01 |
| 30312 | TX | River Oaks | Cvs Pharmacy #7678-01 |
| 30313 | TX | Rowlett | Rainbow Foods - Rowlett |
| 30314 | TX | Colony | Cvs Pharmacy #6982-01 |
| 30315 | TX | Tyler | Cvs Pharmacy #7709-01 |
| 30316 | TX | Wichita Falls | Cvs Pharmacy #6978-01 |
| 30317 | TX | Wichita Falls | Cvs Pharmacy #6841-01 |
| 30318 | VA | Fredricksburg | Petsmart - Fredricksburg |
| 30319 | WA | Olympia | Circuit City - Olympia |
| 30320 | WI | Oshkosh | Walgreens - Oshkosh |
| 30321 | WV | Weirton | Eckerd Drug Store #6089 |
| 30322 | GA | Marietta | Blockbuster |
| 30323 | NC | Durham | South Square |
| 30324 | NC | Greensboro | Wendover II |
| 30325 | SC | Taylors | North Hampton |
| 30326 | TN | Morristown | Crossroads Square |
| 30327 | GA | Atlanta | Brookhaven |
| 30328 | GA | Atlanta | Cascade Corners |
| 30329 | GA | Atlanta | Cascade Crossing |
| 30330 | GA | Canton | Hickory Flat Village |
| 30331 | GA | Decatur | Flat Shoals Crossing |
| 30332 | GA | Stone Mountain | Deshon Plaza |
| 30333 | GA | Suwanee | The Shops At Johns Creek |
| 30334 | IL | Roscoe | Hilander Village |
| 30335 | IN | Indianapolis | Glentake Plaza |
| 30336 | IN | South Bend | Broadmoor Plaza |
| 30337 | MI | Milan | Milan Plaza |
| 30338 | NC | Salisbury | Alexander Pointe |
| 30339 | NC | Winston-Salem | Harper Hill Commons |
| 30340 | SC | Greenville | The Point |
| 30341 | SC | Myrtle Beach | Plaza At Carolina Forest |
| 30342 | TN | Jackson | West Towne Commons |
| 30343 | TN | Memphis | American Way |
| 30344 | TN | Nashville | Willowbrook Commons |
| 30345 | TN | Oakland | Oakland Market Place |
| 30346 | TX | Pasadena | Kroger Junction |
| 30347 | VA | Virginia Beach | Kroger Plaza |
| 30348 | VA | Waynesboro | Waynesboro Commons |
| 30350 | GA | Douglasville | Douglasville Depot |
| 30351 | FL | Westley Chapel | Meadow Point |
| 30352 | FL | Plantation | Fountains |
| 30385 | AL | Florence | Cox Creek Shopping Center (Tia |
| 30386 | AL | Huntsville | Westside Centre (Tiaa) |
| 30387 | AL | Birmingham | River Ridge (Tiaa) |

Schedule B
Developers Diversified Realty
Business Unit Listing
As of January 2, 2008

