UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
:
DDR CORP. :
: CASE NO. 1:13-cv-925
       Plaintiff, :
:
v. : OPINION & ORDER
: [Resolving Docs. 7 & 8.]
CONTROL BUILDING SERVICES, INC., :
*et al.* :
:
       Defendants. :
:
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

    Plaintiff DDR Corp. says that Defendants Control Building Services, Inc. ("CBS"), Control Equity Group, Inc.("CEG"), Neal Turen, and Edward Turen misappropriated approximately $11 million that DDR paid under a contract for facility maintenance services.[1] The individual defendants, Neal and Edward Turen now move the Court to dismiss them from the lawsuit saying that they are not subject to personal jurisdiction in Ohio.[2] Because the Court finds that the exercise of personal jurisdiction over the Turens comports with both Ohio's long arm statute and the Due Process Clause, the Court **DENIES** the Turens' motions.

I.

    According to the Complaint, Plaintiff DDR owns commercial real estate—generally retail properties—across the country.[3] DDR contracted with Oxford Building Services, Inc. for Oxford to

---

    [1] [Doc. 1-1.]

    [2] [Docs. 7, 8.]

    [3] [Doc. 1-1.]

Case No. 1:13-CV-925
Gwin, J.

provide facility maintenance and pay vendors at approximately 835 of its properties nationwide.[4] Defendant CBS, signed the agreement as a guarantor.[5] Under the terms of the agreement, Oxford was to serve as a clearinghouse for DDR's payments to vendors: Oxford would send DDR the vendor invoice, and DDR would pay Oxford, who would, in turn, pay the vendor.[6] DDR says that rather than provide these services, Oxford, at the behest of Defendants CEG, CBS, and Neal and Edward Turen, channeled DDR's payments to other purposes, in particular, to service a "credit facility" tied to these and other corporations.[7] In June, 2012, Oxford lost a major account, and soon thereafter stopped paying vendor invoices for work performed at DDR's properties—despite continuing to bill DDR and collect its payments.[8] In January of 2013, Defendant Edward Turen notified DDR of Oxford's shortfalls and identified approximately $11 million in unpaid vendor invoices.[9] Oxford is currently in bankruptcy proceedings in New Jersey.[10]

DDR now makes five claims against the Defendants in this case: In Count I,, DDR alleges breach of the guaranty agreement against CBS.[11] In Count II, DDR claims tortious interference with

---

[4] [Doc. 1-1 at 19-79.]

[5] [Doc. 1-1 at 42]

[6] [Doc. 19-3 at 6.]

[7] [Doc. 1-1 at 8-9.]

[8] [Doc. 1-1 at 8-9.]

[9] [Doc. 1-1 at 10.]

[10] [Doc. 19-2.]

[11] [Doc. 1-1 at 11.]

Case No. 1:13-CV-925
Gwin, J.

contract against all defendants.[12] In Count III, DDR claims conversion against CEG, Edward Turen and Neal Turen.[13] In Count IV, DDR alleges fraud against CEG and the Turens. Finally, in Count V, DDR claims civil conspiracy against all defendants.[14]

The Turens now move, separately, to dismiss for want of personal jurisdiction. Neal Turen says that he is a resident of New Jersey and has no contact with Ohio.[15] He says that he is a minority shareholder in CBS and Oxford, owning 33% of each entity.[16] He says that his only contact with DDR was as an officer of Oxford and that his participation was limited to a telephone call.[17] Edward Turen likewise says that he had limited contact with DDR and Ohio. He says that his only contact with DR was a meeting—not in Ohio—at the inception fo the parties' relationship and a telephone call around January 24, 2013.[18]

The Turens do not dispute that they own and control Oxford, CBS, and CEG. Edward Turen is the controlling shareholder of all three, while Neal Turen controls 33% of each.[19] Edward Turen is the Chairman, and CEO of CEG, CBS, and Oxford, while Neal Turen is President of Oxford and

---

[12] [Doc. 1-1 at 12.]

[13] [Doc. 1-1 at 13.]

[14] [Doc. 1-1 at 15.]

[15] [Doc. 7-1.]

[16] [Doc. 7-1 at 3.]

[17] [Doc. 7-1 at 3.]

