```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
                                          :
DDR CORP.                                 :
                                          :   CASE NO.  1:13-cv-925
           Plaintiff,                     :
                                          :
v.                                        :   OPINION & ORDER
                                          :   [Resolving Docs. 10 & 11]
CONTROL BUILDING SERVICES, INC.,          :
et al.                                    :
                                          :
           Defendants.                    :
                                          :
-------------------------------------------------------
```

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiff DDR Corp. says that Defendants Control Building Services, Inc. ("CBS"), Control Equity Group, Inc.("CEG"), Neal Turen, and Edward Turen misappropriated approximately $11 million that DDR paid under a contract for facility maintenance services.[1] The defendants move the Court to transfer this lawsuit to the Bankruptcy Court of the District of New Jersey where Oxford Building Services, Inc., one of the parties to the contract, is currently in bankruptcy proceedings.[2] Because the Court finds that the relevant factors do not strongly support transfer, the Court **DENIES** the defendants' motion.

I.

According to the Complaint, Plaintiff DDR owns commercial real estate—generally retail properties—across the country.[3] DDR contracted with Oxford Building Services, Inc. for Oxford to provide facility maintenance and to pay vendors to those facilities at approximately 835of its

---

[1] [Doc. 1-1.]

[2] [Docs. 7, 8.]

[3] [Doc. 1-1.]

-1-

Case No. 1:13-CV-925
Gwin, J.

properties nationwide.[4] Defendant CBS, signed the agreement as a guarantor.[5] Under the terms of the agreement, Oxford was to serve as a clearinghouse for DDR's payments to vendors: Oxford would send DDR the vendor invoice, and DDR would pay Oxford, who would, in turn, pay the vendor.[6] DDR says that rather than provide these services, Oxford, at the behest of Defendants CEG, CBS, and Neal and Edward Turen, used DDR's payments to other purposes, in particular, to service a "credit facility" tied to these and other corporations.[7]

In June, 2012, Oxford lost a major account, and soon thereafter stopped paying vendor invoices for vendor work performed at DDR's properties—despite continuing to bill DDR and collect its payments.[8] In January of 2013, Defendant Edward Turen notified DDR of Oxford's shortfalls and identified approximately $11 million in unpaid vendor invoices.[9] Oxford filed for bankruptcy protection in bankruptcy proceedings in New Jersey.[10]

DDR now makes five claims against the Defendants in this case: In Count I, DDR alleges breach of the guaranty agreement against CBS.[11] In Count II, DDR claims tortious interference with contract against all defendants.[12] In Count III, DDR claims conversion against CEG, Edward Turen

---

[4] [Doc. 1-1 at 19-79.]

[5] [Doc. 1-1 at 42]

[6] [Doc. 19-3 at 6.]

[7] [Doc. 1-1 at 8-9.]

[8] [Doc. 1-1 at 8-9.]

[9] [Doc. 1-1 at 10.]

[10] [Doc. 19-2.]

[11] [Doc. 1-1 at 11.]

[12] [Doc. 1-1 at 12.]

Case No. 1:13-CV-925
Gwin, J.

and Neal Turen.[13] In Count IV, DDR alleges fraud against CEG and the Turens. Finally, in Count V, DDR claims civil conspiracy against all defendants.[14]

The defendants request transfer of this case to the District of New Jersey.[15] Generally, the defendants say that the major factual issues in the case will surround the conduct of Oxford, and, since Oxford is currently in Bankruptcy Court in the District of New Jersey, judicial economy favors consolidating the cases before the same court. The defendants also say that any judgment in this case could have an impact on claims involved in the bankruptcy, and, thus, this case belongs in bankruptcy court. DDR objects to the transfer and notes, in particular, that its guaranty agreement with CBS contains a forum selection clause in which CBS "consent[ed] to the exclusive jurisdiction and venue of the court of proper subject matter jurisdiction in the State of Ohio."[16]

**II.**

As an initial matter, he parties dispute whether the general transfer of venue statute, 28 U.S.C. § 1404, or the bankruptcy transfer of venue statute, 28 U.S.C. § 1412, governs this action.[17] Because the claims at issue are at best "related to" the Oxford bankruptcy, the Court finds that § 1404 governs.

United States Code, title 28, section 1334(b) confers subject matter jurisdiction in bankruptcy cases. The provision provides that "the district courts shall have original but not

---

[13] [Doc. 1-1 at 13.]

[14] [Doc. 1-1 at 15.]

[15] [Docs. 10 & 11]

[16] [Doc. 1-1 at 31.]

[17] As the parties note, courts are split on this issue. *See* RFF Family Partnership LP v. Wasserman, No. 1:07-cv-1617 (N.D. Ohio January 29, 2010) (collecting cases).

Case No. 1:13-CV-925
Gwin, J.

exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." The comma is key: Section 1334(b) speaks to two classes of cases, those "arising under title 11" and those "arising in or related to cases under title 11."

United States Code, title 28, section 1412 speaks to change of venue for bankruptcy cases. The statute provides that "[a] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." Section 1412 thus provides for transfer of venue for only one of the two classes of cases identified by § 1334(b): those cases "under title 11"—*i.e.* not those "arising in or related to cases under title 11."[18] Defendants concede that this case is, at best, "related to the Oxford bankruptcy proceeding."[19] Accordingly, § 1412 does not permit the transfer of this case.

