```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
```

------------------------------------------------------

DDR CORP.,                                  :       CASE NO. 1:13-CV-00925
                                            :
       Plaintiff,                    :
                                            :
vs.                                         :       OPINION & ORDER
                                            :       [Resolving Docs. 51, 52, & 53]
CONTROL BUILDING SERVICES,                  :
INC., *et al.*,                             :
                                            :
       Defendants.                   :
                                            :

------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiff DDR Corp. brings various claims against Defendants Edward Turen, Neal Turen, Control Business Services, Inc. ("CBS"), and Control Equity Group, Inc. ("CEG"), arising out of the bankruptcy of Oxford Building Services, Inc. ("Oxford").[1] Plaintiff DDR now moves for summary judgment on DDR's claim against CBS on CBS's guaranty of Oxford's performance.[2] Defendants move for summary judgment on the remaining four claims against them.[3] For the reasons that follow, the Court **GRANTS** DDR's motion for partial summary judgment, **GRANTS IN PART** and **DENIES IN PART** Defendants Edward Turen, CBS, and CEG's motion for summary judgment, and **GRANTS IN PART** and **DENIES IN PART** Neal Turen's motion for summary judgment.

### I. Factual and Procedural Background

In January 2008, Plaintiff DDR Corp. and Oxford Building Services, Inc., entered into a

---

    [1] Doc. 1-1.
    [2] Doc. 52.
    [3] Doc. 51 (CBS, CEG, and Edward Turen's motion for summary judgment); Doc. 53 (Neal Turen's motion for summary judgment).

servicing agreement.[4] Under that agreement, Oxford agreed to supervise maintenance and repair contractors at some of DDR's facilities.[5] After doing work at DDR's facilities, service providers would invoice Oxford for the work.[6] Oxford would then invoice DDR for the amount of the bill at least 14 days before payment was due.[7] DDR would then pay the invoice amount to Oxford at least 6 days before payment was due.[8] Oxford would then pay the vendors within six days of receiving payment from DDR.[9] CBS guaranteed Oxford's performance under the agreement.[10]

Oxford formed a wholly-owned subsidiary, Oxford Property Services, Inc., to perform its obligations under the servicing agreement with DDR.[11] Oxford Property Services had no other business.[12]

Oxford was part of a corporate family, including Defendants Control Building Services and Control Equity Group, that were owned, at least in part, by Defendants Edward Turen and Neal Turen. Edward Turen owned 67% and Neal Turen owned 33% of CBS and Oxford.[13] CEG was a wholly-owned subsidiary of CBS.[14] CEG provided management and administrative services for the other corporations in the corporate family and supervised the corporations' funds.[15] Edward Turen served as the Chief Executive Officer of CEG and CBS and was President of Oxford Property

---

[4] Doc. 63-2.
[5] *Id.*
[6] *Id.* at 4-5 ¶ 3 (page numbers refer to the CM/ECF page numbers)
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.* at 15-16.
[11] Doc. 63-3, E. Turen Dep. at 8:14-9:18 (page numbers refer to the CM/ECF page numbers).
[12] *Id.*
[13] *Id.* at 19:4-24.
[14] *Id.* at 26:10-15.
[15] *Id.* at 26:16-28:13,

Services.[16] Neal Turen was a director at some of the corporations and became President of Oxford in January 2012.[17]

In December 2008, Oxford, CBS, CEG, and other related companies entered in a loan agreement with TD Bank. The companies and TD Bank renewed the agreement in December 2011.[18] Under the terms of the loan agreement, TD Bank gave the companies a line of credit secured by their assets.[19] CEG would sweep all of the bank accounts of the companies into a consolidated account, and TD Bank would sweep amounts out of the consolidated account to pay off the loan balance.[20] Edward Turen and Neal Turen personally guaranteed the loan to the companies.[21]