| Current BU # | State | City | Property Name |
|---|---|---|---|
| 30388 | AL | Tuscaloosa | Mcfarland Plaza (Tiaa) |
| 30389 | CT | Waterbury | Naugatuck Valley Shopping Cent |
| 30390 | FL | Lauderhill | Universal Plaza (Tiaa) |
| 30391 | FL | Tampa | Walks At Highwood Preserve I ( |
| 30392 | FL | Tampa | Walks At Highwood Preserve II |
| 30393 | FL | Ft. Meyers | Cypress Trace (Tiaa) |
| 30394 | FL | Ft. Meyers | Market Place (Tiaa) |
| 30395 | FL | Orlando | Circuit City Plaza (Tiaa) |
| 30396 | FL | Orlando | Sand Lake Corners (Tiaa) |
| 30397 | FL | Boynton Beach | Boynton Commons (Tiaa) |
| 30398 | FL | St. Petersburg | Gateway Market Center (Tiaa) |
| 30399 | FL | Sarasota | Sarasota Pavilion (Tiaa) |
| 30400 | FL | Lake Mary | Shoppes At Lake Mary (Tiaa) |
| 30401 | GA | Cartersville | Bartow Marketplace (Tiaa) |
| 30402 | GA | Macon | Eisenhower Outlet (David's Bri |
| 30403 | GA | Macon | Eisenhower Crossing I (Tiaa) |
| 30404 | GA | Macon | Eisenhower Oea (Tiaa) |
| 30406 | GA | Woodstock | Woodstock Square (Tiaa) |
| 30407 | GA | Morrow | Southlake Pavilion (Tiaa) |
| 30408 | GA | Morrow | Southlake Pavilion I (Tiaa) |
| 30409 | GA | Morrow | Southlake Pavilion Ii (Tiaa) |
| 30410 | GA | Kennesaw | Barrett Pavilion I (Tiaa) |
| 30411 | GA | Kennesaw | Barrett Pavilion II (Tiaa) |
| 30412 | GA | Kennesaw | Barrett Pavilion Iii (Tiaa) |
| 30413 | GA | Smyrna | Heritage Pavilion (Tiaa) |
| 30414 | GA | Newnan | Newnan Pavilion (Tiaa) |
| 30415 | GA | Lithonia | Stonecrest Marketplace (Tiaa) |
| 30416 | GA | Douglasville | Douglas Pavilion (Tiaa) |
| 30417 | GA | Fayetteville | Fayette Pavilion I (Tiaa) |
| 30418 | GA | Fayetteville | Fayette Pavilion Ii (Tiaa) |
| 30419 | GA | Fayetteville | Fayette Pavilion Iii (Tiaa) |
| 30420 | GA | Fayetteville | Fayette Pavilion Iv (Tiaa) |
| 30421 | GA | Roswell | Stonebridge Square (Tiaa) |
| 30422 | GA | Buford | Marketplace At Millcreek I (Ti |
| 30423 | GA | Buford | Marketplace At Millcreek Ii (T |
| 30424 | GA | Duluth | Venture Pointe I (Tiaa) |
| 30425 | GA | Duluth | Venture Pointe II (Tiaa) |
| 30426 | GA | Duluth | Pleasant Hill (Tiaa) |
| 30427 | GA | Suwanee | Suwanee Crossroads (Tiaa) |
| 30428 | GA | Warner Robins | City Crossing (Tiaa) |
| 30429 | GA | Hiram | Hiram Pavilion I (Tiaa) |
| 30430 | GA | Hiram | Hiram Pavilion Ii (Tiaa) |
| 30431 | GA | Augusta | Goody's Shopping Center (Tiaa) |
| 30432 | IL | Skokie | Village Crossing (Tiaa) |
| 30433 | MD | White Marsh | Costco Plaza (Tiaa) |
| 30434 | NC | Siler City | Chatham Crossing (Tiaa) |
| 30435 | NC | Winston-Salem | Oak Summit (Tiaa) |
| 30436 | NC | Mooresville | Winslow Bay Commons (Tiaa) |
| 30437 | NC | Matthews | Sycamore Commons (Tiaa) |

Schedule B
**Developers Diversified Realty**
Business Unit Listing
As of January 2, 2008