[18] [Doc. 8-1 at 2.]

[19] [Doc. 19 at 2-3.]

Case No. 1:13-CV-925
Gwin, J.

Executive Vice president of CBS and CEG.[20]

## II.

A challenge to this Court's personal jurisdiction triggers a two-part inquiry. First, a Plaintiff "must demonstrate that both due process and Ohio's long-arm statute are satisfied."[21] In relevant part, Ohio's long-arm statute provides

> [a] court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's . . . [c]ausing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state . . . .[22]

Second, if the plaintiff makes a *prima facie* showing of personal jurisdiction under the forum state long-arm statute, the Court considers whether the exercise of jurisdiction comports with constitutional due process.[23] To exercise personal jurisdiction based on a defendant's actions in this state, the Court must find "(1) purposeful availment 'of the privilege of acting in the forum state or causing a consequence in the forum state,' (2) a 'cause of action . . . aris[ing] from activities' in the state, and (3) a 'substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.'"[24]

The plaintiff bears the burden of establishing jurisdiction.[25] The court "must consider the

---

[20] [Doc. 19 at 2-3.]

[21] *Schneider v. Hardesty*, 669 F.3d 693, 699 (6th Cir. 2012).

[22] O.R.C. § 2307.382(A)(6).

[23] *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007).

[24] *Schneider*, 669 F.3d at 701 (quoting *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir.1968)).

[25] *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1164 (6th Cir. 1988).

Case No. 1:13-CV-925
Gwin, J.

pleadings and affidavits in the light most favorable to the plaintiff."[26]

### III.

**A. Long Arm Statute**

Ohio R.C. 2307.382(A)(6) gives jurisdiction when a defendant acts outside Ohio "with the purpose of causing injury to the Ohio resident and there is a reasonable expectation that the purposefully inflicted injury will occur in Ohio."[27] At the heart of DDR's case, it alleges that "Oxford, at the direction of the Turens, obtained funds from DDR under false pretenses by causing DDR to pay Business Unit Invoices purportedly for the purpose of having Oxford pay corresponding Service Provider Invoices, but which Oxford intended to misappropriate for the benefit of Defendants."[28] Oxford allegedly did so in order to service a revolving credit facility tied to CEG and CBS and personally guaranteed by the Turens.[29]

A "nonresident defendant's actions me[et] requirements of R.C. 2307.382[A][6], where he allegedly committed tortious acts, including conversion, outside Ohio while knowing that [the asset] involved was of an Ohio corporation."[30] Here, the Turens allegedly converted the asset of an Ohio corporation—payments to Oxford—to pay a credit facility in which they had a direct pecuniary stake in their role as guarantors—*i.e.*, allegedly, to use DDR's moneys to keep credit facility afloat rather than using their own monies. And the Turens had reason to know that this injury would be felt in Ohio.

---

[26] *Welsh v. Gibbs*, 631 F.2d 436, 439 (6th Cir. 1980).

[27] *Kauffman Racing Equip., L.L.C. v. Roberts*, 930 N.E.2d 784, 792 (Ohio 2010).

[28] [Doc. 1-1 at 13.]

[29] [Doc. 19-3 at 5.]

[30] *State ex rel. Toma v. Corrigan*, 752 N.E.2d 281, 285 (Ohio 2001) (analyzing *Herbruck v. LaJolla Capital* No. 19586, 2000 WL 1420282 (Ohio Ct. App. Sept. 27, 2000)).

Case No. 1:13-CV-925
Gwin, J.

The agreement under which Oxford and the Defendants solicited and DDR made these payments specified that DDR was an Ohio corporation.[31] Furthermore, when Oxford allegedly began diverting revenue from DDR, it appears that DDR was Oxford's lone source of revenue.[32]

Whether the Turens actually directed this activity will undoubtedly be a contested issue going forward, but given the positions that the Turens occupied at CEG, CBS, and Oxford, and considering the record and pleadings in the light most favorable to the Plaintiff, the evidence permits an inference that the Turens direct these activities. Accordingly, the Court finds that the Turens' actions in diverting DDR's payments to avoid their own pecuniary liability provide a sufficient basis to subject the Turens to personal jurisdiction in Ohio.