Instead, § 1404(a) governs this action. Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." In determining whether transfer is proper under § 1404(a), the Sixth Circuit requires "a district court [to] consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'"[20]

Often, more than one forum will be an appropriate venue for trial and some inconvenience

---

[18] It would be strained to read "under title 11" in § 1412 as related to the authority for the transfer and not an identifier of which class of cases may be transferred. Had Congress intended to make the transfer under the authority of Title 11, it would have separated "under title 11" from the rest of the provision with commas. Moreover, reading "under title 11" as the source of authority for the transfer would render § 1412 broader than § 1404(a), the venue statute.

[19] [Doc. 10-1 at 3.]

[20] *Moses v. Bus. Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir.1991) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30 (1988)).

-4-

Case No. 1:13-CV-925
Gwin, J.

will exist to either party no matter which venue is chosen. Consequently, if a change of venue serves merely to shift the inconvenience from one party to another, a change of venue is generally not warranted.[21] "Consistent with that principle, a generalized assertion by a defendant that witnesses reside in, and documents are located in, the proposed transferee district, is generally insufficient to merit transfer."[22] Ultimately, "[t]he defendant, because it is the party requesting a transfer of venue, bears the burden of proof to show the factors weigh 'strongly' in favor of transfer."[23] When a defendant makes such a showing, transfer is appropriate.

"When interpreting contracts in a diversity action, [courts] generally enforce the parties' contractual choice of forum."[24]

> When evaluating the enforceability of a forum selection clause, this court looks to the following factors: (1) whether the clause was obtained by fraud, duress, or other unconscionable means; (2) whether the designated forum would ineffectively or unfairly handle the suit; and (3) whether the designated forum would be so seriously inconvenient such that requiring the plaintiff to bring suit there would be unjust. . . . The party opposing the forum selection clause bears the burden of showing that the clause should not be enforced.[25]

### III.

Were CBS the only defendant in this action, this case would start and end with the guaranty agreement's forum selection clause. CBS does not claim that DDR obtained the clause through any invalid means. The agreement was between sophisticated commercial parties and concerned

---

[21] *Kirk v. Shaw Environmental, Inc.*, No. 1:09–cv–1405, 2010 WL 520827, *3 (N.D. Ohio Feb.5, 2010) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 646 (1964)).

[22] *Id.* (citing *Hartford Accident & Indem. Co. v. Dalgarno Transp., Inc.*, 618 F.Supp. 1450 (S.D.Miss.1985)).

[23] *Picker Intern, Inc., v. Travelers Indem. Co.*, 35 F.Supp.2d 570, 573 (N.D. Ohio 1998).

[24] *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 541 (6th Cir. 2007).

[25] *Wong v. PartyGaming Ltd.*, 589 F.3d 821, 828 (6th Cir. 2009).

Case No. 1:13-CV-925
Gwin, J.

millions of dollars, further raising the inference that the forum selection clause was a bargained-for piece of the deal. This Court could effectively and fairly handle this lawsuit. And any inconvenience to CBS in proceeding here, rather than in New Jersey hardly rises to the level of injustice.

But whether the agreement drags along the Turens and CEG is a more difficult question. Nonetheless, while some private interest factors tilt towards New Jersey, on the whole, the defendants do not carry their burden to show that the factors "strongly" weigh in favor of New Jersey. Separating out the defendants' misplaced appeals to bankruptcy law, defendants make two major arguments. First, the defendants say that if DDR wins, they will make claims for indemnification from Oxford, and, accordingly, judicial economy favors New Jersey. Second, defendants say that "DDR's allegations stem from the alleged actions of New Jersey Defendants acting in New Jersey with purported injury occurring to DDR throughout the country."[26]

These considerations are hardly unique. Most complicated commercial litigation involves some robbing of Peter to pay Paul. That these defendants may have some speculative and unfiled claim against another entity is hardly reason to transfer a case. Likewise, while some witnesses and documents may be in New Jersey, defendants present no unique considerations that make these concerns controlling. Furthermore, the Plaintiff presumably has witnesses in Ohio. Thus any tilt in these private interest factors does not strongly weigh in favor of transfer.

The public interest factors also do not weigh strongly in favor of New Jersey. While choice of law may become a contested issue in this case, this Court is capable of interpreting either New Jersey or Ohio law. As the guaranty agreement specifies that Ohio law will govern it, at least part

---

[26] [Doc. 20 at 5.]

Case No. 1:13-CV-925
Gwin, J.

of the lawsuit will be governed by Ohio law.  Similarly, while the locus of injury is arguably at DDR's properties nationwide, it is also arguably here in Ohio where DDR directed its payments to Oxford and felt any financial losses.  And while New Jersey undoubtedly has an interest in controlling the actions of its residents, Ohio has an interest in protecting its residents.  Accordingly, no public interest factor weighs so strongly as to warrant transfer.

### IV.

Because the interests of justice do not weigh strongly in favor of transfer to New Jersey, the Court **DENIES** the defendants' motion.

IT IS SO ORDERED


Dated: July 17, 2013                                             s/        *James S. Gwin*
                                                                 JAMES S. GWIN
                                                                 UNITED STATES DISTRICT JUDGE