At some point, the companies began to suffer cash flow problems. As a result of TD Bank sweeping its payments from DDR towards paying the companies' credit line, Oxford fell behind in its payments to DDR's vendors. Edward Turen and Neal Turen both loaned the companies money to pay their companies' operating expenses. They intended they would be reimbursed after DDR submitted its subsequent payments.[22] But restating, DDR was paying for work before Oxford needed to pay the bills for the work. But on January 24, 2013, Edward Turen told DDR that Oxford was not capable of paying the vendor invoices.[23]

Before January 2013, on several occasions, vendors told DDR that Oxford had not paid them,

---

[16] *Id.* at 15:19-16:4, 24:16-25:13, 30:22-23.
[17] Doc. 53-3, N. Turen Decl.
[18] Doc. 63-3, E. Turen Dep. at 15:12-17:19.
[19] Doc. 53-3, N. Turen Decl.
[20] *Id.*
[21] *Id.*
[22] Doc. 63-14; Doc. 63-15.
[23] Doc. 63-5, N. Turen Dep. at 11:10-16 (page numbers refer to the CM/ECF page numbers).

and DDR requested an explanation from Oxford.[24] In response, Oxford said that various procedural issues delayed payment.[25] Oxford also said that it would have to contact "accounts payable" about the payments to vendors, likely a reference to CEG which handled accounting for the companies.[26] While discussing a DDR inquiry with her superiors, one Oxford employee expressed frustration that she had been directed to be so "vague" that she feared she came across as "incompetent."[27]

Normally, Oxford employees forwarded their responses to Edward Turen, and on at least one occasion, they forwarded their response to Edward Turen and Neal Turen.[28] In any event, an executive of the companies sent a presentation to both Edward Turen and Neal Turen on December 27, 2012, that showed Oxford was $5 million behind in payments to DDR vendors.[29] However, Oxford continued to send invoices to DDR and accept payment from DDR until January 24, 2013. DDR estimates that Oxford did not pay $11 million of vendor invoices.[30]

Oxford declared bankruptcy, and DDR filed this lawsuit against Edward Turen, Neal Turen, CBS, and CEG.[31] DDR brings five causes of action: 1) enforcement of CBS's guaranty of Oxford's performance on the servicing agreement; 2) intentional interference with contract against Edward Turen, Neal Turen, CEG, and CBS; 3) conversion against Edward Turen, Neal Turen, and CEG; 4) fraud against Edward Turen, Neal Turen, and CEG; and 5) civil conspiracy against Edward Turen,

---

[24] *See, e.g.*, Doc. 63-27.
[25] *See, e.g.*, Doc. 63-22.
[26] *See, e.g.*, Doc. 63-31.
[27] Doc. 63-34.
[28] Doc. 63-27.
[29] *See* Doc. 63-43 at 7.
[30] Doc. 63-44 at 8.
[31] Doc. 1-1.

Case No. 1:13-CV-00925
Gwin, J.

Neal Turen, CEG, and CBS.[32] Defendants removed the lawsuit to this Court.[33]

Plaintiff DDR now moves for summary judgment on its claim to enforce CBS's guaranty of Oxford's performance on the servicing agreement.[34] CBS has not filed an opposition.

Defendants all move for summary judgment on the remaining four counts against them.[35] DDR opposes the motions.[36]

## II. Legal Standard

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[37] The moving party must demonstrate that there is an absence of a genuine dispute as to a material fact entitling it to judgment.[38] Once the moving party has done so, the non-moving party must set forth specific facts in the record—not its allegations or denials in pleadings—showing a triable issue.[39] The existence of some doubt as to the material facts is insufficient to defeat a motion for summary judgment.[40] But the Court will view the facts and all reasonable inferences from those facts in favor of the non-moving party.[41]

---

[32] *Id.*
[33] Doc. 1.
[34] Doc. 52.
[35] Doc. 51 (CBS, CEG, and Edward Turen); Doc. 53 (Neal Turen).
[36] Doc. 63.
[37] *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008).
[38] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[39] *See* Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).
[40] *Matsushita*, 575 U.S. at 586.
[41] *Thomas v. Cohen*, 453 F.3d 657, 660 (6th Cir. 2004) (quoting *Nat'l Enters., Inc. v. Smith*, 114 F.3d 561, 563 (6th Cir. 1997)).