| Current BU # | State | City | Property Name |
|---|---|---|---|
| 30438 | NC | Matthews | Sycamore Commons Outlot I (Tia |
| 30439 | NC | Matthews | Sycamore Commons Outlot II (TI |
| 30440 | NC | Southern Pines | Bi-Lo - Southern Pines {Tiaa) |
| 30441 | NC | Jacksonville | Gateway Plaza - Jacksonville ( |
| 30442 | NC | Raleigh | Alexander Place (Tiaa) |
| 30443 | NC | Wake Forest | Capital Plaza (Tiaa) |
| 30444 | OH | Willoughby Hills | Willoughby Hills Shopping Cent |
| 30445 | PA | Carlisle | Carlisle Commons (Tiaa) |
| 30446 | PA | King Of Prussia | Overlook At King Of Prussia (T |
| 30447 | RI | Warwick | Warwick Center (Tiaa) |
| 30448 | SC | Aiken | Aiken Exchange (Tiaa) |
| 30449 | SC | Anderson | Anderson Central (Tiaa) |
| 30450 | SC | Anderson | North Hill Commons (Tiaa) |
| 30451 | SC | Columbia | Columbiana Station Oea (Tiaa) |
| 30452 | SC | Columbia | Columbiana Station I (Tiaa) |
| 30453 | SC | Columbia | Columbiana Station II (Tiaa) |
| 30454 | SC | Columbia | Columbiana Station iii (Tiaa) |
| 30455 | SC | Columbia | COLUMBIANA STATION IV (TIAA) |
| 30456 | SC | Columbia | Columbiana Station V (Tiaa) |
| 30457 | SC | Columbia | COLUMBIANA STATION VI (TIAA) |
| 30458 | SC | Columbia | Columbiana Station II (Tiaa) |
| 30459 | SC | Columbia | Columbiana Station II (Tiaa) |
| 30460 | SC | Columbia | Target Center I (Tiaa) |
| 30461 | SC | Columbia | Target Center Ii (Tiaa) |
| 30462 | TN | Nashville | Bellevue Place Shopping Center |
| 30463 | TN | Knoxville | Town & Country (Tiaa) |
| 30464 | TN | Knoxville | Town & Country I (Tiaa) |
| 30465 | TN | Knoxville | Town & Country II (Tiaa) |
| 30466 | TN | Knoxville | Turkey Creek I (Tiaa) |
| 30467 | TN | Knoxville | Turkey Creek Ii (Tiaa) |
| 30468 | VA | Richmond | Chesterfield Crossing (Tiaa) |
| 30469 | VA | Richmond | Commonwealth Center II (Tiaa) |
| 30470 | VA | Glen Allen | Creeks At Virginia Center (Tia |
| 30471 | VA | Lynchburg | Wards Crossing (Tiaa) |
| 30472 | VA | Lynchburg | Wards Crossing Oea (Tiaa) |
| 30473 | VA | Newport News | Jefferson Plaza (Tiaa) |
| 30474 | VA | Wytheville | Wytheville Commons (Tiaa) |
| 30475 | FL | Deerfield Beach | Hillsboro Square (Tiaa) |
| 30476 | FL | West Palm Beach | Paradise Place (Tiaa) |
| 30477 | NC | Huntersville | Birkdale Village Retail (Tiaa) |
| 30478 | NC | Huntersville | Birkdale Village Office (Tiaa) |
| 30480 | NC | Huntersville | Birkdale Village Outlot (Tiaa) |
| 30481 | PA | Homestead | Waterfront Market Amity (Tiaa) |
| 30482 | PA | Homestead | Market On The Waterfront {Tiaa) |
| 30483 | PA | Homestead | Waterfront Town Center (Tiaa) |
| 30493 | IN | Evansville | East Lloyd Commons |
| 30494 | NC | Durham | Patterson Place |
| 30496 | GA | Atlanta (South Fulton) | Gables at Stonewall |
| 30497 | NC | Apex | Promenade At Beaver Creek |

**Schedule B**

**Developers Diversified Realty**
Business Unit Listing
As of January 2, 2008

| Current BU # | State | City | Property Name |
|---|---|---|---|
| 30516 | FL | Brandon | New Development |
| 30521 | FL | Orlando | SAND LAKE CORNERS OUTLOT |

**SUMMONS IN A CIVIL ACTION    COURT OF COMMON PLEAS, CUYAHOGA COUNTY JUSTICE CENTER**
**CLEVELAND, OHIO 44113**

| CASE NO. | | SUMMONS NO. |
|---|---|---|
| CV13803253 | D2  CM | 21072229 |

Rule 4 (B) Ohio

Rules of Civil
Procedure

|  |  |
|---|---|
| DDR CORP. | **PLAINTIFF** |
| VS | |
| CONTROL BUILDING SERVICES | **DEFENDANT** |

## SUMMONS

CONTROL EQUITY GROUP INC
333 MEADOWLANDS PARKWAY
SECAUCUS NJ 07094-0000

You have been named defendant in a complaint
(copy attached hereto) filed in Cuyahoga County
Court of Common Pleas, Cuyahoga County Justice
Center, Cleveland, Ohio 44113, by the plaintiff
named herein.