The fiduciary shield doctrine does not shield the Turens here. As Neal Turen points out, the doctrine holds that "jurisdiction over the individual officers of a corporation cannot be predicated merely upon jurisdiction over the corporation."[33] Here jurisdiction stems from the personal benefits obtained by the Turens: Monies that they allegedly solicited under the service agreement and then diverted to their own use avoided a need for the Turens to pay on their personal guarantees of the revolving credit facility.

**B. Due Process**

The Court also finds that the exercise of jurisdiction comports with the due process clause.

*1. Purposeful Availment*

The Turens purposefully availed themselves of Ohio by allegedly overseeing the continued

---

[31] [Doc. 1-1 at 19.]

[32] [Doc. 19-3 at 8.]

[33] *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 929 (6th Cir. 1974).

Case No. 1:13-CV-925
Gwin, J.

production of invoices and misdirection of the resulting payments. "The purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person."[34] Here, evidence suggest that at some point "DDR accounted for 100% of Oxford Property's annual revenue."[35] Despite using DDR' monies to pay Oxford's unrelated liabilities, Oxford continued invoicing DDR for vendor services.[36] Yet, allegedly, instead of making payments to vendors, this money was diverted to service the revolving credit facility guaranteed by the Turens, *i.e.* to their own personal benefit. If these allegations are true, it beggars belief that the Turens thought that the $11 million they obtained from DDR so as to avoid paying on their personal guaranty was merely "random" or "fortuitous." More likely, the Turens, who controlled Oxford, would be purposefully availing themselves of this revenue. This is the kind of overt act that connects them to Ohio.[37]

### 2. Arising from Activities in Ohio

DDR's cause of action also arises from these same actions that reached into Ohio. "If a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contracts."[38] Here, DDR says that the Turens reached into Ohio by overseeing the continued invoicing of DDR and diverting the resulting proceeds

---

[34] *Schneider*, 669 F.3d at 701 (quoting *Citizens Bank v. Parnes*, 376 Fed. Appx. 496, 502 (6th Cir.2010)).

[35] [Doc. 19-3 at 8.]

[36] [Doc. 19-3 at 6.]

[37] *See Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 450 (6th Cir. 2012).

[38] *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002) (quoting *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1267 (6th Cir.1996)).

Case No. 1:13-CV-925
Gwin, J.

to their personal benefit.

### 3. Substantial Connection

Finally, the Court finds the Turens' connection to Ohio sufficient such that the exercise of jurisdiction over the Turens would not be unreasonable. A defendant must " have a sufficiently substantial connection to the forum such that the exercise of jurisdiction is not unreasonable."[39] "In determining whether the exercise of jurisdiction is reasonable, the court should consider, among others, the following factors: (1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the policy."[40] Generally, when the defendant has purposefully availed himself of the forum and the activities giving rise to the claim arise out of the defendant's activities in Ohio, the Court can find reasonableness.[41]

The Turens present no reason why the Court should not infer reasonableness. While undoubtedly defending this action in Ohio will burden the Turens, they do not present an "unusual case."[42] Ohio undoubtedly has an interest in protecting against the misappropriation of funds solicited in this state, as well as "an interest in ensuring that its residents have adequate recourse for harms inflicted by nonresidents."[43] And while the Turens emphasize Oxford's ongoing bankruptcy proceedings in New Jersey, no party cites another dispute duplicitous of this one—one where the

---

[39] *Schneider*, 669 F.3d at 703.

[40] *Id.* at 703-04 (quoting *Air Prods.*, 503 F.3d at 554).

[41] *Id.* at 703.

[42] *Id.* at 704.

[43] *Id.*

Case No. 1:13-CV-925
Gwin, J.

assets of non-bankrupts are primarily at issue. Accordingly, the Court finds that the Turens cannot overcome the presumption that their connection to Ohio is sufficiently substantial for this court to exercise jurisdiction.

## IV.

Because the exercise of jurisdiction comports with Ohio's long-arm statute and due process, the Court **DENIES** the Turens' motions to dismiss.

IT IS SO ORDERED

Dated: July 16, 2013               s/        *James S. Gwin*
                                   JAMES S. GWIN
                                   UNITED STATES DISTRICT JUDGE