-5-

Case No. 1:13-CV-00925
Gwin, J.

**III. Discussion**

A.  **Claim 1: CBS's Guaranty of Oxford's Performance**

DDR has moved for summary judgment on CBS's liability on the guaranty.[42] CBS has not opposed the motion.

DDR says that it is entitled to summary judgment on this claim because the only condition precedent on CBS's liability under the guaranty has occurred: Oxford has not fully performed its obligations under the servicing agreement.[43]

Recall, when Plaintiff DDR and Oxford entered into the service agreement, CBS signed a guaranty of Oxford's performance on the contract.

The terms of the guaranty say that the guaranty is a material inducement to DDR to enter into the agreement with Oxford; that CBS "unconditionally and absolutely" guarantees that Oxford will fully perform on the contract; that the guaranty is discharged by full payment to DDR of all sums due under the servicing agreement; and that the guaranty may be enforced by a separate action against CBS regardless of whether DDR sues Oxford.[44]

A guaranty is a form of contract, and the Court gives effect to the intent of the parties as reflected in the clear and unambiguous language of the guaranty.[45]

Based on the undisputed record, DDR fully performed its obligations under the contract by providing Oxford with the money to pay the vendor invoices. However, Oxford did not pay the vendors as required by the contract and has not paid the vendors. The language of the guaranty

---

[42] Doc. 52.
[43] Doc. 52-1 at 5-6.
[44] Doc. 63-2 at 15-16.
[45] *See O'Brien v. Ravenswood Apartments, Ltd.*, 862 N.E.2d 549, 555 (Ohio Ct. App. 2006).

-6-

Case No. 1:13-CV-00925
Gwin, J.

unambiguously requires CBS to pay to DDR all sums due under the agreement if Oxford fails to fully perform on the agreement.

Accordingly, no genuine dispute exists as to whether Oxford fully performed its obligations under the contract and, therefore, CBS's has incurred the obligation to fulfill the guaranty of Oxford's performance. Plaintiff DDR is entitled to summary judgment on its claim that CBS is liable under the guaranty. DDR's damages will be determined at trial.

**B.     Claim 2: Intentional Interference with Contract**

Plaintiff DDR says that Defendants CBS, CEG, Edward Turen, and Neal Turen intentionally interfered with its contract with Oxford.[46/] All defendants move for summary judgment on this claim.

In Ohio, to prove a claim for intentional interference with contract, a plaintiff must show 1) the existence of a contract; 2) the defendant knew about the contract; 3) the defendant intentionally procured a breach of the contract; 4) the defendant had no justification; and 5) the plaintiff suffered damages.[47/]

The Court considers whether DDR has identified sufficient evidence to create a genuine dispute as to a material fact for each of the four Defendants.

**1.     CBS**

In its opposition to Defendants' motions for summary judgment, DDR identifies no evidence that shows that CBS undertook any action to interfere with Oxford's contract with DDR. Rather, DDR argues that CEG, Edward Turen, and Neal Turen either misused DDR's payments to Oxford

---

[46/] Doc. 1-1 at 12-13 ¶¶ 51-56.
[47/] *Kenty v. Transamerica Premium Ins. Co.*, 650 N.E.2d 863, 866 (Ohio 1995).

Case No. 1:13-CV-00925
Gwin, J.

or demanded that DDR's payments to Oxford be used for other purposes.

Accordingly, because DDR does not identify any action by CBS that interfered with its contract with Oxford, CBS is entitled to judgment as a matter of law on this claim.

### 2. CEG

DDR has introduced evidence to show that CEG placed all of DDR's payments to Oxford into the common, consolidated account that TD Bank used to pay off companies' loan. Although the use of the consolidated account and the TD Bank loan agreement themselves may not have violated Oxford's servicing agreement with DDR, a jury could reasonably conclude that purposely placing Oxford in a position in which it would have insufficient funds to pay its contractual obligations constitutes intentionally procuring a breach of Oxford's servicing agreement.

Accordingly, there is a genuine dispute as to a material fact, and CEG is not entitled to summary judgment on this claim.