You are hereby summoned and required to
answer the complaint within 28 days after service
of this summons upon you, exclusive of the day of
service.

Said answer is required to be served on:



Said answer is required to be served on Plaintiff's
Attorney (Address denoted by arrow at left.)

Your answer must also be filed with the court
within 3 days after service of said answer on
plaintiff's attorney.

**Plantiff's Attorney**

NICHOLAS B. WILLE
901 LAKESIDE AVE

CLEVELAND, OH 44114-0000

If you fail to do so, judgment by default will be
rendered against you for the relief demanded in the
complaint.

Case has been assigned to Judge:

JOHN P O'DONNELL
Do not contact judge. Judge's name is given for
attorney's reference only.

**ANDREA F. ROCCO**
Clerk of the Court of Common Pleas

| DATE |
|---|
| Mar 20, 2013 |

By_____
Deputy

COMPLAINT FILED  03/18/2013



CMSN130

# SUMMONS IN A CIVIL ACTION · COURT OF COMMON PLEAS · CUYAHOGA COUNTY JUSTICE CENTER
## CLEVELAND, OHIO 44113

| CASE NO. | | SUMMONS NO. |
|---|---|---|
| CV13803253 | D3 CM | 21072230 |

Rule 4 (B) Ohio

Rules of Civil Procedure

```
┌─────────────────────────────────────┐
│        DDR CORP.          PLAINTIFF  │
│            VS                        │
│  CONTROL BUILDING SERVICES DEFENDANT │
└─────────────────────────────────────┘
```

**SUMMONS**

```
┌─────────────────────────────────────┐
│ EDWARD TUREN                         │
│ 333 MEADOWLANDS PARKWAY              │
│ SECAUCUS NJ 07094-0000               │
│                                      │
└─────────────────────────────────────┘
```

You have been named defendant in a complaint (copy attached hereto) filed in Cuyahoga County Court of Common Pleas, Cuyahoga County Justice Center, Cleveland, Ohio 44113, by the plaintiff named herein.

You are hereby summoned and required to answer the complaint within 28 days after service of this summons upon you, exclusive of the day of service.

Said answer is required to be served on:



Said answer is required to be served on Plaintiff's Attorney (Address denoted by arrow at left.)

**Plaintiff's Attorney**

```
┌─────────────────────────────────────┐
│ NICHOLAS B. WILLE                    │
│ 901 LAKESIDE AVE                     │
│                                      │
│ CLEVELAND, OH 44114-0000             │
└─────────────────────────────────────┘
```

Your answer must also be filed with the court within 3 days after service of said answer on plaintiff's attorney.

If you fail to do so, judgment by default will be rendered against you for the relief demanded in the complaint.

Case has been assigned to Judge:

```
┌─────────────────────────────────────┐
│ JOHN P O'DONNELL                     │
│ Do not contact judge. Judge's name   │
│ is given for attorney's reference    │
│ only.                                │
└─────────────────────────────────────┘
```