### 3. **Edward Turen and Neal Turen**

DDR has produced sufficient evidence to survive Edward Turen and Neal Turen's motions summary judgment on the intentional interference claim.

DDR produced emails concerning the repayment of corporate advances that suggest that Edward Turen and Neal Turen requested repayment out of DDR's payments to Oxford.[48] They knew, or had access to information suggesting, that the line of credit was being swept of funds needed to pay for DDR work. A jury could reasonably conclude that the Turens knew about Oxford's contract with DDR, the source of DDR's payments, and purposely asked Oxford to repay

---
[48] Doc. 63-14; Doc. 63-15.

Case No. 1:13-CV-00925
Gwin, J.

their advances rather than fulfill its contractual duties.

In reply, Neal Turen argues that the companies never actually repaid his advance out of DDR funds and that he did not know advances would be repaid out of DDR funds.[49] This is admittedly a close case, but a jury could conclude from the evidence that Neal Turen joined in using DDR funds for other purposes, leaving Oxford in breach of its agreement with DDR.

Accordingly, Edward Turen and Neal Turen are not entitled to summary judgment on this claim.

**C.  Conversion**

DDR says that CEG, Edward Turen, and Neal Turen wrongly converted its payments to Oxford for their own use.[50] These Defendants move for summary judgment on this claim.

In Ohio, "[t]ypically, '[t]he elements of a conversion cause of action are (1) plaintiff's ownership or right to possession of the property at the time of the conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and (3) damages.'"[51]

The Court finds this to be a very close question. However, DDR cannot show that it had an ownership right or a right to possess the money it paid to Oxford. Although Oxford had to pay DDR's vendors with the money and failing to pay the vendors was a breach of the agreement, because of the structure of the servicing agreement DDR did not have a right of ownership or possession of the money. It had the contractual right to have Oxford apply the funds to the vendor's bills.

---

[49] Doc. 66 at 7-8.
[50] Doc. 1-1 at 13-14 ¶¶ 57-62.
[51] *Dice v. White Family Cos.*, 878 N.E.2d 1105, 1109 (Ohio Ct. App. 2007) (citation omitted).

Case No. 1:13-CV-00925
Gwin, J.

Under the terms of the servicing agreement, DDR's vendors entered into a contract with Oxford of which DDR was a third-party beneficiary. Therefore, when DDR paid Oxford, Oxford was not holding DDR's money to pay DDR's contracts. DDR paid Oxford for the service of contracting with DDR's vendors. Oxford was contractually obligated to use that money to pay on its contracts with DDR's vendors, but the money was no longer DDR's. Accordingly, DDR did not have an ownership or property right in the money.

Because DDR has not shown it had an ownership or property right in the money, there is not genuine dispute as to a material fact, and CEG, Edward Turen, and Neal Turen are entitled to judgment as a matter of law on this claim.

**D.  Fraud**

Plaintiff DDR says that Defendants CEG, Edward Turen, and Neal Turen committed fraud by misrepresentations and omissions about Oxford's performance on the servicing agreement and that DDR justifiably relied on those representations or omissions in continuing to pay Oxford even though Oxford was not paying DDR's vendors.[52]

In Ohio, a plaintiff must show 1) that the defendant made a representation that was material to the transaction; 2) that the defendant knew the representation was false or recklessly disregarded its truth; 3) that the defendant intended to mislead the plaintiff into justifiable reliance; and 4) that the plaintiff suffered an injury.[53]

The Court considers whether DDR has identified sufficient evidence to create a genuine dispute as to a material fact for each of the four Defendants.

---

[52] Doc. 1-1 at 14-15 ¶¶ 63-68.
[53] *Curran v. Vincent*, 885 N.E.2d 964, 968 (Ohio Ct. App. 2007).

Case No. 1:13-CV-00925
Gwin, J.

### 1. CEG

Defendants have produced sufficient evidence to suggest that Oxford's communications with DDR were directed by CEG. CEG managed the finances of all of the companies and served as a central manager and administrator.