**ANDREA F. ROCCO**
Clerk of the Court of Common Pleas



| DATE | | |
|---|---|---|
| Mar 20, 2013 | By | |



Deputy

COMPLAINT FILED   03/18/2013

**SUMMONS IN A CIVIL ACTION    COURT OF COMMON PLEAS, CUYAHOGA COUNTY JUSTICE CENTER**
CLEVELAND, OHIO 44113

| CASE NO. | | SUMMONS NO. |
|---|---|---|
| CV13803253 | D4 CM | 21072231 |

Rule 4 (B) Ohio

Rules of Civil
Procedure

DDR CORP.
VS
CONTROL BUILDING SERVICES

**PLAINTIFF**

**DEFENDANT**

**SUMMONS**

NEAL TUREN
333 MEADOWLANDS PARKWAY
SECAUCUS NJ 07094-0000

You have been named defendant in a complaint
(copy attached hereto) filed in Cuyahoga County
Court of Common Pleas, Cuyahoga County Justice
Center, Cleveland, Ohio 44113, by the plaintiff
named herein.

You are hereby summoned and required to
answer the complaint within 28 days after service
of this summons upon you, exclusive of the day of
service.

Said answer is required to be served on:



Plaintiff's Attorney

Said answer is required to be served on Plaintiff's
Attorney (Address denoted by arrow at left.)

NICHOLAS B. WILLE
901 LAKESIDE AVE

CLEVELAND, OH 44114-0000

Your answer must also be filed with the court
within 3 days after service of said answer on
plaintiff's attorney.

If you fail to do so, judgment by default will be
rendered against you for the relief demanded in the
complaint.

Case has been assigned to Judge:

JOHN P O'DONNELL
Do not contact judge. Judge's name is given for
attorney's reference only.



**ANDREA F. ROCCO**
Clerk of the Court of Common Pleas

| DATE |
|---|
| Mar 20, 2013 |

By 
Deputy

COMPLAINT FILED  03/18/2013

CMSN130

# SUMMONS IN A CIVIL ACTION    COURT OF COMMON PLEAS, CUYAHOGA COUNTY JUSTICE CENTER
## CLEVELAND OHIO 44113

| CASE NO. | | SUMMONS NO. |
|---|---|---|
| CV13803253 | D1 CM | 21085084 |

Rule 4 (B) Ohio

Rules of Civil
Procedure

|  |
|---|
| DDR CORP. |
| **VS** |
| CONTROL BUILDING SERVICES |

**PLAINTIFF**

**DEFENDANT**

# SUMMONS

```
CONTROL BUILDING SERVICES, INC
C/O CSC-LAWYERS INCORPORATING
SERVICE (CORPORATION SERVICE
COMPANY)
50 W. BROAD ST. STE 1800
COLUMBUS OH 43125-0000
```

You have been named defendant in a complaint (copy attached hereto) filed in Cuyahoga County Court of Common Pleas, Cuyahoga County Justice Center, Cleveland, Ohio 44113, by the plaintiff named herein.

You are hereby summoned and required to answer the complaint within 28 days after service of this summons upon you, exclusive of the day of service.

**Said answer is required to be served on:**



Said answer is required to be served on Plaintiff's Attorney (Address denoted by arrow at left.)

**Plantiff's Attorney**

```
NICHOLAS B. WILLE
901 LAKESIDE AVE

CLEVELAND, OH 44114-0000
```

Your answer must also be filed with the court within 3 days after service of said answer on plaintiff's attorney.

If you fail to do so, judgment by default will be rendered against you for the relief demanded in the complaint.

**Case has been assigned to Judge:**

```
JOHN P O'DONNELL
Do not contact judge. Judge's name is given for
attorney's reference only.
```

**ANDREA F. ROCCO**
Clerk of the Court of Common Pleas

| DATE |
|---|
| Mar 22, 2013 |

By _____
    Deputy

COMPLAINT FILED    03/18/2013



CMSN130

APR - 1 2013

O'DONNELL CV13803253D3
340-1386

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X
☐ Agent
☐ Addressee

B. Received by (Printed Name)
C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

1. Article Addressed to:

EDWARD TUREN
333 MEADOWLANDS PARKWAY
SECAUCUS NJ 07094-0000

EDP

3. Service Type
☒ Certified Mail

4. Restricted Delivery? (Extra Fee) ☐ Yes

2. Article Number
(Transfer from service label)
21072230

PS Form **3811**, February 2004      Domestic Return Receipt      102595-02-M-1540