Plaintiff also produced the email of an Oxford employee who said she was worried she appeared incompetent because she was told by superiors to be vague with DDR.

Based on this evidence, a reasonable jury could find that CEG directed, at least in part, Oxford's communications with DDR.

Additionally, DDR's has produced sufficient evidence to suggest that Oxford's explanations of why some vendors were not paid were false. DDR has apparently identified instances in which Oxford's January 2013 representations about invoices were false.[54] These false statements call into question Oxford's other responses to DDR's payment inquiries.[55]

Moreover, a jury could reasonably find that the explanation for why the vendors were not paid was material to DDR's continued payments to Oxford, that DDR reasonably relied on the representations, and that DDR was harmed by false statements.

Accordingly, DDR has shown a genuine dispute exists as to material facts about CEG's direction of Oxford and Oxford's responses to DDR's inquiries. CEG is not entitled to judgment as a matter of law on this claim.

### 2. Edward Turen and Neal Turen

DDR's evidence of Edward Turen and Neal Turen's connection to Oxford's communications

---

[54]*Compare* Doc. 63-35 at 3 (showing checks to vendors issued Dec. 26, 2012 on invoices), *with* Doc. 63-36 at 75-76 (showing invoices were not paid).

[55]*See, e.g.*, Doc. 63-27.

-11-

with DDR is more tenuous. However, a reasonable jury could find, based on the evidence DDR has produced, Edward Turen and Neal Turen also caused Oxford to make material misrepresentations to DDR.

Edward Turen received several emails from Oxford employees that detailed Oxford's response to DDR's inquiries about vendor payments.[56] A jury could reasonably conclude that Oxford employees sent Edward Turen these emails because he had directed them to offer the responses to DDR. If the responses were false, as DDR says, and Edward Turen nevertheless directed Oxford to give those responses to DDR, then DDR may maintain a fraud action against him.

DDR's evidence with respect to Neal Turen's affirmative representations is essentially one email that was sent to Edward Turen and Neal Turen.[57] This is, again, a close case. But a reasonable jury could conclude, based on the email and Neal Turen's status as President of Oxford, that Neal Turen also may have directed Oxford to make false statements to DDR about vendor payments.

Accordingly, Edward Turen and Neal Turen are not entitled to summary judgment on this claim.

**E.    Civil Conspiracy**

DDR says CBS, CEG, Edward Turen, and Neal Turen engaged in a civil conspiracy to use DDR payments for other purposes even though Oxford could not otherwise perform on its servicing agreement with DDR.[58]

---

[56] *See, e.g.*, *id.*
[57] *Id.*
[58] Doc. 1-1 at 15-16 at ¶¶ 69-72.

Case No. 1:13-CV-00925
Gwin, J.

In Ohio, to bring a civil conspiracy claim, a plaintiff must show (1) a malicious combination (2) of two or more persons (3) causing injury to person or property and (4) the existence of an unlawful act which is independent from the conspiracy itself.[59] "An underlying unlawful act is required before a civil conspiracy claim can succeed."[60]

DDR has produced no evidence that CBS either participated in the underlying tort claims or entered into an agreement for others to intentionally interfere with Oxford's contract with DDR or commit fraud. Recall, CEG, not CBS, served as the central manager and administrator for Oxford.

Accordingly, CBS is entitled to judgment as a matter of law on DDR's civil conspiracy claim.

The remaining Defendants move for summary judgment on the grounds that DDR can show no underlying wrongful acts and DDR cannot show a common design.[61]

The Court has already found that DDR's intentional interference with contract and fraud claims may proceed.

And the Court also determines that the emails sent to Edward Turen and the email sent to Neal Turen that informed them of Oxford's response to DDR's payment inquiries create a genuine dispute as to whether the Defendants had entered into a malicious combination. A reasonable jury could infer from those emails that Edward Turen, CEG, and Neal Turen had agreed to cause Oxford to misrepresent the status of vendor payments.

Accordingly, CEG, Edward Turen, and Neal Turen are not entitled to summary judgment on this claim.