---

MAR 2 9 2013

O'DONNELL CV13803253D4
340-1386

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X
☐ Agent
☐ Addressee

B. Received by (Printed Name)
C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

1. Article Addressed to:

NEAL TUREN
333 MEADOWLANDS PARKWAY
SECAUCUS NJ 07094-0000

EDP

3. Service Type
☒ Certified Mail

4. Restricted Delivery? (Extra Fee) ☐ Yes

2. Article Number
(Transfer from service label)
21072231

PS Form **3811**, February 2004      Domestic Return Receipt      102595-02-M-1540

MAR 2 7 2013

O'DONNELL CV13803253D1
340-1386

COMPLETE THIS SECTION ON DELIVERY

A. Signature

X  MAR 2 5 2013   ☐ Agent
                 ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery
Deanne Kessler

1. Article Addressed to:

CONTROL BUILDING SERVICES,
INC
C/O CSC-LAWYERS
INCORPORATING SERVICE
(CORPORATION SERVICE
COMPANY)
50 W. BROAD ST. STE 1800
COLUMBUS OH 43125-0000

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☒ Certified Mail

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
   (Transfer from service label)
   21085084

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

MAR 2 7 2013

O'DONNELL CV13803253D2
340-1386

COMPLETE THIS SECTION ON DELIVERY

A. Signature

X                                ☐ Agent
                                 ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

1. Article Addressed to:

CONTROL EQUITY GROUP INC
333 MEADOWLANDS PARKWAY
SECAUCUS NJ 07094-0000

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☒ Certified Mail

4. Restricted Delivery? (Extra Fee)   ☐ Yes

label)
21072229

04    Domestic Return Receipt    102595-02-M-1540

FILED

2013 APR 22 P 2: 56

IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

| | | |
|---|---|---|
| DDR CORP., | ) | CASE NO.  CV 13 803253 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN P. O'DONNELL |
| | ) | |
| v. | ) | |
| | ) | |
| CONTROL BUILDING SERVICES, INC., | ) | |
| *et al.,* | ) | |
| | ) | **MOTION FOR LEAVE TO PLEAD** |
| Defendants. | ) | |

Pursuant to Local Rule 8(C), Defendants, Control Building Services, Inc., Control

Equity Group, Inc. and Edward Turen, move this Court for an additional thirty (30) days

or until May 23, 2013 in which to move, plead, or otherwise respond to Plaintiff's

Complaint.

Defendants hereby certify that they seek this additional time in good faith and not

for purposes of delay and state that they require the additional time in which to further

investigate the allegations of the instant Complaint.  This is the first Motion for Leave to

Plead Defendants have filed.

Counsel for the Plaintiff has indicated that the Plaintiff consents to the additional

time sought by Defendants.

Accordingly, Defendants respectfully request that this Court enter an Order

granting them additional time, until May 23, 2013, to move, plead or otherwise respond

to Plaintiff's Complaint.

Respectfully submitted,

Hugh E. McKay (0023017)
Tracy S. Francis (0080879)
PORTER WRIGHT MORRIS & ARTHUR LLP
925 Euclid Avenue, Suite 1700
Cleveland, Ohio 44115-1483
(216) 443-9000 / Fax (216) 443-9011
hmckay@porterwright.com
jbialek@porterwright.com

*Attorneys for Defendants Control Building
Services, Inc., Control Equity Group, Inc.
and Edward Turen*

2

## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing Motion for Leave to Plead was sent by first class United States mail, postage prepaid, this 22 day of April 2013 to the following:

Robert S. Walker
Nicholas B. Willes
901 Lakeside Avenue
North Point
Cleveland, Ohio 44114
*Attorneys for Plaintiff*

_____
*One of the Attorneys for Defendants*
*Control Building Services, Control Equity*
*Group, Inc. and Edward Turen*

3