---

[59] *Lee v. Countrywide Home Loans, Inc.*, 692 F.3d 442, 446 (6th Cir. 2012) (quoting *Universal Coach, Inc. v. New York City Transit Auth.*, 629 N.E.2d 28, 33 (Ohio Ct. App. 1993)).
[60] *Williams v. Aetna Fin. Co.*, 700 N.E.2d 859, 868 (Ohio 1998) (citing *Gosden v. Louis*, 687 N.E.2d 481, 496 (Ohio Ct. App. 1996)).
[61] Doc. 51 at 22-23; Doc. 53-1 at 14-16.

-13-

Case No. 1:13-CV-00925
Gwin, J.

**F.     Economic Loss Doctrine**

Neal Turen also moves for summary judgment on the ground that DDR's damages are barred by Ohio's economic loss doctrine.[62]

In Ohio, the economic loss doctrine states, "Tort law is not designed . . . to compensate parties for losses suffered as a result of a breach of duties assumed only by agreement."[63] "Ohio's economic-loss rule typically prevents a plaintiff who has suffered only economic losses from recovering tort damages."[64] "It is not meant to provide redress 'for losses suffered as a result of a breach of duties assumed only by agreement.'"[65]

The economic loss rule is not applicable in this case. DDR's contract was with Oxford; the Defendants were not parties to that contract. If Defendants tortiously interfered with that contract or directed Oxford to commit fraud, they have breached a duty that they did not assume by agreement.[66]

Accordingly, the economic loss doctrine is no basis to dismiss the claims against Defendants.

---

[62]Doc. 53-1 at 16-17.
[63]*Floor Craft Floor Covering, Inc. v. Parma Cmty. Gen. Hosp. Ass'n*, 560 N.E.2d 206, 211 (Ohio 1990) (quoting *Sensenbrenner v. Rust, Orling & Neale*, 374 S.E.2d 55, 58 (Va. 1988)).
[64]*Lifelink Pharm., Inc. v. NDA Consulting, Inc.*, No. 5:07-CV-785, 2007 WL 2292461, at *4 (N.D. Ohio Aug. 7, 2007) (citation omitted).
[65]*Id.* (quoting *Floor Craft Floor Covering, Inc.*, 560 N.E.2d at 211).
[66]Neal Turen's case citations are unpersuasive. *Skurka Aerospace, Inc. v. Eaton Aerospace, LLC*, No. 1:08-CV-1565, 2011 WL 1134591 (N.D. Ohio Mar. 25, 2011) and *Jean v. Works*, No. 1:04-CV-1904, 2006 WL 1966644 (N.D. Ohio July 5, 2006) were cases in which the plaintiff and the defendant had entered into a contract. These are not applicable here because the parties did not have a contractual relationship: DDR and Oxford did have a contract. And *Wagner-Smith Co. v. Ruscilli Constr. Co.*, 861 N.E.2d 612 (Ohio Ct. Com. Pl. 2006) involved a suit by a contractor against the contract manager at the contracting party; although Edward and Neal Turen were associated with Oxford, they had many other roles in the family of companies, and their allegedly tortious conduct would have benefitted those other entities, not Oxford.

Case No. 1:13-CV-00925
Gwin, J.

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** DDR's motion for partial summary judgment, **GRANTS IN PART** and **DENIES IN PART** Defendants Edward Turen, CBS, and CEG's motion for summary judgment, and **GRANTS IN PART** and **DENIES IN PART** Neal Turen's motion for summary judgment.

DDR is entitled to judgment as a matter of law on CBS's liability under its guaranty of Oxford's performance under the servicing agreement, and its damages will be determined at trial. CBS is entitled to judgment as a matter of law on DDR's intentional interference with contract claim. CEG, Edward Turen, and Neal Turen are entitled to judgment as a matter of law on DDR's conversion claim. CBS is entitled to judgment as a matter of law on DDR's civil conspiracy claim.

IT IS SO ORDERED

Dated: March 21, 2014          s/      *James S. Gwin*
                               JAMES S. GWIN
                               UNITED STATES DISTRICT JUDGE